IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

      v.                                                   23-CR-99-LJV

SIMON GOGOLACK, et al.,

           Defendants.
_____

## MEMORANDUM OF LAW REGARDING POTENTIAL ASSIGNMENT OF LEARNED COUNSEL

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, Joseph M. Tripi, Nicholas T. Cooper, and Casey L. Chalbeck, Assistant United States Attorneys, of counsel, hereby submits the following memorandum of law regarding the appointment of learned counsel pursuant to 18 U.S.C. § 3005.[1]

### I. BACKGROUND

**1. The Counts**

In relevant part, the Second Superseding Indictment charges defendants Gogolack, Gerace, Ermin and Hinkle (collectively, "the Defendants") with witness tampering conspiracy

---

[1] On January 24, 2024, defendant Howard Hinkle, Jr., moved for the appointment of learned counsel or a second attorney. *See* Not. of Mot., ECF No. 47, (dated Jan. 24, 2024). Because Mr. Hinkle's counsel was appointed pursuant to the Criminal Justice Act, and because the appointment of counsel pursuant to the Criminal Justice Act is a matter exclusively within the province of the judiciary, the government acknowledges, as it did at arraignment, that the Court has discretion as to whether to assign additional or learned counsel.

in violation of 18 U.S.C. § 1512(k) (Count 2) and witness retaliation conspiracy (Count 3) in violation of 18 U.S.C. § 1513(f).  *See* Sec. Super. Indict., at 31–34.

Count 2 alleges that from in or about March 2023 through on or about August 1, 2023, the Defendants conspired to kill Crystal Quinn, a federal witness, with the intent to prevent her attendance and testimony in Case Nos. 19-CR-227 and 23-CR-37.  *Id.* at 31.  Likewise, Count 3 alleges that the Defendants conspired to retaliate against Ms. Quinn for her participation in grand jury proceedings related to Cases Nos. 19-CR-227 and 23-CR-37.  *Id.* at 33.  Mr. Gerace is a named defendant in both of those cases, which are pending in the Western District of New York.

### 2.  The Charging Statutes

Section 1512(k), the charging statute under Count 2, instructs that "[w]hoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."  18 U.S.C. § 1512(k).  Elsewhere, § 1512(a) provides that "[w]hoever kills or attempts to kill another person with intent to . . . prevent the attendance or testimony of any person in an official proceeding" shall be punished, "in the case of a killing, [in accordance with] the punishment provided in sections 1111 and 1112."  *Id.* §§ 1512(a)(1)(A), (a)(3)(A).  The witness retaliation statute—§ 1513—echoes these provisions.  *See* § 1513(f) ("Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."); *id.* §§ 1513(a)(1)(A)–(B), 1513(a)(2) (instructing that "[w]hoever kills or attempts to kill another person with intent to retaliate

2

against any person for . . . . the attendance of a witness or party at an official proceeding . . . or . . . . providing to a law enforcement officer any information relating to the commission or possible commission of a Federal offense" shall be punished, in the case of a killing, in accordance with section 1111).  In turn, § 1111 states that premeditated murder "shall be punished by death *or* by imprisonment of life."  (emphasis added).

## II.  ANALYSIS

Title 18, United States Code, Section 3005 extends some defendants charged in death-eligible indictments the statutory right to counsel learned in the law of capital punishment.  But this entitlement serves as a procedural affirmation of the grave finality of the *sentence* made possible by certain charges, not of the seriousness or the complexity of the charges themselves.  Because the Second Superseding Indictment does not charge any of the statutory factors necessary to impose a death sentence, Counts 2 and 3 cannot statutorily entitle the Defendants to learned counsel.  Additionally, the government notes that, as the Western District of New York's own Criminal Justice Act plan contemplates, § 3005's right to appointment of learned counsel applies only to financially eligible defendants.  Defendants with sufficient means to retain counsel are not entitled to court-appointed attorneys.  In sum, though the Second Superseding Indictment could be superseded to include the statutory intent and aggravating factors, as charged Counts 2 and 3 are not death eligible.[2]

---

[2]  Notably, recent updates to the Department of Justice's internal guidelines may allow for an expedited decision as to whether the government will—or will not—supersede the indictment to make Counts 2 and 3 eligible for the death penalty.  It should be further noted that, even in cases where the required statutory aggravating factors triggering capital eligibility are alleged, a defendant's statutory right to court-appointed counsel is extinguished where the Department of Justice declines to seek the death penalty.  *See United States v. Douglas*, 525 F.3d 225 (2d Cir.

