IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

             v.                                  23-CR-99-LJV-JJM

SIMON GOGOLACK, ET AL.,
                    Defendants.

_____

## NOTICE OF REVISED AND SUPERSEDING MOTION FOR A PROTECTIVE ORDER AND MOTION

**PLEASE TAKE NOTICE** that, upon an affidavit filed *ex parte* and under seal, the undersigned moves the Court for a Protective Order (attached hereto as **Exhibit A**) with respect to the disclosure of material provided as part of voluntary discovery pursuant to Rule 12 and Rule 16 of the Federal Rules of Criminal Procedure (hereinafter "**the disclosed material**") which has been provided to counsel for the defendants, and for return of **the disclosed material** at the conclusion of the trial.  The affidavit in support of this Protective Order is submitted *ex parte* because this case involves witness tampering, witness retaliation, the murder of a federal witness, and related offenses committed by individuals allegedly engaged in organized and concerted criminal activity.  Pursuant to Rule 16(d)(1), "the court may permit a party to show good cause [for a protective order] by a written statement that the Court will inspect *ex parte*."  *See United States v. Amodeo,* 44 F.3d 141, 147 (2d Cir. 1995) (recognizing as interests warranting closure and sealing government's need to protect integrity of ongoing investigations, including witness safety, and to prevent interference and obstruction).  Additional information regarding the bases for the Protective Order is set forth in the *ex parte* affidavit submitted herewith under seal.

A redacted version of the affidavit is attached hereto as **Exhibit B**.


DATED:  Buffalo, New York, June 28, 2024.

TRINI E. ROSS
United States Attorney


BY:   s/NICHOLAS T. COOPER
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5830
Nicholas.Cooper@usdoj.gov

Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.                                               23-CR-99-LJV-JJM
**(FILED EX-PARTE AND
UNDER SEAL)**

SIMON GOGOLACK, et al.,

                    Defendants.

---

## AFFIDAVIT

STATE OF NEW YORK   )
COUNTY OF ERIE )     )      SS:
CITY OF BUFFALO     )

 **NICHOLAS T. COOPER**, being duly sworn, deposes and states:[1]


 1. I am an Assistant United States Attorney assigned to handle this prosecution on behalf of the United States.   This affidavit is made in support of the government's motion for a Protective Order governing the use of, and access to, material provided as part of voluntary discovery pursuant to Rule 12 and Rule 16 of the Federal Rules of Criminal Procedure (hereinafter "**the disclosed material**") and for return of **the disclosed material** at the conclusion of the trial.

---

[1] A redacted version of this affidavit will be filed on the public docket.

2.      Pursuant to the Court's February 23, 2024 Order (*see* Doc. No. 73, Minute Entry February 23, 2024), the government worked with a dedicated FBI agent, support staff, and a USAO Litigation Technology Specialist to collect, organize, bates-stamp and review discoverable material and prepare it for disclosure to the defendants in this case.   On June 4, 2024, the government produced the discoverable material under the "Attorneys' Eyes Only" provision set in place by the Court as described in greater detail below.   Additional information regarding the provision of discovery to the defense is set forth in the government's motion to exclude time from the Speedy Trial Act clock, *see* Doc. No. 123.

3.      As the Court is well-aware, this case involves serious allegations of witness retaliation, witness tampering, obstruction of justice, kidnapping, witness tampering, possession of firearms, and drug trafficking, among other offenses.   *See* Sec. Super. Indict., Doc. No. 25, (dated Jan. 5, 2024).   The government anticipates calling approximately 75 witnesses during trial.

4.      The interests in favor of a robust and nuanced protective order governing the use and disclosure of investigative materials can seldom be more compelling than in cases, such as this one, where numerous defendants, who are members or associates of international criminal organizations, are charged with conspiring together to obstruct justice by killing a federal witness before she could testify against one of the charged defendants in another case.

5.      ██████████████████████████████████████████
████████████████████████████████████████████████.



6.      This case has already generated a fair amount of pretrial publicity.   *See, e.g.*,

Patrick Lakamp, *Before her death, Pharoah's witness sent texts fearing for her safety: 'I think he's*

*getting me set up'*, THE BUFFALO NEWS,   https://buffalonews.com/news/local/crime-

courts/before-her-death-pharoahs-witness-sent-texts-fearing-for-her-safety-i-think-hes-

getting/article_7825e582-a0d7-11ee-b91c-178f1701c11d.html, (dated Dec. 24, 2023).

7.      Moreover, defendant Simon Gogolack has publicly and privately threatened the sell his discovery and has discussed in jail calls a desire to retaliate against witnesses against him.   Specifically, in a public Facebook post (pictured below), Mr. Gogolack stated that his "discovery will be openly shared."   Moreover, in recorded jail calls, Mr. Gogolack stated that he intends to "sell the names of my fuckin victims" and "I'm gonna sell the names in discovery and the media is going to pay for this shit."



