UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                                                                    **DECISION AND ORDER**

                                                                                     Case No. 1:23-cr-0099(LJV)(JJM)

PETER GERACE JR., *et al.*,

                                   Defendants.
_____

        Defendants are charged in a Second Superseding Indictment [24][1] with various drug and firearms offenses, as well as obstruction of justice, witness tampering, and witness retaliation conspiracies related to the death of Crystal Quinn, a federal witness. Before the court are defendants' motions[2] seeking a hearing to determine an appropriate sanction for the government's violation of my order to provide voluntary discovery by May 23, 2024 [74]. The motions have been referred to me by District Judge Lawrence J. Vilardo for initial consideration [28].

        In opposing the motions, the government argues that a hearing is unnecessary because "[t]he facts are well-established and not complex". Government's Consolidated Response [142] at 26. I agree: the issues which defendants would seek to explore at a hearing (Gogolack motion [131] at 4; Gerace Memorandum in Support [132-1]) are sufficiently answered by the government's submission to enable me to conclude that the sanction which the

---

[1]     Bracketed references are to the CM/ECF docket entries, and page references are to CM/ECF pagination.

[2]     [131, 132, 135, 137, 139, 140, 141, 150, 163, 165].

government proposes[3] is clearly an inadequate response to its misconduct in this case, and that a more significant sanction is warranted.

During oral argument a week ago, I stated that although "the government's conduct has been unjustifiable", I found no "indication of bad faith". [171] at 27-28. However, upon further review of the government's submission, I now realize that I spoke too soon. Moreover, the sanction which I had intended to recommend, namely vacating my "ends of justice" exclusion of time from the Speedy Trial Act ("STA") calendar (18 U.S.C. §3161(h)(7)(A)) would have little impact, since STA time was also automatically excluded under 18 U.S.C. §3161(h)(1)(D) due to the pendency of various unresolved motions.

Therefore, I will set forth my Findings and Conclusions below, and invite further briefing by the parties as to an appropriate sanction.

**FINDINGS**

The Second Superseding Indictment was filed on January 5, 2024. On February 23, 2024 I held a hearing to discuss pretrial scheduling [124]. The government requested 90 days for the production of voluntary discovery, explaining that "this case involves a significant amount of discoverable material. It's a significant undertaking . . . . And so as opposed to setting a shorter deadline and rushing things for lack of a better word, I'd ask that we set 90 days and allow a thorough review and production of discovery. Id. at 6-7.

It added that "[t]he virtue of providing 90 days, even though it's an extra 30 days and that extends the process to be sure, but because of the voluminous discovery at issue here, enabling the Government to get this right and do discovery appropriately and make sure that no

---

[3]    "If the Court is of a mind to sanction the government, running twelve days of speedy trial time is more than sufficient." Government's Consolidated Response [142] at 4.

stone is left unturned . . . almost invariably will save time on the back end". Id. at 7. When I asked whether there was "a possibility of doing rolling production during the 90 day period", counsel for the government responded "I certainly think so, Judge. I think that there's material that is probably close to ready to go out at this point because we've obviously been working on it since the return of the indictment . . . . And I would be open to that, to providing on a rolling basis what's available". Id. at 10.

        Based on that representation, I stated: "I'll give you the 90 days. Okay? But I do want - to the extent that you can, I want the discovery to be produced sooner than that date as best you can. On a rolling basis so that people can hit the ground running in terms of what they think they need to do . . . . [T]he production should occur on or before May 23". Id. at 12. Counsel for the government acknowledged that he understood (id.), and I confirmed that directive by Text Order the same day [74]. My Order placed no restrictions on defendants' use or dissemination of that discovery, since none had been requested by the government.

        "The prosecutors exited the status conference that day with the intention of providing rolling discovery to the extent it was practicable. However, when they walked out of court that day, they also returned to the intensity of a complex trial."[4] Government's Consolidated Response [142] at 17. However, that trial concluded in "mid to late April" ([171] at 8), well in advance of the May 23, 2024 deadline for production of voluntary discovery. At some point thereafter, but "unforeseen during the February 23, 2024, status conference - the government realized it was impractical to provide organized rolling discovery in a piecemeal fashion beyond the substantial discoverable materials previously produced to defendants Gerace, Ermin, Gogolack, Roncone, Hinkle, and Barnes in the context of their separate but related

---

[4]     United States v. Bongiovanni, 19-cr-227.

criminal cases". Id. at 2. However, the government did not advise either defendants or the court of that fact.

