UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.                                                    **DECISION AND ORDER**

Case No. 1:23-cr-99(LJV)(JJM)

PETER GERACE JR., *et al*.,

                                        Defendants.

---

Before the court are the government's motions for reconsideration [355, 396][1] of my appointment of a second attorney to defendants Gerace, Ermin, and Hinkle under the Criminal Justice Act 18 U.S.C. §3006A.  Familiarity with the relevant procedural history is presumed. Having reviewed the parties' submissions [355, 359, 360, 396, 415, 416, 417], and having heard oral argument [419], the motions for reconsideration are denied for the following reasons.

That portion of the government's motion [396] to schedule a prompt deadline for defendants to file dispositive pretrial motions remains pending and will be discussed at the oral argument of non-dispositive motions scheduled for May 21, 2025.

## BACKGROUND

Learned counsel was originally appointed for defendants Hinkle and Gogolack pursuant to 18 U.S.C. §3005 on January 31, 2024, in anticipation of the Government's

---

[1]     Bracketed references are to the CM/ECF docket entries, and page references are to CM/ECF pagination.

determination whether to seek the death penalty.  *See* January 31, 2024 Text Order [54] ("[f]or the reasons stated on the record at today's proceeding, defendant Hinkle's motion [47] for appointment of learned counsel is granted.  Learned counsel is also appointed for defendant Gogolack").  It had yet to be determined whether defendants Gerace and Ermin qualified for appointed counsel.  *See* id. ("defendants Gerace and Ermin shall submit detailed financial affidavits . . . [u]pon receipt of defendants' submissions, the court will determine whether learned counsel will also be appointed for defendants Gerace and Ermin").  Thereafter, I appointed attorney Henry as learned counsel for defendant Hinkle.  February 16, 2024 Text Order [69].  Defendant Gerace was qualified for appointed counsel on March 8, 2024, and  I appointed attorney Foti to represent him.  I deferred on whether to appoint co-counsel at that time.  March 8, 2024 Minute Entry [94].  I qualified defendant Ermin for appointed counsel, subject to financial contribution, on April 5, 2024 and appointed attorney Muscato to represent him.  April 5, 2024 Text Order [111].

On February 23, 2024, the government issued a Notice indicating that it would "not seek the death penalty in the instant case".  [75].  Nonetheless, defendant Hinkle requested to retain dual counsel.  Id.; *see also* Sealed Motion to Continue as Co-Counsel [125].  I granted that motion on June 11, 2024.  June 11, 2024 Text Order [133] ("[f]or the reasons discussed in attorney Daniel Henry's *ex parte* submission [125], he may continue as co-counsel for defendant Hinkle").

The United States Attorney General, on February 5, 2025, issued a Memorandum directing her Capital Review Committee to "review no-seek decisions in all pending capital-eligible cases . . . charged between January 20, 2021, and January 19, 2025.  This group shall reevaluate no-seek decisions and whether additional capital charges are appropriate."  February

-2-

5, 2025 Memorandum concerning Reviving the Federal Death Penalty and Lifting the

Moratorium on Federal Executions.[2]  I held a conference on February 10, 2025 to discuss the

Memorandum.  At that conference, the attorneys for Gerace and Ermin argued that they were

entitled to have learned counsel appointed because of the re-evaluation of the death penalty.  In

addition, they argued that second counsel should be appointed because the case was a "mega

case" with an unusual amount of discovery materials and motion practice.  I appointed co-

counsel for defendants Gerace and Ermin on the basis that this case qualified as a "mega case",

and noted that, as the government had argued, given the allegations in the indictment at the time,

it could not be determined whether the case would be death-penalty eligible.  *See* February 10,

2025 Minute Entry [351], Text Order [352] ("defendants Gerace and Ermin's request to appoint

co-counsel is granted for the reasons stated on the record"); *see also* audio of February 10, 2025

proceeding at 2:51.  I appointed attorney Meyers Buth as co-counsel for defendant Gerace, and

attorney Thompson for defendant Ermin.  Id.; *see also* February 14, 2025 Text Order [354].  The

government moved for reconsideration of the appointment of second counsel for defendants

Gerace, Ermin, and Hinkle.  Motion for Reconsideration [355].

I held another status conference on March 5, 2025, at which the government

provided an update on the timeline for a decision to be made concerning reevaluation of its no-

seek determination.  *See* March 5, 2025 Minute Entry [365]. To move the case forward, and

given that the government had not completed its reassessment whether the seek the death

penalty, I entered a scheduling order directing all non-dispositive pretrial motions to be filed on

---

[2]        Available at
https://www.justice.gov/ag/media/1388561/dl&ved=2ahUKEwifo7jB_5GNAxV6D1kFHd45IZw
QFnoECBUQAQ&usg=AOvVaw14SgOfmA2UiTHjJT5XOqOR (last visited May 7, 2025).

or before April 16, 2025, but holding in abeyance the deadline for defendants to file dispositive pretrial motions. Second Amended Scheduling Order [366], ¶¶ 1, 5.

The government filed its second Notice that it would "not seek the death penalty in this case" on April 8, 2025 and, on April 9, 2025, a motion to set a deadline for dispositive motions and to reconsider appointment of second counsel. [395, 396]. I set oral argument for April 24, 2025. April 10, 2025 Text Order [397]. Defendants filed their non-dispositive pretrial motions, as directed, on April 16, 2025. [403, 404, 405, 407, 408, 409, 410].

After hearing oral argument, I ordered co-counsel to remain on the case, subject to future reconsideration. April 24, 2025 Minute Entry [419]. I also stated that I would set a deadline for dispositive motions. Id.

## DISCUSSION

"No right ranks higher than the right of the accused to a fair trial." U.S. v. Douglas, 525 F.3d 225, 238 (2d Cir. 2008). To protect this right, "[e]ach United States district court, with the approval of the judicial council of the circuit, shall place in operation throughout the district a plan for furnishing representation for any person financially unable to obtain adequate representation in accordance with this section". 18 U.S.C. §3006A(a) (the "Criminal Justice Act" or the "CJA"). The United States District Court for the Western District of New York complies with this directive through adoption of its Revised Plan for Furnishing Representation pursuant to the Criminal Justice Act 18 U.S.C. §3006A[3] (the "Western District CJA Plan"). A number of resources are available to assist the court and counsel to administer

---

[3]     Link available at https://www.nywd.uscourts.gov/criminal-justice-act-cja (last visited May 8, 2025).

their obligations under the CJA, including the Guide to Judiciary Policy, Volume 7A[4] (the

"Guide to Judiciary Policy") and the United States District Court Western District of New York

Criminal Justice Act Policies and Procedures[5] (the "CJA Policies and Procedures").

Each of these sources indicates that assignment of co-counsel is permitted under

the CJA, in the court's discretion, for a variety of reasons.  For example, §230.53.20 of the Guide

to Judiciary Policy states that "[i]n an extremely difficult case where the court finds it in the

interest of justice to appoint an additional attorney, each attorney is eligible to receive the

maximum compensation allowable under the CJA".  Id. at 31.  It makes other provisions for

"[d]etermining [f]air [c]ompensation" in cases deemed "extended or complex".  Id., §230.26 at

26.  The Western District CJA Plan explicitly states that "[m]ore than one attorney may be

appointed in any case determined by the court to be appropriate".  Id. at 9.  The CJA Policies and

Procedures provide budgeting guidance for high-cost cases.  "While there are not specific criteria

or elements of a case which in itself will make a case achieve mega status, there are several

indicators which, if present, could indicate that a case will become a mega-case.  Indicators of a

potential high-cost case are listed in Appendix 7."  Id. at 8.  Those indicators include

"[v]oluminous or complex discovery (e.g., more than 500 gigabytes of data in the form of

documents, audio or video recordings, or forensic images of computers, cell phones, or other

devices)", "[m]ultiple defendants", and "[l]engthy trial proceedings".  Id. at 44.

Counsel for defendants Gerace, Ermin, and Hinkle point out that "discovery in

this case includes over 30,000 document pages, numerous and lengthy audio and video

---

[4]    Link available at https://www.uscourts.gov/administration-policies/judiciary-policies/criminal-justice-act-cja-guidelines (last visited May 8, 2025).

[5]    Link available at https://www.nywd.uscourts.gov/criminal-justice-act-cja (last visited May 8, 2025).

recordings, cell phone and GPS data analysis and extractions, jail call recordings, and more, all comprising approximately 3 terabytes of data". [417] at 10.

The government urges the court to apply the factors listed in the Guide to Judiciary Policy applicable in cases "following the appointment of counsel in a case in which a defendant was charged with an offense that may be punishable by death" but in which "it is determined that the death penalty will not be sought". Id., §630.30.10; see also Government's Reply to Defendants' Joint Response [363] at 12-14. The Guide to Judiciary Policy indicates that "absent extenuating circumstances", after the no-seek determination is made, the court "should . . . make an appropriate reduction in the number of counsel" by considering the following factors:

"(1) the need to avoid disruption of the proceedings;

(2) whether the decision not to seek the death penalty occurred late in the litigation;

(3) whether the case is unusually complex; and

(4) any other factors that would interfere with the need to ensure effective representation of the defendant."

Id., §630.30.20(a) and (b).

Co-counsel was not appointed pursuant to the learned counsel provisions of the CJA or the Guide to Judiciary Policy. Instead, when co-counsel was appointed, I agreed with the government that, given the allegations in the indictment at the time, it could not be determined whether the case would be death-penalty eligible. See February 10, 2025 Minute Entry [351], Text Order [352]; see also audio of February 10, 2025 proceeding at 2:51. Accordingly, the findings contemplated by §630.30.20(b) are not required here.

-6-

Nonetheless, even if such findings were required, they would not compel a different result. Here, I find that this case is unusually complex due to the sheer volume of discovery in this matter (*i.e.* 3 terabytes, or 3,000 gigabytes – far in excess of the 500 gigabyte guideline incorporated into the CJA Policies and Procedures). Further, this case is complicated by the procedures required for review of a significant amount of the discovery with the defendants, which must be accomplished in person due to these defendants' pretrial detention and prohibitions on copying the material and permitting it to be disclosed to third parties. *See* Protective Order [254]. Therefore, even if the legal issues are not considered complex, the time and logistical considerations necessary to provide adequate representation to these defendants certainly are. Such complications can be resolved better by two attorneys than by one.

Moreover, both defendants and the government expressed concerns at oral argument about speedy trial and moving this case efficiently through pretrial proceedings. Given these concerns, plus the now-bifurcated pretrial motion practice, I find that appointment of co-counsel, at least through pretrial proceedings, will help to move this case more efficiently through pretrial motions, arguments, and hearings (if any). Given all of these complicating factors, co-counsel for these defendants is necessary to ensure effective assistance of counsel and ensure a fair trial for these defendants.

## CONCLUSION

For these reasons, the government's motions for reconsideration [355, 396] of my appointment of a second attorney to defendants Gerace, Ermin, and Hinkle under the Criminal Justice Act 18 U.S.C. §3006A are denied. Counsel for these defendants shall comply with the

budgeting procedures for non-capital, high-cost "mega" cases outlined in the CJA Policies and

Procedures.

**SO ORDERED.**

Dated: May 13, 2025

/s/     Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge
