IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

           v.                                    23-CR-99-LJV

SIMON GOGOLACK, et al.,

              Defendants.
_____

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT SIMON GOGOLACK'S APPEAL OF THE MAGISTRATE COURT'S ORDER DENYING THE DISCLOSURE OF SEARCH WARRANT APPLICATIONS WITHOUT AN AFFIDAVIT OF STANDING

## INTRODUCTION

This appeal is about whether defendant Simon Gogolack may access search warrant application affidavits while refusing to personally demonstrate his standing to allege a Fourth Amendment intrusion. The Court should hold that where a defendant fails to demonstrate standing—that is, where he declines to personally allege facts demonstrating an invasion of his legitimate expectation of privacy—he has no legal right to inspect search warrant application materials. This is so because there is no generalized Fourth Amendment right-of-access to search warrant application materials. To the extent a Fourth Amendment right-of-access to such materials exists, it is available only to those defendants who satisfy Fourth Amendment standing requirements. Mr. Gogolack cannot avail himself of that right-of-access until he personally attests to his legitimate expectations of privacy. Likewise, Rule 16 does not create a wholesale right-of-access to the materials that Mr. Gogolack seeks to review; to the contrary, Rule 16 expressly exempts witness statements, such as an agent's affidavit, from disclosure. Consequently, the Court should affirm the Magistrate Court's order denying Mr. Gogolack's initial motion for disclosure.

## I.    LEGAL FRAMEWORKS

### A.    The Fourth Amendment Right-of-Access to Search Warrant Application Materials.

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The basic purpose of this Amendment, . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental

officials." *Carpenter v. United States*, 585 U.S. 296, 303 (2018) (internal quotation marks and citation omitted).

But Fourth Amendment rights attach only to places and things in which the individual challenging the search has "an expectation of privacy that society is prepared to consider reasonable." *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987) (citation omitted); *see Rakas v. Illinois*, 439 U.S. 128, 143 (1978) ("[C]apacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place."). Because Fourth Amendment rights stem from a defendant's (i) subjective expectations of privacy and (ii) society's legitimation of those expectations, "[i]t has been clear for a generation that 'Fourth Amendment rights are personal rights that may not be vicariously asserted.'" *United States v. Haqq*, 278 F.3d 44, 47 (2d Cir. 2002) (alterations omitted) (quoting *Rakas*, 439 U.S. at 133–34).

This "reasonable expectation of privacy" standard is, in turn, reflected in "[t]he concept" of Fourth Amendment "standing," which is "a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place being searched *before* seeking relief for an unconstitutional search." *Terrence Byrd v. United States*, 584 U.S. 395, 410–11 (2018) (emphasis added). And, naturally, it is the defendant "who bears the burden of proving" his standing. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980); *see United States v. Cruz*, 475 F. Supp. 2d 250, 253 (W.D.N.Y. 2007) ("The burden of establishing the existence of a reasonable expectation of privacy rests on the defendant.").

To this end, courts in this district—and others—require the defendant to file an affidavit of standing that establishes his or her legitimate expectation of privacy in the property

searched. *See, e.g.*, *United States v. Cobb*, 544 F. Supp. 3d 310, 337 (W.D.N.Y. 2021) (Wolford, J.) ("Neither Wilson nor Cobb has articulated that he has a legitimate expectation of privacy in any of the search locations and therefore has standing to challenge their search. Absent any such showing, they are not entitled to this [search warrant application] information."); *United States v. Pirk*, 282 F. Supp. 3d 585, 594 (W.D.N.Y. 2017) (Wolford, J.) (concluding that the defendant lacked a Fourth Amendment right to access the search warrant affidavit where he failed to establish standing to challenge warrant); *United States v. Walker*, No. 1:18-CR-237 RJA (MJR), 2021 WL 1725513, at *12 n.12 (W.D.N.Y. Jan. 6, 2021) (concluding that the defendant was not entitled to the search warrant application affidavit or *in camera* testimony submitted in support of search warrant application because he did not file an affidavit of standing, and he "therefore ha[d] no basis to challenge the validity of the warrant or the search of the premises"), *report and recommendation adopted*, 2021 WL 1723159 (W.D.N.Y. Apr. 30, 2021); *United States v. Brown*, 627 F. Supp. 3d 206, 219 (E.D.N.Y. 2022) (noting that the standing "burden is met only by sworn evidence, in the form of affidavit or testimony, from the defendant or someone with personal knowledge. An unsworn assertion of the Government's representations does not meet this burden." (quotations and internal citations omitted)); *United States v. Montoya-Escheverria*, 892 F. Supp. 104, 106 (S.D.N.Y. 1995) (same); *United States v. Singleton*, 987 F.2d 1444, 1449 (9th Cir. 1993) ("The defendant's unsworn assertion of the Government's representations does not meet this burden.").

Several courts have concluded that a defendant lacks a right to access search warrant application materials until he has made this threshold demonstration of standing. *See, e.g.*, *Pirk*, 282 F. Supp. 3d at 596 (concluding that the defendant lacked a Fourth Amendment right-of-access to access search warrant application materials where he failed to establish standing).

4

Those decisions make sense: if a defendant refuses to demonstrate his reasonable expectation of privacy over a searched property, he cannot move to suppress the fruits of the search, and he has no material need for the search warrant application materials until 3500 material is due to be disclosed. *Cf. Cobb*, 544 F. Supp. 3d at 338.

To be sure, not all courts have agreed with the conditional right-of-access that flows from Supreme Court precedent. In *United States v. Oliver*, for example, a panel of the Fourth Circuit decided—in an unpublished table decision and in conclusory fashion—that there exists a *general* Fourth Amendment right of access to search warrant application. 208 F.3d 211 (4th Cir. 2000) (unpublished) (concluding without analyzing that "a defendant is entitled under the Fourth Amendment to examine the affidavit that supports a warrant after the search has been conducted"). But *Oliver*'s persuasive value is overshadowed by the decisions of three published decisions from the courts of appeals rejecting *Oliver*'s central proposition. *See In re EyeCare Physicians of Am.*, 100 F.3d 514, 517 (7th Cir. 1996) ("[T]he text of that Amendment does not address, even implicitly, the problem of lack of access to sealed search warrant affidavits."); *In re Grand Jury Proceedings*, 115 F.3d 1240, 1246 (5th Cir. 1997) (agreeing with the Seventh Circuit that "no provision within the Fourth Amendment grants a fundamental right of access to seal search warrant affidavits before an indictment" (quoting *Eyecare*, 100 F.3d at 517)); *In re Search of Fair Finance*, 692 F.3d 424, 431 (6th Cir. 2012) ("As it relates to warrants, the Fourth Amendment establishes only that the government must obtain one (based on probable cause) before conducting a search. The Fourth Amendment has no bearing on the question of whether documents related to the issuance of search warrants must be made available for public inspection."); *cf. also United States v. Napier*, 436 F.3d 1133, 1136 (9th Cir. 2006) (rejecting the proposition that the defendants possess an "unlimited" Fourth

5

Amendment right-of-access to inspect sealed portions of a search warrant application in pursuit of a *Franks* hearing).  Accordingly, to the extent a Fourth Amendment right-of-access can be said to exists, the persuasive weight of the authority counsels in favor of concluding that it is a right contingent upon a demonstration of standing.

### B.    Rule 16

Rule 16 does not present an end-run around this requirement.  For starters, Rule 16(a)(2) expressly exempts witness statements from disclosure.  Specifically, Rule 16 provides as follows:

> Except as permitted by Rule 16(a)(1)(A)–(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

FED. R. CRIM. P. 16(a)(2).

The exceptions identified by Rule 16 relate to a defendant's oral or written statements; the defendant's prior record; reports of examinations and tests; and expert witness materials.  *See* FED. R. CRIM. P. 16(a)(1)(A)–(D), (F), and (G).  Subsection (a)(1)(E), which relates to documents and objects that can be "material to preparing the defense," is not an enumerated exception to subsection (a)(2)'s provisions.

Moreover, insofar as Rule 16 (or other rules of criminal procedure) serve as vehicles to obtain information material to the defense, it cannot serve that function here where a defendant refuses to assert his standing: "if a defendant is unable to show that the information he seeks—in this case, the materials submitted in support of the search warrants—could support a potential suppression motion, the Court cannot determine that the information is material to the defense" under Rule 16.  *Cobb*, 544 F. Supp. 3d at 338; *cf. United States v.*

*Saltares*, 301 F. Supp. 2d 305, 306-07 (S.D.N.Y. 2004) (where defendant sought unredacted copies of affidavits submitted in support of search warrants so that he could determine the viability of a challenge to them, finding that defendant "has not made a sufficiently specific showing under Fed. R. Crim. P. 16 that unredacted copies of the Affidavits are material to his defense at this stage of the proceedings," noting that defendant "has not made any assertion that the information in the Affidavits is likely to be false," and explaining that "at the present stage of the proceedings, the materiality to [defendant's] defense of the unredacted Affidavits and the identity of the informant is low . . .").

Finally, though Rule 16 facially undermines the notion that the search warrant applications are subject to disclosure as part of voluntary discovery—as opposed to through a Fourth Amendment right-of-access—the application of modern avoidance canons confirms that courts ought not to interpret Rule 16 in a manner that conflicts with Fourth Amendment standing jurisprudence. *See Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018) ("Under the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems.").

## II.    ANALYSIS

Mr. Gogolack raises three arguments in favor of his appeal.  First, he argues that the "Fourth Amendment require[s] . . . disclosure" of the search warrant application materials. App., at 4–5.  Second, Mr. Gogolack claims that Rule 16 requires disclosure because "the warrants are material to preparing his defense." *Id.* at 4–5, 6.  Third, Mr. Gogolack contends that the Magistrate Court's requirement that he produce an affidavit of standing prior to challenging the search warrants is contrary to law because "no binding precedent or rule

requires an affidavit" and, furthermore, because Rule 16 "does not require materiality for search warrant application material be established by affidavit." *Id.* at 7. More fundamentally, Mr. Gogolack urges that the standing affidavit requirement thrusts his Fourth and Fifth Amendment rights into an intractable conflict, requiring him to compromise one of his rights to vindicate another.

None of these arguments is persuasive. The Second Circuit has not recognized a Fourth Amendment right of access, which is neither anchored in the text of the Constitution nor rooted in any history or tradition of our law. A fulsome and complete reading of Fourth Amendment precedent shows that, to the extent a Fourth Amendment right-of-access exists, it is contingent upon a defendant's demonstration of his standing. Likewise, far from *requiring* the disclosure of search warrant application materials, a plain reading of Rule 16's text and structure *exempts* search warrant affidavits from the reaches of criminal discovery. And, finally, the "standing affidavit" requirement that Mr. Gogolack treats as a lower court invention stems from nothing short of Supreme Court and Second Circuit precedent. Those same precedents resolve Mr. Gogolack's concern that the standing affidavit requirement thrusts his Fourth and Fifth Amendment rights into intractable conflict. As such, because there is no need for this Court to intervene on an issue the Supreme Court has already settled, Mr. Gogolack's appeal should be denied and the order of the Magistrate Court affirmed.

### A.    There is no general Fourth Amendment right-of-access to search warrant materials.

Mr. Gogolack first claims that "[t]he Fourth Amendment requires that the government provide" the search warrant application materials as "discovery." App., at 5. Quoting a 2004 District of Maryland case, he contends that, "[i]mplicit in [the Fourth Amendment's language] is the *public's* right to challenge both the reasonableness of the search and the degree

8

to which the warrant was supported by probable cause," something that the public cannot do "[w]ithout the right of access to the affidavit" and other application materials. *Id.* (quoting *In re Search Warrants Issued on Apr. 26, 2004*, 353 F. Supp. 2d 584, 588 (D. Md. 2004) (emphasis added)). As he views it, under *In re Search Warrants Issued on Apr. 26, 2004*, and similar cases, the "rule" is "simple": "Mr. Gogolack is 'a person whose property has been seized pursuant to a search warrant,' and he therefore 'has a right under the warrant clause of the Fourth Amendment to inspect and copy the affidavit upon which the warrant was issued.'" App., at 5–6 (quoting *Matter of Up N. Plastics, Inc.*, 940 F. Supp. 229, 232 (D. Minn. 1996)).

Mr. Gogolack's argument suffers from two foundational errors. First, contrary to the District of Maryland's analysis, "Fourth Amendment rights are personal"—not public— "rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas*, 439 U.S. at 425; *Haqq*, 278 F.3d at 47 (same). Because the public has no right to challenge the reasonableness of any one search, it follows that the Fourth Amendment does not grant either it, or anyone else lacking a personal "legitimate expectation of privacy" "invaded" by the search, a right to access search warrant application materials. *Haqq*, 278 F.3d at 47; *accord In re Search of Fair Finance*, 692 F.3d at 431 (rejecting the argument that the Fourth Amendment creates a public right of access to search warrant application materials).

That leads us to the second fundamental weakness of Mr. Gogolack's argument: it is premised upon a claim of "possession of a seized good", *see* App., at 4–5, when the Supreme Court has expressly recognized that such possession "is not a proxy for determining whether the owner had a Fourth Amendment interest, for it does not invariably represent the protected

Fourth Amendment interest," [1] *United States v. Salvuicci*, 448 U.S. 83, 91 (1980). In that regard, rather than premising Fourth Amendment interests on a mere possessory interest in a searched property, *Salvucci* cemented the propriety of the reasonable expectation of privacy doctrine that animates Fourth Amendment standing doctrine today. *See id.* at 85 (rejecting the *Jones* Court's conferral of standing "without regard to whether [the defendants] had an expectation of privacy in the premises searched"); *see also Oliver v. United States*, 466 U.S. 170, 177 (1984) ("[T]he touchstone of [Fourth] Amendment analysis has been the question whether a person has a "constitutionally protected reasonable expectation of privacy." (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)).

What do these cases mean for the so-called Fourth Amendment right of access that Mr. Gogolack claims entitles him to see the search warrant application materials? Well, far from creating a blanket or general right of access, these precedents imply a contingent right dependent on a defendant's ability to demonstrate standing—that is, a subjectively and objectively reasonable privacy interest invaded by the search. [2] *See United States v. Santillan*, 902 F.3d 49, 63 (2d Cir. 2018) (discussing the objectively reasonable privacy interest a defendant must demonstrate to establish Fourth Amendment standing); *United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997) ("To contest the validity of a search, a defendant must demonstrate that he *himself* exhibited an actual subjective expectation of privacy in the area searched, and that this subjective expectation is one that society is willing to accept as

---

[1]   Though Mr. Gogolack claims that his standing as to certain premises or items is uncontested, that is not accurate, as there is reason to believe that Mr. Gogolack may lack a protected Fourth Amendment interest in certain property. For example, when the Wellsville Police Department responded to Mr. Gogolack's 911 call regarding Ms. Quinn's death, Mr. Gogolack told police that another individual rented the downstairs portion of 296 Scott Avenue, and that Mr. Gogolack lived in the upstairs portion of the residence. That said, the government cannot assess to what extent, if at all, it may contest Mr. Gogolack's standing until it reviews his affidavit of standing.

[2]   Even then, a countervailing government interest in protecting sources and ongoing investigations may require redactions to search warrant application materials.

reasonable." (emphasis original)); *accord United States v. Pirk*, 282 F. Supp. 3d 585, 592 (W.D.N.Y. 2017) (assuming without deciding that one with standing to challenge a search has a Fourth Amendment right to access search warrant application materials). Thus, Mr. Gogolack cannot avail himself of any Fourth Amendment right-of-access as to the search warrant application materials unless and until *he* demonstrates standing—that is, that he, "himself", alleges a subjectively and objectively reasonable expectation of privacy. *Fields*, 113 F.3d at 320; *see Brown*, 627 F. Supp. 3d at 219; *Montoya-Eschevarria*, 892 F. Supp. at 106; *Singleton*, 987 F.2d at 1449l; *Pirk*, 282 F. Supp. at 596.

None of the other cases Mr. Gogolack cites undermine this conclusion. The question in *Oliver*, for example, centered on the scope of the Fourt Amendment right of access *after* it was *assumed* to exist for that defendant. *See* 208 F.3d at *2. Even then, the panel concluded that the right of access could be overcome by certain governmental interests. *See id.* The question in this litigation, however, is different and asks whether someone who has yet to demonstrate standing could nevertheless assert a Fourth Amendment right of access to search warrant materials. On that point, *Oliver* offers zero factual or procedural discussion regarding to what extent, if at all, the defendant there had Fourth Amendment standing to challenge a search; whether the district court denied him access to an unredacted search warrant despite concluding he had standing; or whether the question of standing was raised either on appeal or in the proceedings below. *See* 208 F.3d at *2. Thus, even putting aside that three other courts of appeals have rejected the Fourth Circuit panel's conclusion that the Fourth Amendment creates a general right-of-access to search warrant application materials, *Oliver* hardly speaks with authority on the precise question before this Court. *See In re EyeCare*

11

*Physicians of Am.*, 100 F.3d at 517; *In re Grand Jury Proceedings*, 115 F.3d at 1246; *In re Search of Fair Finance*, 692 F.3d at 431.

The two additional decisions Mr. Gogolack cites—*In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 299 (S.D. Ohio 1995) and *Matter of Up N. Plastics, Inc.*, 940 F. Supp. 229, 232 (D. Minn. 1996)—are similarly inapposite. In those cases, as in *Oliver*, there was no question about, discussion of, or contestation concerning the defendant's standing over the premises searched. *See In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. at 299; *Matter of Up N. Plastics, Inc.*, 940 F. Supp. at 232; *see also Matter of EyeCare Physicians of Am.*, 100 F.3d at 517 (characterizing *In re Search Warrants Issued Aug. 29, 1994*, as "conclusory at best (with respect to the applicability of the Fourth Amendment) and conspicuous for its lack of analysis"). Consequently, neither of those cases answers whether any Fourth Amendment right-of-access stands apart from a defendant's standing to allege a Fourth Amendment intrusion, which is exactly the decision Mr. Gogolack urges this Court to make, even though it is fundamentally incompatible with standing precedent.

In sum, to the extent that a Fourth Amendment right of access exists, it is not a general right providing defendants unfettered access to search warrant application materials but, rather, a conditional right that materializes after defendants demonstrate "standing" by articulating a subjectively and objectively reasonable expectation of privacy. And, once Mr. Gogolack establishes his standing, the government will provide him with the search warrant application materials, as it has done with respect to every other defendant who has provided it with a standing affidavit. Accordingly, on this basis, the Magistrate Court's order should be affirmed.

**B.      The search warrant application materials are not discoverable under Rule 16.**

Mr. Gogolack next argues that Rule 16(a)(1)(E)(i) "also requires disclosure of materials in the government's possession that is material to preparing the defense." App., at 6.  Mr. Gogolack cites three cases for this proposition: *United States v. Findley*, No. 09-CR-267A(Sr), 2010 WL 4273919, (W.D.N.Y. Oct. 28, 2010); *United States v. Tigano*, No. 08-CR-281-S, 2010 WL 2612315 (W.D.N.Y. June 25, 2010); and *United States v. Soto-Zuniga*, 837 F.3d 992 (9th Cir. 2016).  None of these three cases persuasively support Mr. Gogolack's claim that Rule 16 requires production of the search warrant application materials, especially considering Rule 16 expressly omits witness statements, such as the search warrant affidavit, from the scope of voluntary discovery.

In *Findley*, the defendant sought disclosure of state-court-issued search warrants concerning four intercepted parcels containing drugs that formed, in part, the basis for the defendant's charges.  2010 WLL 4273919, at *3.  The government did not respond to the defendant's request.  *See id.*  The Magistrate Court concluded that the defendant was entitled to the parcel warrant affidavits because the government intended to use the parcels as part of its case in chief against the defendant.  *See id.*  However, for reasons that are unclear, the Magistrate Court did not extend that reasoning with respect to warrant application materials for a premises occupied by the defendant's brother, which also returned incriminating evidence that the government intended to use against the defendant.  *See id.*  During oral argument, the defendant conceded that he "did not have standing to challenge the search warrant executed at his brother's residence . . . notwithstanding the fact that the government may seek to use evidence obtained from that search against" the defendant during trial.  *Id.*

*Findley* is of limited persuasive value.  The order makes no mention of whether the defendant provided an affidavit of standing as to the parcels, whether the government conceded the defendant had standing, or both.  *See id.*  Moreover, for unstated reasons, the Magistrate Court's treatment of the search warrant affidavits for the parcels and the residence was facially inconsistent: on the one hand, the Magistrate Court premised its disclosure order on the fact that the government intended to use evidence from parcels against the defendant at trial, and, on the other, it concluded that the government's intention to use evidence from the search of the residence at trial was insufficient to overcome the defendant's lack of standing.  *See id.*  As such, *Findley* does little to clarify the legal issue before this Court.

*Tigano* is equally unhelpful.  In that case, the Magistrate Court failed to discuss whether the defendants had established standing, whether the government conceded standing, or both, when it stated that "[t]he defendants are entitled to disclosure of any reports or documents which were presented to the judicial officer in connection with the issuance of the search warrant."  2010 WL 2612315, at *1.  Nor does the order clarify whether the "documents" the Magistrate Court referred to encompassed search warrant affidavits.  There is reason to believe that the Magistrate Court might not have been referring to search warrant applications because, in the preceding paragraph, the court stated that Rule 16(a)(1) did not "authorize the discovery or inspection of statements"—which an affidavit is—"made by prospective government witnesses" in declining the defendants' request for reports prepared by an IRS special agent.  *Id.*  Thus, though *Tigano*'s discussion of the issue is simply too perfunctory to helpfully guide this Court in its analysis, *Tigano* fails to support Mr. Gogolack's broad claim that Rule 16 requires the disclosure of search warrant affidavits.

*Soto-Zuniga* is even more far afield. In that case, the Ninth Circuit concluded that the district court abused its discretion in denying the defendant's motion for discovery—namely, arrest statistics—that could evince whether the government primarily used the San Clemente border checkpoint where the defendant was arrested to interdict drug trafficking, as opposed to enforce the nation's immigration laws. *See* 837 F.3d at 1002. *Soto-Zuniga* is inapposite across multiple vectors. For starters, once again, the defendant's standing to file a motion to suppress was not in question. *See id.* at 1000 ("If the checkpoint's primary purpose is to detect evidence of drug trafficking, then the initial seizure of Soto-Zuniga's car and person offended the Fourth Amendment and the drug evidence recovered from his car must be excluded as fruit of the poisonous tree."). Second, the statistical analyses scrutinized there are categorically different than the search warrant affidavits at issue here. *See id.* at 1000–02. Third, and finally, unlike certain government reports, including those that may contain statistical analyses, Rule 16(a)(2) expressly deems witness statements governed by 18 U.S.C. § 3500 as non-discoverable. *See* FED. R. CRIM. P. 16(a)(2). Third, *Napier*, which more directly concerns a defendant's right-of-access to search warrant affidavits, confirms that the Ninth Circuit has rejected the argument that Mr. Gogolack presses here—that defendants have an unlimited right to inspect search warrant affidavits. *See Napier*, 436 F.3d at 1136. Consequently, *Soto-Zuniga* sheds little light on the question before this Court: whether Rule 16 affords a defendant a right to access search warrant application materials that the defendant refuses to alleged intruded upon his legitimate privacy expectations.

The answer to this question lies not in the tea leaves of magistrate court orders or irrelevant Ninth Circuit holdings but in the plain and ordinary meaning of Rule 16, itself. Rule 16(a)(2) states that it does not authorize "the discovery or inspection of statements made

by prospective government witnesses except as provided in 18 U.S.C. § 3500." FED. R. CRIM. P. 16(a)(2). Section 3500 contains no provision requiring the disclosure of a law enforcement agent's search warrant affidavit. Moreover, though Rule 16(a)(2) identifies several exceptions to this non-disclosure provision, documents covered by Rule 16(a)(1)(E) that are "material to preparing the defense" are not among them. *Compare* FED. R. CRIM. P. 16(a)(2) ("Except as permitted by Rule 16(a)(1)(A)–(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. §3500."), *with* FED. R. CRIM. P. 16(a)(1)(E) ("*Documents and Objects*. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense . . .").

The search warrant affidavit is both a document and a witness statement and, therefore, it is not discoverable under a plain reading of Rule 16(a)(2). Even if Rule 16 did provide a right-of-access to the search warrant application materials, as Mr. Gogolack sometimes concedes, that right would be contingent upon Mr. Gogolack showing that the search warrant items are material to his defense. *See, e.g.*, FED. R. CRIM. P. 16(a)(1)(E). In the specific context of Mr. Gogolack's challenge to the validity of the search warrant, Mr. Gogolack only has a good-faith basis of claiming that the search warrant application is material if he has standing to allege a Fourth Amendment intrusion. *See Cobb*, 544 F. Supp.

3d at 338 ("[I]f a defendant is unable to show that the information he seeks—in this case, the materials submitted in support of the search warrants—could support a potential suppression motion, the Court cannot determine that the information is material to the defense" under Rule 16.). Accordingly, to the extent Mr. Gogolack locates his right of access in Rule 16—as opposed to the Fourth Amendment—his appeal should be denied and the Magistrate Court's order affirmed.

### C.    The standing affidavit requirement is an outgrowth of binding precedent.

Lastly, Mr. Gogolack objects to the Magistrate Court's directive that he provide a standing affidavit should he seek to file a motion to suppress. On this score, Mr. Gogolack argues that "no binding precedent or rule requires an affidavit." App., at 7. While it is true that no binding precedent expressly requires an affidavit, *per se*, Supreme Court and Second Circuit authority stand for the proposition that Mr. Gogolack must personally attest to his reasonable expectations of privacy. Our district's practice of requiring standing affidavits, which are more judicially economical than requiring the defendant to testify, is nothing more than the effectuation of that binding mandate.

Historically, defendants had to provide either testimony or an affidavit demonstrating that they were aggrieved by a search to carry their burden of persuasion and overcome the presumption of legality attendant to a search executed pursuant to a warrant. *See Constitutional Law — Searches and Seizures — Contraband Obtained by Unlawful Search Inadmissible As Evidence Against Defendant Although Premises Searched Were Not His Own.*, 64 Harv. L. Rev. 1002, 1003 (1951) (discussing a prior iteration of Rule 41(e) that codified existing caselaw requiring that the defendant demonstrate his standing by showing that he was a person "aggrieved" by an unlawful search). To demonstrate an aggrievement,

defendants were required to personally "allege some violation of [their] rights", even though they "may wince at admitting that they were the owners, or in possession, of contraband property; may wish at once to secure the remedies of a possessor, and avoid the perils of the part." *Connolly v. Medalie*, 58 F. 2d 629, 630 (2d Cir. 1932) (Hand, J.); *see also Lewis v. United States*, 6 F.2d 222, 223 (9th Cir. 1925) (concluding that defendants must personally claim a property interest in the item allegedly unlawfully seized and "in the absence of such a claim they are in no position to raise the objection that the search was unreasonable or unauthorized, or that their constitutional rights were invaded"). Thus, prior to the Supreme Court's landmark decision in *Jones v. United States*, 362 U.S. 257 (1960), "the standing rule was that a defendant *had to show* he was the owner or possessor of the seized property or had a possessory interest in the searched premises." William R. Stein, *Resolving Tensions Between Constitutional Rights: Use Immunity in Concurrent or Related Proceedings*, 76 COLUM. L. REV. 674, 677 n.27 (1976) (emphasis added). Indeed, this was critical to the defendant's ability to overcome the presumption of legality that attached to searches of premises or items pursuant to a search warrant.

*Jones* suspended this practice, albeit temporarily. In *Jones*, the prosecution challenged the defendant's standing to contest the search of a friend's residence, where the defendant had briefly stayed, because he asserted neither ownership of the narcotics police found as a result of the search "nor an interest in the apartment greater than that of an 'invitee' or 'guest.'" 362 U.S. at 259. Consistent with history and tradition, the courts of appeals had "generally required defendants to establish Fourth Amendment standing by claiming either "to have owned or possessed the seized property or to have had a substantial possessory interest in the premises searched." *Id.* at 261. In the Supreme Court's view, this conventional approach to

18

standing, however, often put defendants in an untenable position: to establish Fourth Amendment standing, defendants had to concede through some form of attestation possession of contraband—or at least the premises containing the contraband—which, which, in turn, implicated them in criminal wrongdoing and could be used by the government as proof of guilt. *See id.* at 261–62. This framework also encouraged defendants to perjure themselves by claiming a possessory interest in contraband to prove that they had standing while denying possession to defend against the underlying charge. *See id.* at 262. To resolve this dilemma, the Court created the so-called "automatic-standing" doctrine, under which charging a defendant with a possessory offense would suffice in and of itself to confer standing on the defendant to allege a Fourth Amendment violation. *See id.* at 263–64.

Under *Jones*'s automatic standing doctrine, Mr. Gogolack's argument might require disclosure of the search warrant affidavits irrespective of his subjective and objective expectations of privacy. However, just eight years after Jones, in *Simmons v. United States*, 390 U.S. 377 (1968), the Supreme Court resolved the central dilemma animating the *Jones* decision—the tension between the defendant's right to challenge intrusive searches and his right to remain silent—by prohibiting the government from using statements the defendant offered in support of his motion to suppress against him during its case in chief at trial. *Id.* at 389–94.

The *Simmons* Court's effective creation of "use immunity" for a defendant's testimony to establish standing ultimately motivated the Supreme Court to overturn *Jones* in its entirety in *United States v. Salvucci*, 448 U.S. 83, 84–85, 90 (1980). Indeed, *Salvucci* expressly acknowledged that "[t]he self-incrimination dilemma, so central to the *Jones* decision, can no

19

longer occur under the prevailing interpretation of the Constitution [in *Simmons* ]." *Id.* at 90 (internal quotations omitted).

Mr. Gogolack would have this Court ignore the reality that motivated the *Jones* Court to invent the automatic standing doctrine, the *Simmons* Court to walk it back through the application of use immunity, and the *Salvucci* Court to overturn *Jones* entirely: that defendants must personally—not through their attorneys—attest to their interest in any given property searched and seized. Were it otherwise, neither *Jones* nor *Simmons* would exist in the first instance, as the defendants would have simply tasked their lawyers with alleging standing on their behalf, despite their attorneys' lack of any personal knowledge. This regime has little virtue in Fourth Amendment jurisprudence, which prohibits the vicarious assertion of rights and relies heavily upon productions of evidence—not the statements of attorneys lacking personal knowledge or insight into a defendant's subjective beliefs. Such third-party representations, even if made in the context of an agency relationship, are as incompatible under today's Fourth Amendment jurisprudence as they were pre-*Jones*. *Compare United States v. Lewis*, 40 F.3d 1325, 1333 (1st Cir. 1994) ("Lewis and Starks lacked standing to protest the police officers' search of the parking lot because they failed to assert any privacy interest in the seized contraband. It may well be that Lewis and Starks had a reasonable expectation of privacy in the contraband, but if so, they failed to assert it in support of their motion to suppress. *Neither Lewis nor Starks personally swore out any affidavits with respect to such an expectation. Rather, the lone affidavit in support of their motion to suppress was prepared by Starks' attorney, who had no first-hand knowledge of the relevant events*." (emphasis added)); and *see Brown*, 627 F. Supp. 3d at 219; *Montoya-Eschevarria*, 892 F. Supp. at 106; *Singleton*, 987 F.2d at 1449, *with Connolly*, 58 F.2d at 630; *Chicco v. United States*, 284 F. 434, 435–36 (4th Cir. 1922)

(affirming denial of motion to suppress where the defendants failed to allege any evidence that the property searched belonged to them); *Kerrains v. People*, 60 N.Y. 221, 225 (1875) (involving a Fourth Amendment challenge where the defendant personally attested to his relationship with the property searched).

Requiring standing affidavits (or, if defendants prefer, live testimony) conforms with these precedents and the standing framework erected by the Supreme Court and Second Circuit.  Consequently, insofar as Mr. Gogolack challenges the Magistrate Court's decision as being unsupported by law, his appeal should be denied and the Magistrate Court's decision affirmed.

### III.    CONCLUSION

For the reasons stated herein, the United States respectfully asks that the Court affirm the Magistrate Court's order.

DATED:  Buffalo, New York, June 18, 2025.

MICHAEL DIGIACOMO
United States Attorney

BY:    s/ CASEY L. CHALBECK
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5881
Casey.Chalbeck@usdoj.gov