1.  **Counts 2 and 3 Neither Charge Any of the Statutory Factors Necessary to Subject the Defendants to Capital Punishment nor Charge Murder in the First Degree Under 18 U.S.C. § 1111**

Title 18, United States Code, Section 3005 directs that "[w]hoever is indicted for treason or other capital crime . . . shall promptly, upon the defendant's request, assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases." Though § 3005, does not define "capital crime," "[t]he term 'capital,' when used to modify 'crime,' means punishable by death." *United States v. Shepherd*, 576 F.2d 719, 728 (7th Cir. 1978). Therefore, a "capital crime" is a crime in which a defendant may be sentenced to death.

But not all statutory offenses—such as § 1111's premeditated murder provision—that could conceivably subject a defendant to capital punishment result in specific charges punishable by death. That is because statutes like § 1111 authorize either life imprisonment <u>or</u> the death penalty, and precise charges seeking the latter must comply with other federal statutory requirements.

The Federal Death Penalty Act, 18 U.S.C. § 3591 *et seq.*, for instance, obliges the government to submit certain statutory intent and aggravating factors before a defendant's crime

---

2008). That is, there is no statutory right to continuity of learned counsel following the government's notice that the death penalty will not be sought. *See In re Sterling-Suarez*, 306 F.3d 1170, 1174–75 (1st Cir. 2002); *United States v. Shepherd*, 576 F.2d 719, 727–29 (7th Cir. 1978); *United States v. Wedell*, 567 F.2d 767, 770–71 (8th Cir. 1977); *United States v. Coles*, 474 F. Supp. 3d 661, 664 (M.D. Pa. 2020) ("Nearly all circuit courts to address the question *sub judice* have held that a defendant's entitlement to learned counsel ends when the government elects not to pursue the death penalty.").

becomes death eligible. *See id.* §§ 3591–92. More specifically, § 3591 authorizes the imposition of the death penalty only if a separate sentencing hearing is held pursuant to § 3593 in which the factfinder considers proof of mitigating and aggravating factors, as listed in § 3592. If the factfinder finds that aggravating factors sufficiently outweigh all mitigating factors to justify a sentence of death or if aggravating factors, without any mitigating factors, are sufficient to justify a sentence of death, the factfinder is authorized to recommend the death penalty. *See* § 3593. If such a recommendation is made, the court must follow the recommendation and sentence the defendant to death. *See* § 3594. However, "*[i]f no aggravating factor set forth in section 3592 is found to exist, the court shall impose a sentence other than death* authorized by law." § 3593(d) (emphasis added).

Consequently, these factors "increase the maximum penalty for a crime" from life imprisonment to death and thus "must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Jones v. United States*, 526 U.S. 227, 234 n.6 (1999); *see United States v. Higgs*, 353 F.3d 281, 298 (4th Cir. 2003) (concluding that the statutory factors "are the functional equivalent of elements of the capital offense" and "must be charged in the indictment"); *United States v. Allen*, 406 F.3d 940, 943 (8th Cir. 2005) (concluding that "[t]he indictment must include at least one statutory aggravating factor to satisfy the Fifth Amendment because that is what is required to elevate the available statutory maximum sentence from life imprisonment to death"); *United States v. Waggoner*, 339 F.3d 915, 918 (9th Cir. 2003) ("Before a federal defendant is eligible for the death penalty, the government must provide notice of its intent to seek the death penalty and specify the aggravating factors upon which it intends to rely."); *cf. United States v. Fell*, 531 F.3d 197, 207 (2d Cir. 2008) (observing that, after the

government initially "did not charge statutory aggravating factors, the government obtained a superseding indictment which included the threshold culpability factors and the statutory aggravating factors."); *accord Ring v. Arizona*, 536 U.S. 584, 609 (2002) (stating that "Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense'" (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 494 n. 19 (2000))); *Sattazahn v. Pennsylvania*, 537 U.S. 101, 123 (2003) ("Put simply, if the existence of any fact (other than a prior conviction) increases the maximum punishment that may be imposed on a defendant, that fact-no matter how the State labels it-constitutes an element, and must be found by a jury beyond a reasonable doubt.").

The upshot is that "[j]ust as all murder does not constitute the crime of capital murder, the term 'capital crime' as used in § 3005 does not encompass the underlying offense when capital punishment cannot be imposed." *Waggoner*, 339 F.3d at 918. Accordingly, the operative question in determining whether a defendant has a statutory right to counsel under § 3005 is whether the "indicted," § 3005, offense has a "capital nature as charged," *United States v. Maestas*, 523 F.2d 316, 319 (10th Cir. 1975). *See also Amsler v. United States*, 381 F.2d 37 (9th Cir.1967) (holding that "it is the possibility of an imposition of a death penalty under the indictment, not the evidence produced at the trial, which determines if the accused is entitled to the procedural benefits available in capital cases").

Here, not only does the Second Superseding Indictment fail to charge murder in the first degree under § 1111, it makes no reference to the statutory intent and aggravating factors "legally essential" to qualify the defendants for capital punishment. *Blakely v. Washington*, 542 U.S. 296,

313 (2004); *see* 18 U.S.C. §§ 3591(a)(2), 3592(c).  Because incorporation of these statutory factors is necessary to "increase the maximum penalty for [the] crime[s]" from life imprisonment to death, they "must be charged in [the] indictment, submitted to a jury, and proven beyond a reasonable doubt."  *Jones*, 526 U.S. at 243 n.6.  Consequently, in the absence of any charged factors, the maximum penalty for Counts 2 and 3 is life imprisonment.  *See Higgs*, 353 F.3d at 298 ("A defendant does not become *eligible* for the death penalty, however, unless the jury finds at least one statutory intent factor, and at least one statutory aggravating factor." (internal citations omitted)).  Stated otherwise—and to borrow from the Fourth Circuit's decision in *United States v. Jackson*—though Counts 2 and 3 invoke charging statutes that enable the government to charge "an aggravated offense . . ., the commission of which exposes the defendant[s] to the maximum punishment of the death sentence," they "actually contain . . . a basic offense without any aggravating factor, the commission of which exposes the defendant to a maximum punishment of life imprisonment."  327 F.3d 273, 286–87 (4th Cir. 2003).  As such, it is the government's position that, as charged, neither Count 2 nor Count 3 are death eligible offenses that entitle the defendants to learned counsel.

      **2.**    **Appointment of Counsel Pursuant to § 3005 is Made to Financially Eligible Defendants**

In construing § 3005, several courts—including the Western District of New York—have concluded that the entitlement it creates extends only to defendants who are financially indigent.  *See* Rule IV.B.1, W.D.N.Y. CRIM. JUSTICE ACT. POLICIES & PROCEDURES, (dated Sept. 2022) ("At the outset of any proceeding in which a *financially eligible defendant* is or may be charged with a crime punishable by death, a court must appoint two attorneys, at least one

of whom is learned in the law applicable to capital cases. 18 U.S.C. § 3005." (emphasis added)); *see, e.g.*, *United States v. Chandler*, 996 F.2d 1073, 1100 (11th Cir. 1993), *as modified* (Sept. 30, 1993), *aff'd*, 218 F.3d 1305 (11th Cir. 2000) ("[Federal law] provides that a defendant who is charged with a crime punishable by death, but is financially unable to retain counsel, 'shall be entitled to the appointment of one or more attorneys.' By the time [the defendant] had been charged with a capital crime, he had already retained counsel. Therefore, the district court did not err in failing to appoint additional counsel under this section."); *Harried v. United States*, 389 F.2d 281, 284 (D.C. Cir. 1967) (Burger, J.) ("Appellant was represented from the preliminary hearing on by a retained attorney. Since the rights under § 3005 relate to appointed counsel, they are inapplicable to the present case."); *United States v. Beckford*, 964 F. Supp. 1010, 1012 (E.D. Va. 1997) (appointing learned counsel to "financially eligible" defendants); *Stitt v. United States*, 369 F. Supp. 679, 698 (E.D. Va. 2005) ("Petitioner also asserts that the statute requires that one of his two counsel be learned in the law applicable to capital cases. Again, Petitioner takes the statutory language out of context. The statute requires that in cases where the court *appoints* counsel for a defendant in a capital case, at least one of those counsel must be so learned. However, the statutory language in no way confers a general right to learned counsel for capital defendants." (emphasis added)); *United States v. Medina-Rivera*, 285 F. Supp. 3d 505, 506 (D.P.R. 2018) ("When defendants are *financially unable to attain retained counsel*, the court shall appoint at least one attorney learned in the law applicable to capital cases." (internal quotations omitted and emphasis added)); *United States v. Massino*, 302 F. Supp. 2d 1, 2 n.1 (E.D.N.Y. 2003) (Garaufis, J.) (after recognizing concern that some defendants could run out of funds, appointing only one learned counsel); *United States v. Maisonet*, No. 03 CIV. 3758 (DC), 2003 WL 21638209, at *3 (S.D.N.Y. July 10, 2003) (Chin, J.) ("[The defendant] claims

that his counsel failed to inform him of his statutory right to a second attorney upon his request. In capital cases, a defendant who is assigned counsel is entitled to two attorneys, at least one of whom is 'learned in the law applicable to capital cases.' Here, even assuming defense counsel did not advise [the defendant] of his right to a second attorney, there was no reason for defense counsel to do so.  First, [the defendant] *retained his attorney*.  It was only on August 13, 1998, that the Court granted [the defendant's] request to appoint his retained counsel as CJA counsel going forward because the case had become much more complex, and [the defendant] *had purportedly run out of funds*." (internal citations omitted and quoting 18 U.S.C. § 3005) (emphases added)).  This construction is not only in harmony with other sections of the United States Code but reflects the common-sense intent of the legislature.

Consider first the other statutes governing appointment of counsel in capital cases. Section 3599 of Title 18, which Congress enacted to "displace[] § 3006A [of the Criminal Justice Act] for persons facing execution," *Martel v. Clair*, 565 U.S. 648, 659 (2012), also affords counsel "in every criminal action in which a defendant is charged with a crime which may be punishable by death," 18 U.S.C. § 3599.  But § 3599 does not create a blanket right to counsel.  Rather, the statute "guarantees that *indigent defendants* in federal capital cases will receive the assistance of counsel, from pretrial proceedings through stay applications."  *Martel*, 565 U.S. at 657 (emphasis added); § 3599(a)(1) (creating a statutory right to counsel for defendants who are "financially unable to obtain adequate representation").

Courts, of course, "should interpret a statute with an eye to the surrounding statutory landscape and an ear for harmonizing potentially discordant provisions." *United States v. Bass*,

9

404 U.S. 336, 344 (1971); *see FDA. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("A court must therefore interpret the statute 'as a symmetrical and coherent regulatory scheme,' and 'fit, if possible, all parts into a harmonious whole.'" (first quoting *Gustafson v. Alloyd Co.,* 513 U.S. 561, 569 (1995); and then quoting *FTC v. Mandel Brothers, Inc.,* 359 U.S. 385, 389 (1959))). Similarly, "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and *more specifically* to the topic at hand." *Brown & Williamson*, 529 U.S. at 133.

These principles dictate that only financially qualifying defendants are entitled to court-appointed learned counsel. After all, construing § 3005 to entitle all defendants to taxpayer-funded representation in capital cases would eclipse Congress's more specific judgment in § 3559(a)(1), that only those defendants "financially unable to obtain adequate representation" are entitled to court-appointed counsel. A more harmonious construction reserves—consistent with § 3599(a)(1)—appointment of counsel to financially eligible defendants and ensures—under § 3005—that any such appointed counsel be "learned" in the law of capital punishment.

Indeed, in amending § 3005 in 1994, Congress focused on the needs of indigent defendants, as opposed to those with the resources to hire their own teams. *See* 140 Cong. Rec. S12314-01 – S12369-01 (1994) (only discussion of amendment related to concern for the fact that defendants with appointed, as opposed to retained, counsel, receiving the death penalty at much higher rates); *see, e.g.*, *id.* at S12325-01 (statement of Sen. Simon) ("What is clear as you look at the death penalty is, if you have enough money and can get the finest attorneys, you will never receive the death penalty. The death penalty is a penalty we reserve for people of

limited means."). As such, it is the government's position that the statutory entitlement to the <u>appointment</u> of learned counsel extends only to those defendants financially eligible under the Criminal Justice Act.

### III. CONCLUSION

The Court should consider the foregoing legal framework and conclude that, while this Court retains discretion to assign counsel, 18 U.S.C. § 3005 does not entitle any defendant to the appointment of learned counsel because the Second Superseding Indictment, as presently charged, does not contain any death-eligible offense. Moreover, to the extent it informs the Court's evaluation of any potential request for court-appointed learned counsel, it is the government's position that only financially indigent defendants qualify for such counsel.

DATED: Buffalo, New York, January 26, 2024.

                                        TRINI E. ROSS
                                        United States Attorney

BY:    s/ JOSEPH M. TRIPI
         s/ NICHOLAS T. COOPER
         s/ CASEY L. CHALBECK
         Assistant United States Attorneys
         United States Attorney's Office
         Western District of New York
         138 Delaware Avenue
         Buffalo, New York 14202
         (716) 843-5839
         Joseph.Tripi@usdoj.gov