8.      The government also continues to conduct ongoing investigations into conduct associated with the publicly charged conduct here.   ████████████████████████

████████████████████████████████████

████████████████████████

9.      The government's production of **the disclosed material** is intended to promote efficient resolution of this case.   **The disclosed material** encompasses approximately three terabytes (3TB) of data, and includes HSI and FBI case materials, investigative materials, materials relating to the execution of various search warrants, video footage, recorded jail calls, laboratory reports, extraction data for various electronic devices that were seized, and other items of evidence.   The government submits that the information it has agreed to disclose voluntarily exceeds the strictures of Rule 16, and includes materials more properly categorized as 3500 materials and/or documents not required to be produced pursuant to Rule 16(a)(2), which states:

> Except as Rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case[.]   Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

10.      The proposed Protective Order, attached as **Exhibit A**, is designed to mitigate the serious risk to safety and risk of intimidation that can result from dissemination of such investigative and case-related materials.   The government is concerned that disclosure of witness names, identities of victims, or material extracted from seized electronic devices, to the media or to any other third-party will create a dangerous and stressful situation for potential government witnesses.   Should dissemination of witness/victim names or statements be permitted, a potential witness may be labeled a "snitch," which, as the Court knows, makes it inherently more difficult for the authorities to ensure witness safety, to ensure that witnesses appear at trial and do not attempt to avoid law enforcement efforts to serve

them with a trial subpoena, and for witnesses and victims to live their life without fear or duress.

11.     The proposed Protective Order is narrowly tailored to achieve the dual purposes of facilitating efficient resolution and protecting witnesses from intimidation, harassment, and threats.   The proposed protective order does not prevent attorneys for the defendants from reviewing the material with their clients, discussing the material with their clients, or preparing to defend against these charges.

12.     The proposed Protective Order permits defense counsel to share the materials with attorneys, investigators, and support staff at any time during the pendency of this case, as well as with the defendants, but includes appropriately tailored provisions to ensure that such materials will not be inappropriately disseminated, or that the contents of any such materials will be used to expose, coerce, intimidate, threaten, or retaliate against government witnesses.

13.     Relevant provisions of the Protective Order designed to ensure the safety of witnesses include, among others, requirements that counsel for the defendants and the defendants themselves (1) not provide **the disclosed material** to third parties, (2) not utilize members or associates of the Outlaws Motorcycle Club or the Rare Breed Motorcycle Club as agents of the defendant or defense counsel (thereby prohibiting **the disclosed material** from being provided to members or associates of said "clubs"), and (3) not publish **the disclosed material** on the internet.   These protective provisions are designed to avoid problems

associated with non-parties or third parties obtaining copies of these materials or snippets of information included within the materials and subsequently disseminating such materials to others in person, via phone, or on social media.

14.    In part, the discoverable material includes (1) FBI and HSI reports related to arrests, search warrants, surveillance, and review of evidence;[2] (2) cellphone and electronic device extractions related to devices seized from various defendants, as well the victim, Crystal Quinn; (3) laboratory reports, including DNA laboratory reports, some of which include personal identifying information of defendants or victims/witnesses; (4) jail calls between defendants and other individuals; (5) photographs of Quinn's dead body; (6) Quinn's autopsy report and toxicology report; (7) phone records of incoming and outgoing calls and text messages of various defendants and other witnesses; (8) post-arrest interviews of certain defendants; (9) video surveillance (which depicts witnesses and defendants but also depicts civilians who may not be called as witnesses); (10) subpoena / search warrant returns for applications such as PayPal, Reddit, CashApp, Google, et cet.; (11) search warrants and search warrant returns; (12) photographs from search warrants; (13) historical cell-site information.

15.    There is no legitimate, lawful purpose for distributing the discoverable material in this case to third parties, which would enable such third parties to use discoverable materials to attempt to discern the identity of victims and civilian witnesses in order to expose

---

[2] Many of these reports are technically non-discoverable pursuant to Rule 16(a)(2) or Title 18, United States Code, Section 3500.

such victims and witnesses to third-parties; or to post  and disseminate such information broadly on the  internet; or to provide it to members of motorcycle gangs, the media, or otherwise use it for reasons other than for preparing a lawful defense on the merits.   The risks of such dissemination, which at their worst result in dead witnesses, far outweigh the minimal restrictions placed upon defendant's and their attorneys.

**OTHER CASES WHERE PROBLEMS WITH UNAUTHORIZED DISSEMINATION OF PROTECTED MATERIAL HAVE LEAD TO WITNESS TAMPERING, TRIAL ISSUES, AND/OR SAFETY CONCERNS**

16.     Generally, the problems with dissemination of certain material to the defense have occurred in several contexts in various cases within this District wherein non-parties, third parties, and defendants have disseminated information in jails, on social media, or otherwise in an effort to stifle witness trial participation.   Examples from recent cases, which I have been informed about by my colleagues, follow:

a.     *United States v. Bongiovanni, et al.*, Case Nos. 19-CR-227, 23-CR-37, involved charges of witness tampering, public corruption, sex trafficking, drug trafficking, and obstruction of justice.   A protective order was issued.   *See id.* Doc. No. 347.   Nevertheless, counsel for Peter Gerace, including one of his present attorneys in that case, Eric Soehnlein, listed government witness Crystal Quinn as a defense witness.   Although the protective order prevented defense counsel from disclosing to the defendant the names of witnesses on the government's witness list until a certain number of days before trial, it did not prevent defense counsel from listing the government's witnesses on the

defendant's own list and then reviewing the defense witness list with the defendant, potentially circumventing the protective order, and identifying government witnesses to the defendant in a roundabout way. Crystal Quinn was ultimately murdered, and defendants Gerace, Ermin, Hinkle, and Gogolack have been indicted by a grand jury for Witness Tampering Conspiracy surrounding her murder.  *See United States v. Gogolack et. al.*, 23-cr-99, Doc. No. 25, Second Superseding Indictment, Count 2.

b.  *United States v. Luis Martinez*, Case No. 21-CR-89-JLS, involved a narcotics conspiracy and the possession of firearms in furtherance of drug trafficking in which a protective order (*see id.* at Doc. No. 72) existed prohibiting defense counsel, Mr. Soehnlein, from making or providing copies of the protected materials for the defendant.  After learning that certain prohibited materials had been disseminated, causing a government witness to be contacted, law enforcement executed search warrants on Martinez's person and jail cell, and discovered some of the prohibited materials, including grand jury transcripts and a cooperation agreement, along with handwritten notations identifying the true names of protected witnesses.  Mr. Soehnlein ultimately attributed responsibility for this violation of the protective order to a miscommunication with his support staff.

c.   *United States v. Dalvon Curry*, Case No. 17-CR-103-LJV, involved a RICO murder trial in which a Protective Order (*see id.* at Doc. No. 412) was issued.   Notwithstanding the Protective Order, protected information including the names of government witnesses were disseminated by third parties on social media during trial.   The United States Attorney's Office and the FBI worked to obtain numerous search warrants investigating the source of the leaked materials, which caused tremendous government time and resources to be expended and placed witnesses in jeopardy.

d.   *United States v.* Roderick *Arrington*, Case No. 15-CR-33, was a RICO murder case in the United States District Court for the Western District of New York.   The *Arrington* case also involves, among other things, dissemination of *Jencks* materials subject to a Protective Order.   During the course of the litigation, Roderick Arrington revealed that he obtained certain materials the government contends were subject to a Protective Order, from Arrington's then-attorney ███████████   Indeed, in a sealed *pro se* filing in that case on February 28, 2022, Arrington stated ████████████████████████ ████████████████████ [3] ████████████████████

---

[3]  The undersigned discussed the matter with another AUSA in the WDNY who reviewed the *pro se* filing, which is available upon request of the Court.

████████████████████████████

██████████████████████

e.      *United States v. Lavon Parks*, Case No. 19-CR-87-V, involves a defendant who was released pending trial following disclosure of pre-trial submissions, including disclosure of the government's witness list.   The defendant was subsequently remanded after contacting a government witness following his release.[4]

17.      The above examples are not exhaustive.   There have been very few narcotics cases involving civilian and/or cooperating witnesses prosecuted by the undersigned and other experienced prosecutors wherein charged defendants and/or their proxies have not made some effort to pressure or influence witnesses.   Often times, these cases, which arise while the government attorneys and agents are in the throes of preparing for or conducting

---

[4] The undersigned discussed the facts with an AUSA in the WDNY who is familiar with them.   See also Doc. No. 624, which provides:

| 07/29/2022 | Minute Entry for proceedings held before Hon. Lawrence J. Vilardo: Oral Argument held on 7/29/2022 re: 620 Sealed Document - GOVERNMENT'S MOTION FOR RECONSIDERATION OF JULY 8, 2022 ORDER TEMPORARILY RELEASING DEFENDANT LAVON PARKS filed by USA. AUSA Higgins and USPO Linton detail violations, and request defendant's remand. Attorney Buth does not oppose. Defendant remanded. Appearance. For government: AUSA Laura Higgins and AUSA Pierre Richard Antoine. For defendant: Cheryl Meyers Buth. Defendant present. USPO Melissa Linton. (Court Reporter Ann M. Sawyer.)(CMD) (Entered: 07/29/2022) |

trial, are difficult to investigate and prove—particularly where the attorneys most knowledgeable of the facts are preparing for or engaged in trial.

18.     The government has a strong interest in avoiding the occurrence of such issues in this case.

## DISCLOSURE OF WITNESS IDENTITIES AND/OR STATEMENTS IN CASE NO. 19-CR-227

19.     Additionally, it appears that former counsel for defendant Gerace, attorney Steven Cohen, may have provided information to a potential defense witness that was subject to a Protective Order.   *See United States v. Bongiovanni, et al.*, Case Nos. 19-CR-227, 23-CR-37 Doc. No. 109.

20.     In particular, on June 28, 2021, (*see id.* at Doc. No. 136) the government submitted an affidavit under seal regarding a conflict of interest pertaining to defendant Gerace's prior counsel, ███████████ .

21.     As part of the sealed affidavit, the government set forth certain excerpts quoting witness testimony before the Grand Jury.   *See id.* at Doc. No. 136 at ¶¶ 6-7.   The sealed affidavit also contained an excerpt from an FBI 302 report summarizing information provided by the same witness. *See id.* at Doc. No. 136 at ¶ 16.   The sealed affidavit specifically requested that the defense be prohibited from providing copies of the affidavit to defendant Gerace or any third parties, as follows:

26.    Because this affidavit contains sensitive details relating to the Federal Grand Jury information, law enforcement sensitive documents, and information pertaining to Mr. Daniels and the legal representation of defendant Peter Gerace Jr., the government respectfully requests permission for this affidavit to be filed under seal. Additionally, because this affidavit contains Grand Jury testimony pertinent to the resolution of this motion, the government further requests that counsel for the defendant be prohibited from providing copies of this affidavit to defendant Gerace, codefendant Bongiovanni, or any third parties without seeking further Court order. As the Court is aware, the defense is not entitled to Jencks Act materials, as summarized above, until after a witness testifies on direct

11

examination, and Rule 16(d)(1) of the Federal Rule of Criminal Procedure permits a Court to deny, restrict, or defer discovery and inspection.

*See id.* at Doc. No. 136 at ¶ 26.


22.    On July 1, 2021, U.S. District Judge John L. Sinatra issued a Minute Entry (*see id.* at Doc. No. 141) confirming that counsel for defendant Gerace could not provide him with a physical copy of the above-referenced government affidavit, and that the terms of the previously issued Protective Order (*see id.* at Doc. No. 109) applied to the government's affidavit.   The entirety of the Minute Entry follows:

Minute Entry for proceedings held before Hon. John L. Sinatra, Jr.: Status Conference as to Peter Gerace held on 7/1/2021 regarding the government's 135 motion to determine whether a conflict of interest exists regarding representation of Mr. Gerace. Parties agree that defense counsel may share the government's affidavit with Mr. Gerace but may not provide him with a physical copy of the affidavit, and agree that the terms of the previously-issued protective order (Dkt. 109) apply to the government's affidavit. Court grants defense counsel's request to work with the government to identify possible Curcio counsel in the event the Court determines a waivable conflict exists. Government to supply Court with a conflict list. Court sets briefing schedule as to the government's motion. Defendant's response due 7/16/2021. Government's reply, if any, due 7/23/2021. Motion hearing set for 7/27/2021 at 10:00 AM in US Courthouse, 2 Niagara Square, Buffalo, NY 14202-3350 before Hon. John L. Sinatra, Jr. Appearances. For government: Brendan Cullinane and Joseph Tripi. For defendant: Joel Daniels. Defendant present. (Court Reporter Ann Sawyer) (KLH) (Entered: 07/01/2021)

23.     The Protective Order (*see id.* at Doc. No. 109) applicable to the government affidavit specifically prohibited copies or verbal disclosure of protected materials, as follows:

> **ORDERED**, that copies of the material set forth above shall not be provided, or the substance of any such material verbally disclosed, to third parties except those persons or entities employed or engaged for the purpose of assisting in the defense of this action; and it is further

and further prohibited dissemination of protected materials *through any other means*, as follows:

> **ORDERED**, that the unauthorized copying, dissemination, and/or posting of copies, or the contents, of the above material on the internet or through any form of social media, or through any other means, shall constitute a violation of the terms of this order; and it is further

24.     Notwithstanding the provisions of the Protective Order, it appears that prior counsel for defendant Gerace may have disseminated protected information, which was

contained in the government's affidavit (see Doc. No. 141), by *any other means*, that is, by

paraphrasing and retyping the information into a letter on May 22, 2022, which was then

distributed to a third-party, as follows:



25.     When the above excerpt, particularly the portion concerning ███████████,

is compared with the information set forth in paragraphs 6, 7, and 16 of the government's

affidavit (*see id.* at Doc. No. 141), there is an inference that prior counsel for defendant Gerace

obtained protected materials and disseminated them contrary to the Protective Order.


26.     The proposed Protective Order attached as **Exhibit A** is designed to eliminate

any ambiguity and to make plain that dissemination of information to third-parties, in any

format, is prohibited.


27.     Of note, current counsel for defendant Gerace, Mr. Foti, submitted proposed

revisions to the government's protective order, which would essentially allow counsel for the

defendants to share or provide **the disclosed material** to any person the defendant "seeks to

interview" in connection with pretrial proceedings, trial preparation, or other proceedings in

this action.  Such a broad provision essentially places no restriction at all on the use or dissemination of **the disclosed material**, allowing it to be disseminated to anyone the defendant claims he sought to interview as a witness.  Such a broad provision is also antithetical to provisions of the Crime Victims' Right Act, which provides that victims the right to, among other things, be reasonably protected from the accused and to be treated with fairness and with respect for the Victim's dignity and privacy.  *See* 18 U.S.C. § 3771(a).

### DANGERS POSED BY POTENTIALLY INTERESTED THIRD PARTIES

28.     Several employees of Gerace's business, Pharaoh's Gentlemen's Club (PGC), are members of the Outlaws Motorcycle Club ("Outlaws MC").   Defendant John T. Ermin a/k/a Tommy O was until the instant indictment believed the be the national or international president of the Outlaws MC.  Moreover, defendant Mike Roncone was until the instant indictment the Buffalo Chapter vice president of the Rare Breed Motorcycle Club ("RBMC"), an Outlaws MC support club.  Defendants Frank Knight and Howard Hinkle are both RBMC associates.

29.     I am especially concerned that at least some of the defendants will seek to employ a member of the Outlaws, Rare Breed Motorcycle Club, or an Outlaws support club as an agent of the defense team to circumvent provisions of the protective order. ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



In my view, a defendant should not be able to circumvent a protective order provision prohibiting the sharing of evidence with other members of a criminal organization by designating that person as a paralegal, legal assistant, private investigator, or other agent of his defense.

30.     This is especially true where, as here, law enforcement considers the Outlaws MC to be a dangerous and violent criminal organization—a concern buttressed by a long series of successful prosecutions against the   Outlaws MC and its members.   *See, e.g.*, *United States v. Starrett*, 55 F.3d 1525, 1533 (11th Cir. 1995) ("The Outlaw Motorcycle Club (the "Outlaws") is one of the four largest national 'one-percenter' motorcycle clubs. Witnesses testified that the term 'one-percenter'—usually depicted by the symbol '1% er'—is motorcycle

gang parlance meaning that the club is comprised of the one percent of the overall biker population who maintain total independence from society, and who are known to cause the most trouble, or 'raise the most hell.'"); *see also United States v. Bowman*, 302 F.3d 1228, 1231 (11th Cir. 2002) (former international president of the Outlaws convicted of racketeering, conspiracy to murder, and various other offenses); *United States v. Lawson*, 535 F.3d 434, 438 (6th Cir. 2008), *as amended* (Oct. 9, 2008) (RICO prosecution relating to Outlaws MC "Green Region", including a murder at a strip club.).

31.     Moreover, judicial findings in this case already support law enforcement's conclusion that Ermin (and co-defendant Scott Barnes) present a danger to the community. For example, after a lengthy detention hearing regarding defendant Ermin, Chief District Judge Elizabeth Wolford issued a written decision remanding defendant Ermin.   *See United States v. Ermin*, 23-MR-00552-EAW, 2024WL33788 (January 3, 2024).   Chief Judge Wolford noted, in part:

> Also recovered at Defendant's residence was a significant amount of legal paperwork, supporting the government's position that the Outlaws MC, and more specifically Defendant, regularly monitor court proceedings and law enforcement activity around the country.   The legal paperwork included the sealed indictment against Gerace in Case No. 19-cr-227; a search warrant executed in March 2021 at 19 Grattan Street in Cheektowaga, New York and a listing of the items seized from 19 Grattan with yellow highlighting added to one of the items seized (one piece of mail address to Raslawsky from Pharaoh's) and various internal law enforcement documents (including a Report of Investigation that purports to identify a confidential informant by name using his ATF CI number).   The search of Defendant's residence also recovered a list of members of the Outlaws MC imprisoned around the country, including Edgar Dekay, II a/k/a Special Ed ("Dekay"), who was indicted in this District for a RICO conspiracy and other crimes involving the Kingsmen Motorcycle Club ("KMC").   (*See United States v. Pirk et al.*, 1:15-cr-00142-EAW-MJR, Dkt. 33 (W.D.N.Y. March 16, 2016) (hereinafter "Case No. 15-cr-142")). Dekay's plea agreement in Case No. 15-cr-142 was also found at Defendant's residence. Also found was a letter from Anthony Dloniak ("Dloniak") addressed to the

Outlaws MC Clubhouse on Northumberland Street in Buffalo (but recovered at Defendant's residence), wherein Dloniak states, among other things, that Dekay "was good" in his opinion and is "standing tall" (i.e., not cooperating), that Defendant told "Pirk" that he could "patch over when ever he wanted," and that "Flip" claimed that Dekay "told."

*Id.* at *4 (footnotes and internal citations to exhibits omitted).



34.     The RICO trial in *United States v. David Pirk, et al.*, 15-CR-142-EAW, was conducted before United States District Court, Chief Judge Elizabeth A. Wolford in early 2018.   During the trial, as anyone who participated in or observed the trial could likely attest, members of the Outlaws MC attended every day of the trial, observed testimony, and appeared to take notes.   The presence of the Outlaws in the courtroom caused considerable concern for law enforcement, witnesses, and weighed over the trial.   Moreover, in that case,

there was information that KMC leader, David Pirk, and Outlaws MC leader, John Ermin, had a meeting at PGC to discuss issues pertinent to these two motorcycle gangs.

35.     In addition to the Outlaws MC, defendant Gerace has been identified by law enforcement as a member or associate of Italian Organized Crime (IOC).

36.     Upon information and belief, recently, a member of the Kingsmen and known associate of the Outlaws MC disclosed his desire to see AUSA Joseph Tripi and Chief Judge Wolford executed during the trial of Gerace.   The individual stated while in BOP custody, he made connections with high-ranking members of organized crime, including "mafiosos" and members of the Outlaws MC.   The individual stated that he felt like someone "could" engage in violence toward the prosecutor and/or Chief Judge Wolford, and specifically stated members of the Outlaws MC would attend the trial of Gerace. ████████████████

████████████   █████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████

37.     ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████   Additionally, the allegations in

Gerace's related case, 19-CR-227, provide an evidentiary basis to conclude that Gerace is a

member or associate of Italian Organized Crime, otherwise known as the mafia.   █████████

███████████████████████████████████████████████████████████

████████████████████████████

38.     The mafia has a well-documented history of intimidating and otherwise

attempting to silence witnesses through violence and acts of violence, and/or retaliating

against witnesses who have provided information to law enforcement.   Furthermore, even

non-members and non-associates friendly with targets and subjects of the government's

investigation could engage in witness intimidation, tampering, and retaliation.

39.     The government has legitimate fears of witness tampering and retaliation in

this case.   The proposed Protective Order is one measure that will help to ensure witness

safety and availability by helping to shield witness identities until trial and, by doing so, will

also help to ensure the on time and orderly progress of the trial.   ████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████

40.     ███████████████████████████████████████████████

███████████████████████████████████████████████████████████

---

[5] ███████████████████████████████████████████████████████████



41.     As set forth in the indictment, the Outlaws MC's motto is "God Forgives, Outlaws Don't," and consistent with that motto searches in this case revealed a plethora of evidence the FBI seized from the Outlaws MC clubhouse indicating that the Outlaws will, as a matter of course and as an organizational commitment, seek to intimidate and tamper with witnesses, like Crystal Quinn, who pose a threat to their criminal organization.

### PROVISIONS REGARDING THE RESPONSIBLE HANDLING OF THE DISCLOSED MATERIAL AND ADEQUATE SUPERVISION OF SUPPORT-STAFF AND OTHER MEMBERS OF DEFENSE TEAM INVOLVED IN THE HANDLING OF THE DISCLOSED MATERIAL.

42.     The proposed protective order includes various provisions requiring that the attorneys in possession of **the disclosed material** comply with the New York Rules of



Professional Conduct regarding the adequate supervision of lawyers, agents, and staff-members permitted access to **the disclosed material**.   *United States v. Luis Martinez* (Case No. 21-CR-89-JLS), a case where a member of an attorney's support staff improperly provided protected materials to a prohibited party (causing a witness to be contacted), presents a fact pattern demonstrating why such a provision is necessary.   Assuming that all attorneys are responsible for abiding by the Rule of Professional Conduct, tying such rules to the provisions of a protective order imposes no additional burden.

43.     The proper handling of confidential material has already arisen in this case. For example, in or about April 2024, I learned that an individual on Facebook claimed to "live" with one of the attorneys in this matter.   The individual claims that "[t]he dude [Crystal Quinn] was with had pressed Xanax bars and she took 1 that had felt in it and she wasn't used to any opiates.   It was not enough to kill 400 people but yea, trust the feds." Upon information and belief, the government has never proffered publicly that Ms. Quinn "took 1" of the purportedly "pressed Xanax bars" this individual refers to, which suggests that this individual learned of a defendant's potential defense through his or her counsel.   This image is screenshotted below:



44.     The Supreme Court has made clear that, "the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185 (1969).   The Federal Rules of Criminal Procedure clearly permit this Court to enter such an order.   Fed. R. Crim. P. 16(d)(1) ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."). Such "good cause" exists when disclosure "will result in a clearly defined, specific and serious injury." *In re Terrorist Attacks on September 11, 2001*, 454 F.Supp.2d 220, 222 (S.D.N.Y.2006). Good cause for protective orders has been found when there are legitimate concerns for witness safety.   *See United States v. Garcia*, 406 F. Supp. 2d 304, 307 (S.D.N.Y.2005) ("Where

there is a legitimate concern for witness safety, a protective order of the sort requested by the Government will facilitate the valuable practice of early and expansive disclosure of 3500 material while reducing the danger of obstruction of justice.").   The potential for interference with ongoing criminal investigations has also provided good cause for protective orders.   *See United States v. Smith*, 985 F. Supp. 2d 506, 531 (S.D.N.Y. 2013) ("Thus, where public disclosure of certain materials might officially reveal the sources and methods law-enforcement officials have used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges, courts have found it appropriate to enter a protective order.") (citing *United States v. Bin Laden*, No. 98–CR–1023, 2001 WL 66393, at *2 (S.D.N.Y. Jan. 25, 2001) (noting that the court adopted a protective order because dissemination of discovery materials would "jeopardize the ongoing Government investigation into the activities of alleged associates of the Defendants"); *United States v. Milken*, 780 F. Supp. 123, 127 (S.D.N.Y.1991) ("[T]he public should have access to information as to the general nature and extent of defendant's cooperation, if disclosure can be made without jeopardizing ongoing or future investigations ....")).   Courts have also recognized that the privacy interests of third parties can, in certain circumstances, justify issuance of protective orders.   *See, e.g.*, *United States v. Simpson*, No. 3:09-CR-249-D, 2010 WL 3633611, at *2 ("The primary concern is that public disclosure of the persons associated with criminal activity may cause damage to the unindicted person's reputation with no corresponding opportunity to defend his reputation at trial.").

45.     On May 29, 2024, the government provided a copy of the proposed Protective Order to each respective defense counsel with a request for the defense to respond to the

government's proposed order as soon as possible.   Mr. Dell, counsel for defendant Roncone, responded to the government on May 30, 2024, indicating "On behalf of Michael Roncone, I have no issue with the proposed protective order."   Mr. Hutchison, counsel for defendant Barber, responded to the government on May 31, 2024, indicating, in part "I have a few mod[erate] requests, nothing crazy" and expressed that he would follow up via email[7].   Mr. Muscato, counsel for defendant Ermin, responded to the government on June 3, 2024, and generally identified certain provisions with which he took issue.

46.    Based upon that feedback, during the June 3, 2024 status conference, the government expressed optimism that it would be able to make slight modifications to its proposed protective order and reach an agreement on consent with defense counsel.

47.    On June 4, 2024, Mr. Foti provided the government with a defense-version of the proposed protective order, which he represented that he drafted with input or edits from the majority of defense attorneys on this case, and which six of the defendants had expressed agreement with.   Although it is unclear which defendants participated in the drafting of Mr. Foti's proposed protective order, Mr. Bagley (counsel for defendant Gogolack), Mr. Montroy (counsel for defendant Knight), and Mr. Stachowski (counsel for defendant Byrd) never responded to the government regarding its proposed protective order.   In any event, there is

---

[7] On June 10, 2024, Mr. Hutchison emailed the government, explaining that his only concern with the government's proposed protective order was to ensure that he could provide copies of electronic evidence with his client at the Niagara County Jail to ensure that she would be able to review the discoverable material.

simply too much disagreement between the government and the defense as to the specifics of

the Protective Order and, as a result, this motion is necessary.


48.    For the above reasons the government requests that the Court issue the

Protective Order attached hereto as **Exhibit A** over the objections of defense counsel.


DATED:   Buffalo, New York, June 28, 2024.


TRINI E. ROSS
United States Attorney


BY:    s/NICHOLAS T. COOPER
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5830
Nicholas.Cooper@usdoj.gov

Subscribed and sworn to before me
this 28th day of June, 2024


s/KAREN A. CHAMPOUX
Commissioner of Deeds
In and for the City of Buffalo, New York.
My Commission Expires Dec. 31, 2024

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

        v.                                         23-CR-99

SIMON GOGOLACK, ET AL.,

                 Defendants.

_____

## **PROTECTIVE ORDER**

As part of discovery in this action, the government has provided to counsel for the defendants pre-trial discovery material, including but not limited to: HSI and FBI case materials, investigative materials, materials relating to the execution of various search warrants, video footage, recorded jail calls, laboratory reports, extraction data for various electronic devices that were seized, and other items of evidence, all of which were provided on portable hard drives.  The government has requested a protective order limiting the dissemination of this material on the grounds that information contained therein could jeopardize the safety of individuals if it becomes publicly known, could compromise ongoing investigations, and could violate the dignity of a decedent, Crystal Quinn.

**NOW**, upon motion of the government, it is hereby

**ORDERED**, that the material set forth above shall be used by counsel for the defendants, the defendants, and other attorneys, interns, clerks, licensed investigators, and/or expert witnesses, solely in connection with pretrial, trial or other proceedings in this action, including any appeals; and it is further

**ORDERED**, that the material set forth above shall not be disclosed to either third parties or the public by the defendants, counsel, or any agent of counsel or the defendants or the defendant except as necessary in connection with pretrial proceedings, trial preparation or other proceedings in this action; and it is further

**ORDERED** that no member or associate of the Outlaws Motorcycle Club, Rare Breed Motorcycle Club, Chosen Few Motorcycle Club, Kingsmen Motorcycle Club, Nomad Motorcycle Club, or any support club of the Outlaws Motorcycle Club may serve as a defendant or counsel's agent; and it is further

**ORDERED**, that copies of any laboratory reports regarding **any** victim shall not be provided to the defendants, however, counsel for the defendants may review those materials with the defendants during in-person meetings; and it is further

**ORDERED**, that the unauthorized copying, dissemination, and/or posting of copies, or the contents, of the above material on the internet or through any form of social media, or through any other means, shall constitute a violation of the terms of this order; and it is further

**ORDERED**, that no defendant, attorney, or agent thereof shall supply any third parties or the public with any written summaries pertaining to the above-referenced material; and it is further

**ORDERED**, that nothing in this order shall preclude counsel for the defendants or the defendants from disclosing the material during the course of the litigation of this action in pretrial proceedings, in memoranda filed, at trial or in post-trial proceedings, except that any identifying information should be redacted from any public filings; and it is further

**ORDERED**, that any unredacted filings shall not be disclosed to either third parties or the public by the defendants, counsel, or any agent of counsel or the defendants except as necessary in connection with pretrial proceedings, trial preparation or other proceedings in this action; and it is further

**ORDERED**, that in the event a defendant moves to suppress evidence obtained as a result of the search warrant, counsel may refer to the search warrant application and affidavit filed under seal as necessary to the resolution of the motion, but shall not attach copies of any search warrant applications or affidavits to any publicly filed pleading and shall not disclose the names of any uncharged individuals, confidential sources, or suspected confidential sources by name in any publicly-filed document;

**ORDERED**, that counsel for the defendants or the defendants may apply to the Court for an order specifically permitting public disclosure of the above-mentioned material; and it is further

**ORDERED,** that any continuing discovery provided pursuant to Rule 16(c) of the Federal Rules of Criminal Procedure shall be governed by the terms of this Order; and it is

further

**ORDERED**, that at the conclusion of the litigation of this action, including any direct appeal, counsel for the defendant and the defendant shall return all copies of the above-mentioned material to the government immediately upon request of the government, or certify to the government that such material has been destroyed; and it is further

**ORDERED**, that a defendant, counsel, and agent thereof shall neither contact nor cause the contact of a witness or suspected witness represented by counsel but, rather, shall communicate with any represented witness or suspected witness through that individual's counsel; and it is further

**ORDERED**, that a defendant, counsel, and agent thereof shall neither contact nor cause the contact of a co-defendant represented by counsel but, rather, shall communicate with any represented defendant through that individual's counsel; and it is further

**ORDERED**, that all counsel adequately supervise any lawyers, agents, and/or staff members consistent with Rules 5.1, 5.2, and 5.3 of the New York Rules of Professional Conduct; and it is further

**ORDERED**, that counsel for the defendants and any agent thereof shall comply with Rule 1.6 of the New York Rules of Professional Conduct and, specifically, shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure or use of, unauthorized access to, information protected by Rules 1.6, 1.9(c), or 1.18.

**ORDERED**, that counsel for the defendants shall ensure compliance with this Order by each member of the defense team, and provide a certification to the U.S. Attorney's Office listing the name of each person on the defense team who has been permitted to review the materials.

DATED:  Buffalo, New York, June _____, 2024.

_____
HON. JEREMIAH J. MCCARTHY
United States Magistrate Court Judge