"By May 20, 2024, the government's discovery production was complete and was ready to be turned over. However, "it occurred to the prosecutors that they had overlooked the need for a protective order". Id. at 18. "On May 29, 2024 [six days after production was due], the prosecutors emailed counsel for the defendants a proposed protective order in an effort to see if an agreement could be reached." Id. at 19. At a conference on June 3, 2024 [147], the government advised that the production which I had ordered to be made by May 23, 2024 had not yet been made, due to the absence of a protective order.

By Text Order issued that same day, I ordered that "the government's production of discovery shall be deemed attorney's eyes only pending further order of the court and without prejudice to defendants' right to argue against that designation", and that "defendants may also file motions directed to consequences of the government's failure to abide by my February 23, 2024 Text Order [74] requiring the government to produce discovery to them by no later than May 23, 2024" [122]. The pending motions ensued.

## CONCLUSIONS

The government argues that its "delay in addressing the need for a protective order was due to an oversight - plain and simple". Government's Consolidated Response [142] at 3. That admission does not render its oversight excusable. Given its recognition that "[u]nquestionably, in the context of this case, where individuals are charged with conspiring to murder a witness, a protective order is required" (id. at 19), the government's alleged oversight of that requirement for almost three months was not merely negligent, but grossly negligent.

The government attempts to excuse its lack of diligence by noting that "with the exception of counsel for Gogolack . . . at no time from February 23, 2024, onward did counsel for any defendant make a specific informal request for discovery that was refused by the government" (id. at 17). However, "when the Government requests an extension of time . . . based on the interests of justice and specific representations as to what it will provide a defendant during the excluded period, the Government has the obligation to ensure those representations are met. It is not a defendant's responsibility to seek out this information from the Government". United States v. Graham, 2022 WL 2873876, *4 (W.D.N.Y.) (Roemer, M.J.), adopted, 2022 WL 2872652 (W.D.N.Y. 2022) (Vilardo, J.).

Moreover, the government's delay in seeking a protective order was *not* merely an "oversight". While it suggests that "[t]his is not a situation where the government made a conscious decision to ignore deadlines or orders" (id. at 19), that is *exactly* what it did: although I had unequivocally ordered production of voluntary discovery by May 23, 2024, the government deliberately decided not to comply with that order. "[W]hat happened here is that we asked them about a protective order later than we should and it caused them to get the discovery 12 days later than your Honor ordered." [171] at 15. The government's willful violation of my order constitutes bad faith. *See* Dow Chemical Pacific Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 345 (2d Cir. 1986).

The government now asks me to retroactively restrict the defendants' use or dissemination of the discovery which it had been ordered to produce *without* restriction by May 23, 2024. Cooper Affidavit [156-1], ¶1. However, since the government made a calculated decision to disobey my order to produce, and to defer its request for a protective order until after the deadline for production had expired, that request is problematical. *See* Ackermann v. United

-5-

States, 340 U.S. 193, 198 (1950) ("free, calculated, deliberate choices are not to be relieved from"); Gentner v. Navient Solutions, Inc., 2022 WL 3334269, *3 (W.D.N.Y. 2022) (Vilardo, J.) ("[a] scheduling order entered by a court is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril").

## REQUEST FOR FURTHER BRIEFING

"Trial courts have broad discretion in ruling on procedural violations and fashioning appropriate remedies in both civil and criminal matters." United States v. Sachakov, 812 F. Supp. 2d 198, 206 (E.D.N.Y. 2011). To assist me in properly exercising that discretion, defendants may propose an appropriate sanction (or sanctions) by August 7, 2024, and the government may respond by August 14, 2024.

**SO ORDERED.**

Dated: July 29, 2024

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge