IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     v.                                          23-CR-99-EAW

SIMON GOGOLACK, et al.,

              Defendants.

## GOVERNMENT'S REPLY IN SUPPORT OF ITS OBJECTIONS TO THE MAGISTRATE COURT'S ORDERS DISCLOSING GRAND JURY MATERIAL

MICHAEL DIGIACOMO
United States Attorney

BY:   s/ CASEY L. CHALBECK
       s/ NICHOLAS T. COOPER
       s/ JOSHUA A. VIOLANTI
       s/ JOSEPH M. TRIPI
       Assistant United States Attorney
       United States Attorney's Office
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York 14202
       (716) 843-5881
       Casey.Chalbeck@usdoj.gov

TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ANALYSIS ................................................................................................................... 2

    A.      The defendants' support of the Magistrate Court's invocation of Rule 6(e)(3)(E)(i) is contrary to the text and structure of the Rule and at odds with Supreme Court precedent. ....................................................................................................... 2

        1.      Neither the text, structure, nor judicial precedent support the defendants' reliance on the Magistrate Court's power to "sua sponte" disseminate grand jury material. ....... 3

        2.      Rule 6(e)(3)(E)(i) should not be read to permit or incentivize the circumvention of more specific applicable rules, such as Rule 6(e)(3)(E)(ii). ................................................. 8

    B.      The defendants do not claim that the purported instructional error at issue here is a "ground" upon which the indictment "may" be dismissed. ............................................... 13

    C.      The defendants do little to defend the Magistrate Court's erroneous factual findings about, and legal analysis of, the indictment. ........................................................... 17

    D.      The defendants do not rebut the government's argument that grand juries do not require the kind of instructions petit juries receive to assess cases for probable cause. ..... 20

    E.      The defendants do not defend the Magistrate Court's clearly erroneous finding that the ███████████████████████████████████████████ ███████ ..................................................................................................... 22

CONCLUSION.............................................................................................................. 22

i

**INTRODUCTION**

Sometimes, the arguments that parties decline to make can be as illuminating as the ones they do.  Take the defendants' response papers.  No defendant quarrels with the government's claim that the Magistrate Court, as part of a larger trend of engineering arguments in support of the defendants' disclosure motions, ordered disclosure pursuant to a rule—Rule 6(e)(3)(E)(i)—that the defendants never invoked and that never appeared in this litigation prior to the disclosure orders, themselves.  Instead, the defendants attempt to backfill the gaps left in the Magistrate Court's analysis by appealing to unpersuasive or misplaced legal authority.  Likewise, no defendant acknowledges, let alone responds to, the government's argument that subsection (i) of Rule 6(e)(3)(E) cannot authorize the disclosure of grand jury material where a more specific rule, such as Rule 6(e)(3)(E)(ii), applies.  Nor does any defendant outwardly reject the government's contention that subsection (ii) requires some demonstration that there "may" be a basis to dismiss the indictment.  By that same token, no defendant claims that an indictment that traced the statutory elements of each charge has ever been dismissed where ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉.  Were that not enough, none of the defendants rebut the government's caselaw-supported claim that legal instructions provided to grand jurors do not have to be defined with the level of particularity as those provided to petit jurors.  And none of them even attempt to rescue several of the Magistrate Court's erroneous factual findings and legal conclusions, including its finding that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.  The absence of any—let alone meaningful—defense of the Magistrate Court's many errant conclusions should confirm for this Court what the government's principal brief spells out in detail: the Magistrate Court's disclosure orders are

premised upon clearly erroneous factual findings, unsupported by the law, and should be set aside in their entirety.

## ANALYSIS

**A.** **The defendants' support of the Magistrate Court's invocation of Rule 6(e)(3)(E)(i) is contrary to the text and structure of the Rule and at odds with Supreme Court precedent.**

Only Messrs. Ermin and Gerace defend the Magistrate Court's reliance on Rule 6(e)(3)(E)(i) as the procedural authority for its disclosure orders.[1] Their arguments proceed in two parts. First, both defendants imply that the Magistrate Court correctly concluded that subsection (i) empowers it to release grand jury material *sua sponte*. *See* Ermin Resp. Opp. Gov. Objs., at 2, Dkt. 715, (dated Dec. 15, 2025) (hereinafter "Dkt. 715"); Gerace Resp. Opp. Gov. Objs., at 13, Dkt. 716, (dated Dec. 15, 2025) ("The government generally fails to present any substantive argument that challenges the balancing test that Magistrate Judge McCarthy properly employed under 6(e)(3)(E)(i) based on an issue that he observed *sua sponte*."). Second, Mr. Gerace rejects the government's argument that construing subsection (i) to permit the release of grand jury materials in a criminal proceeding concerning the dismissal of the indictment would swallow other provisions of Rule 6(e), such as subsection (ii). In that regard, he implies that the absence of any language expressly prohibiting what the Magistrate Court did here is affirmative evidence that the Magistrate Court's disclosure orders are proper. Each of these arguments fails when read against the text and structure of the statute, fundamental principles of American jurisprudence, and Supreme Court precedent.

---

[1] Messrs. Knight, Hinkle, and Gogolack ignored this issued, arguing instead that disclosure is proper under Rule 6(e)(3)(E)(ii). *See* Knight Resp. to Gov. Objs., at 8, Dkt. 712, (dated Dec. 15, 2025) (arguing that disclosure of the material is proper under Rule 6(e)(3)(E)(ii)) (hereinafter "Dkt. 712"); Hinkle Resp. Opp. Gov. Objs., at 7, Dkt. 713, (dated Dec. 15, 2025) ("Mr. Hinkle, therefore, is entitled to the Grand Jury material on this issue pursuant to FRC[R]P 6(e)(3)(E)(ii) for his counsel to effectively address insufficiency in the Grand Jury presentation.") (hereinafter "Dkt. 713); Gogolack Resp. to Gov. Objs., at 1, Dkt. 714, (dated Dec. 15, 2025) (arguing that disclosure of the material is proper under Rule 6(e)(3)(E)(ii)) (hereinafter "Dkt. 714").

**1.      Neither the text, structure, nor judicial precedent support the defendants' reliance on the Magistrate Court's power to "sua sponte" disseminate grand jury material.**

In its entirety, Rule 6(e)(3)(E) states:

> (E) The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter:
>
>> (i)      preliminarily to or in connection with a judicial proceeding;
>>
>> (ii)     at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury;
>>
>> (iii)     at the request of the government, when sought by a foreign court or prosecutor for use in an official criminal investigation;
>>
>> (iv)     at the request of the government if it shows that the matter may disclose a violation of State, Indian tribal, or foreign criminal law, as long as the disclosure is to an appropriate state, state-subdivision, Indian tribal, or foreign government official for the purpose of enforcing that law; or
>>
>> (v)      at the request of the government if it shows that the matter may disclose a violation of military criminal law under the Uniform Code of Military Justice, as long as the disclosure is to an appropriate military official for the purpose of enforcing that law.

Fed. R. Crim. P. 6(e)(3)(E).

Four of Rule 6(e)(3)(E)'s five sub-sections plainly identify which litigant may seek the disclosure of grand jury material, and under what circumstances such a request can be made. *See* Fed. R. Crim. P. 6(e)(3)(E)(ii)–(v) (authorizing disclosure "at the request of a defendant" or at the "request of the government" under certain circumstances). None of those subsections identify the court as an entity that may seek the disclosure of grand jury material. Rule 6(e)(3)(E)(i), by contrast, is silent with respect to whom may seek the disclosure of grand jury material "in connection with" a "judicial proceeding." *See* Fed. R. 6(e)(3)(E)(i). The

3

defendants and the Magistrate Court implicitly read the *absence* of any named actor in subsection (i) as *affirmative evidence* that *a court* may release grand jury material *sua sponte*.

Traditional canons of interpretation and construction caution against the Magistrate Court's expansion of subsection (i)'s generally-phrased limitations.  First, consider the canon of *noscitur a sociis*, which teaches that "a word is 'given more precise content by the neighboring words with which it is associated.'"  *Fischer v. United States*, 603 U.S. 480, 487 (2024) (quoting *United States v. Williams*, 553 U.S. 285, 294 (2008)); *see also Yates v. United States*, 574 U.S. 528, 543 (2015) (Ginsburg, J.) (similar).  In that vein, "where specific words follow a general word, the specific words restrict application of the general term to things that are similar to those enumerated."  *Gen. Elec. Co. v. Occ. Safety & Health Rev. Comm'n*, 583 F.2d 61, 65 (2d Cir. 1978); *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 401 (2d Cir. 2008) (same).  Applying *noscitur a sociis* "avoid[s] ascribing to one word a meaning so broad that it is inconsistent with" "the company it keeps," *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995), and thus "track[s] the common sense intuition that Congress [or the Supreme Court] would not ordinarily introduce a general term that renders meaningless the specific text that accompanies it," *Fisher*, 603 U.S. at 487.

Here, the list of actors that followed subsection (i)'s more generally-worded allowance for the disclosure of grand jury material focused on a narrow range of specially-situated litigants, such as defendants who "may" have a meritorious basis to dismiss their indictment, *see* Fed. R. Crim. P. 6(e)(3)(E)(ii), and government personnel whose foreign, state, or military counterparts may be investigating criminal activity, *see* Fed. R. Crim. P. 6(e)(3)(E)(iii)–(v).  This linguistic company indicates that, in crafting subsection (i), the Supreme Court and Congress intended that only litigants—not courts—would seek the disclosure of grand jury

4

material.  Were it otherwise, the dangers that *noscitur a sociis* guards against would emerge in short order: subsections (ii) through (v) would rarely need to be invoked if courts could *sua sponte* do the work of disseminating grand jury material to whatever tribal, foreign, state, military, or federal criminal "judicial proceeding[s]" they deemed appropriate.

Then consider that the sort of "[a]textual judicial supplementation" that the defendants and the Magistrate Court advance "is particularly inappropriate when . . . Congress has shown that it knows how to adopt the omitted language or provision." *Lackey v. Stinnie*, 604 U.S. 192, 669–670 (2025) (quoting *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019)). Both the Supreme Court and Congress know how to empower courts to act on their own motion in circumstances where, as with the grand jury, they lack inherent supervisory power. *See, e.g.*, 18 U.S.C.A. § APP. 3 § 2 ("At any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution. Following such motion, *or on its own motion*, the court shall promptly hold a pretrial conference to establish the timing of requests for discovery . . . ." (emphasis added)); 18 U.S.C. § 3142(f)(2) ("The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community . . . upon motion of the attorney for the Government or upon the judicial officer's *own motion* in a case . . . ." (emphasis added)); 18 U.S.C. § 4242(b) ("If the issue of insanity is raised by notice as provided in Rule 12.2 of the Federal Rules of Criminal Procedure on motion of the defendant or of the attorney for the Government, or *on the court's own motion*, the jury shall be instructed to find, or, in the event of a nonjury trial, the court shall find the defendant . . . ." (emphasis

5

added)).  The absence of any similarly empowering language in Rule 6(e)(3)(E) is strong evidence that neither the Supreme Court nor Congress intended for judges to wield subsection (i) on their own accord.

This moderate interpretation of subsection (i) is confirmed by the structure of Rule 6(e).  Specifically, Rule 6(e)(3)(F) contemplates that *litigants* invoking Rule 6(e)(3)(E)(i)'s authority will file "[a] petition to disclose a grand jury matter . . .  in the district where the grand jury convened".  *See* Fed. R. Crim. P. 6(e)(3)(F).  That subsection further advises that

> [u]ness that hearing is ex parte—as it may be when the government is the petitioner—*the petitioner* must serve the petition on, and *the court* must afford a reasonable opportunity to appear and be heard to: (i) an attorney for the government; (ii) the parties to the judicial proceeding; and (iii) and other person whom the court may designate.

Fed. R. Crim. P. 6(e)(3)(F) (emphasis added).

To "give effect . . . to every . . . word" in Rule 6(e), this Court should respect—not subvert— Rule 6(e)(3)(F)'s delineation between petitioners and courts, which assumes that the federal judiciary will discharge its traditional function as a neutral, informed adjudicator, not play the part of an advocate-petitioner.  *United States v. Davis*, 961 F.3d 181, 188–89 (2d Cir. 2020) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

To be sure, one district court, *United States v. Urso*, No. 03-CR-1382 (NGG), 2006 WL 671204, (E.D.N.Y. Mar. 16, 2006), stated without analysis in *dicta* that subsection (i) permits courts to *sua sponte* disclose grand jury material.  But if, as in *Urso*, the defendants, and the Magistrate Court assume, subsection (i) authorizes the kind of self-initiated trawling through a grand jury investigation at issue here, courts would have to petition themselves to disclose grand jury materials—and then decide their own petitions.  *See* Fed. R. Crim. P. 6(e)(3)(F).  And if that collapsing of the judicial function into an adversarial role sounds absurd, it is because it turns a background principle of American jurisprudence on its head: as "neutral

6

arbiter[s] of matters the parties present", courts in this country "don't get a turn at bat."[2] *Clark v. Sweeney*, 607 U.S. ----, --- S. Ct. ----, No. 25–52, 2025 WL 3260170, at *1 (U.S. Nov. 24, 2025); *see also Beretta*, 524 F.3d at 401 ("We have also determined that where . . . examination of [a] statute as a whole demonstrates that a party's interpretation would lead to absurd or futile results . . . plainly at variance with the policy of the legislation as a whole that interpretation should be rejected." (internal quotations omitted)).

Finally, the government's reading of subsection (i) brings the added virtue of cohering with existing precedent. Though the Supreme Court places the burden of demonstrating the appropriateness of lifting grand jury secrecy "upon the *private party* seeking disclosure," the defendants' implicit reading of subsection (i) empowers it to lift grand jury secrecy all on its own, seemingly without constraint. *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979) (emphasis added). Worse, though the Supreme Court has concluded that courts lack supervisory authority over the grand jury, the defendants' take on subsection (i) would grant courts the functional equivalent of supervisory power, offering them an expansive berth to disregard grand jury secrecy on their own motion. *United States v. Williams*, 504 U.S. 36, 47 (1992) ("Because the grand jury is an institution separate from the courts, over whose functioning the courts do not preside, we think it clear that, as a general matter at least, no such "supervisory" judicial authority exists."). In sum, the text and structure of Rule 6(e), as well as existing Supreme Court precedent, counsel against this expansive interpretation of whom subsection (i) empowers to seek the disclosure of grand jury materials. Accordingly,

---

[2] Even if this Court accepted the Magistrate Court's reading of Rule 6(e), it should conclude that the Magistrate Court failed to comply with the procedure outlined in Rule 6(e)(3)(F). Specifically, the Magistrate Court denied the government a "reasonable opportunity to appear and be heard" on the issue of whether Rule 6(e)(3)(E)(i) was an appropriate vehicle by which to disclose grand jury material when it relied on that subsection for the first time in its disclosure orders. *See* Dkts. 643, 647.

this Court should conclude that the Magistrate Court's reliance on subsection (i) was contrary to law.

> **2.    Rule 6(e)(3)(E)(i) should not be read to permit or incentivize the circumvention of more specific applicable rules, such as Rule 6(e)(3)(E)(ii).**

Mr. Gerace's defense of the Magistrate Court's reliance on Rule 6(e)(3)(E)(i) is slightly more nuanced but similarly flawed.  Mr. Gerace sidesteps the question of whether subsection (i) permits a court to act on its own motion to disclose grand jury material, and instead presses that subsection (i) plainly grants the Magistrate Court authority to disclose grand jury material in this "judicial proceeding"—i.e., this prosecution.  *See* Dkt. 716 at 21–22.  This is so, Mr. Gerace reasons, because the Rule does not expressly prohibit courts from disclosing material in the same judicial proceeding as one in which a petition under subsection (i) is filed. Once again, traditional rules of statutory construction, the structure of Rule 6(e)(3)(E), and authoritative committee notes and caselaw dispel this claim.

Though courts are loath to embrace "statutory interpretations that render provisions superfluous," *Davis*, 961 F.3d at 188, the reading of subsection (i) that Mr. Gerace urges would reduce subsections (ii), (iv), and (v) to a dead letter.  *See Garland v. Cargill*, 602 U.S. 406, 427 (2024) (explaining that the "presumption against ineffectiveness" counsels that "Congress presumably does not enact useless laws" (internal quotations omitted)); *Barker v. Rokosz*, 740 F. Supp. 3d 187, 201 (E.D.N.Y. 2024) (Matsumoto, J.) (applying the "presumption against ineffectiveness" in a Truth in Lending Act case where "a contrary reading of TILA would greenlight an obvious method for lenders to circumvent the statute").  No defendant would ever request the disclosure of grand jury minutes under subsection (ii), which requires her to "show[] that a ground may exist to dismiss [her] indictment," if subsection (i) afforded her the same relief without any such requirement.  *Compare* Fed. R. Crim. P. 6(e)(3)(E)(i)

(providing that disclosure may be authorized "preliminary to or in connection with a judicial proceeding"), *with* Fed. R. Crim. P. 6(e)(6)(E)(i) (providing that disclosure may be authorized "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury").  Similarly, were Mr. Gerace's reading of subsection (i) correct, the government would have little incentive to establish that disclosing grand jury material is "for the purpose of enforcing" a state, tribal, foreign, or military criminal law, so long as it could identify some kind of ongoing judicial proceedings in those departments.  *See* Fed. R. Crim. P. 6(e)(6)(E)(iv)–(v).

The resulting erosion of Congress and the Supreme Court's "carefully considered policy judgment[s]", *McKeever v. Barr*, 920 F.3d 842, 227 (D.C. Cir. 2019), would ensure that nearly every court with the appetite to breach grand jury secrecy will be able to do so, notwithstanding the Supreme Court's admonition that Rule 6(e)'s disclosure exceptions "reflect[] a judgment that not every beneficial purpose, or even every valid governmental purpose, is an appropriate reason for breaching grand jury secrecy." *Baggot*, 463 U.S. at 480.  It is no wonder then that, in sharp contrast to the Magistrate Court's reasoning, the D.C. Circuit concluded that "[t]he phrase 'in connection with a judicial proceeding' does not indicate '*the very proceeding instituted for the purposes of obtaining disclosure*.'" *Am. Friends Serv. Comm. v. Webster*, 720 F.2d 29, 72 (D.C. Cir. 1983) (quoting *Hiss v. Department of Justice*, 441 F.Supp. 69, 70 (S.D.N.Y. 1977) and emphasis added).

The Second Circuit's decision in *Rosenberry*, which Mr. Gerace cites in support of the Magistrate Court's disclosure orders, does not undermine this conclusion.[3]    *See Doe v.*

---

[3]        The government appreciates that a cursory review of Rule 6(e)(3)(E)(i) might lead a litigant to conclude that grand jury material could be released in any "judicial proceeding", including those connected to prosecutions initiated by the judicial proceedings. *See, e.g.*, Gov. Suppl. Mot. to Disclose Potential 6(e) Mat., Dkt.

9

*Rosenberry*, 255 F.2d 118 (2d Cir. 1958). *Rosenberry* did not ask—and the Second Circuit did not answer—whether either a criminal defendant seeking to prepare a motion to dismiss his indictment may circumvent the strictures of subsection (ii) by instead bringing his motion for disclosure under subsection (i). Nor did *Rosenberry* prompt the Second Circuit to limit the Supreme Court's dicta indicating that subsection (i)'s disclosure exception applied to those situations where grand jury material was "needed to avoid a possible injustice in *another* judicial proceeding . . .". *Douglas Oil Co.*, 441 U.S. at 221 (emphasis added).

Rather, the issue there was whether, under subsection (i), a court could disclose grand jury testimony to an attorney grievance committee preliminary to its "complaint . . . to the Appellate Division of the New York Supreme Court involving disciplinary sanctions against the plaintiff," a lawyer. *Rosenberry*, 255 F.2d at 120. In relevant part, the Second Circuit considered "whether a proceeding before the Appellate Division to discipline an attorney of the state court is within the term, 'judicial proceeding,' of Rule 6(e)." *Id.* The appellant argued that disclosure was improper because the disciplinary hearing was "not a criminal proceeding." *Id.* Rejecting that interpretation on account that it would "defeat" the Rule's "rational purpose," the Second Circuit held that subsection (i) applied to "any proceeding determinable by a court, having for its object the compliance of any person, subject to judicial control, with standards imposed upon his conduct in the public interest, even though such compliance is enforced with . . . the punishment of crime." *Id.*

Mr. Gerace reads this single sentence to permit the Magistrate Court's conduct at issue here—*viz.*, the circumvention of subsection (ii)'s requirements because this litigation is

---

601, (dated Sept. 11, 2025). However, reading the rule with traditional statutory interpretation principles in mind supports the conclusion that it is narrower than it appears at first blush.

unfolding within the context of a "judicial proceeding." But that is not how judicial decisions are intended to be read. "[G]eneral language in judicial opinions should be read as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite difference circumstances that the Court was not considering." *Bartlett v. Baasiri*, 81 F.4th 28, 35 (2d Cir. 2023) (quoting *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 278 (2023)). With that basic principle in mind, *Rosenberry*'s dicta is best read as instructing that subsection (i) extends to any *kind* of judicial proceeding, including civil proceedings, not just those that are criminal in nature. And, just as importantly, *Rosenberry*'s reasoning—that a rule should be interpreted in keeping with its "rational purpose"—militates against the Magistrate Court's interpretation of subsection (i), lest the other subsections lose all their rational force. As before, there would be little rational value in Congress and the Supreme Court specifying the circumstances in which a defendant and the government may move for the disclosure of grand jury material if, under subsection (i), the material could be released in connection with any judicial proceeding criminal prosecutors and defendants find themselves in.

Furthermore, even assuming *arguendo* that subsection (i) can authorize the disclosure of grand jury material in connection with "the very proceeding instituted for the purposes of obtaining the disclosure," *see Webster*, 720 F.2d at 72, it cannot do so where that proceeding concerns a motion to dismiss an indictment. In such circumstances, the more specific rule—here, subsection (ii)—exclusively governs. That is so because where the "overlap" of procedural rules produces irreconcilable conflict, courts "resort to ordinary rules of statutory construction when selecting which provision would govern a particular case." *Kemp v. United States*, 596 U.S. 528, 537 (2022) (citing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566

11

U.S. 639, 645 (2012) ("'[T]he specific governs the general[.]'")).   Subsections (i) and (ii) are incongruous because subsection (i), the more general provision, will always swallow subsection (ii), the more specific.  *See RadLAX*, 566 U.S. at 645 (explaining that the specificity canon "avoids . . . the superfluity of a specific provision that is swallowed by the general one").  Consequently, the specificity canon instructs that the more specific rule—subsection (ii)—governs here.

Despite generally critiquing the government's brief, Mr. Gerace says nothing in response to this argument.  And that silence comes as no surprise, given that the Second Circuit has repeatedly relied on the specificity canon to resolve conflicts within statutes.  *See, e.g.*, *Verizon Commc'ns Inc. v. Fed. Commc'ns Comm'n*, 156 F.4th 86, 107 (2d Cir. 2025) (Nathan, J.) (applying the "commonplace" "specific governs the general" canon to resolve ambiguity in the Communications Act); *In re Bernard L. Madoff Invest. Secs. LLC*, 12 F.4th 171, 193 (2d Cir. 2023) (applying the "specific governs the general" canon to resolve a conflict between conflicting securities statutes); *United States v. Carter*, 696 F.3d 229, 233 (2d Cir. 2012) (applying the specificity canon to ensure that 18 U.S.C. § 3553's general provisions did not "swallow[]" its more specific provisions).  That same logic governs here, and supports the government's conclusion that subsection (ii) was the only vehicle by which the Magistrate Court *could* order the disclosure of grand jury material.

Lastly, Mr. Gerace claims that the rule of lenity requires this Court to uphold the Magistrate Court's reliance on subsection (i).  *See* Dkt. 716 at 22–23.  Not only is Mr. Gerace's reliance on the rule of lenity misplaced, but it is also out-of-step with how both the Supreme Court and the Second Circuit interpret criminal law.  Lenity stems from the general principle that "when the government means to punish, its commands must be reasonably clear."

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, at 299, (West 2012). Rule 6(e), however, is not punitive in nature. To the contrary, it functions to preserve the grand jury's secrecy and, by extension, its independence. *See Pitch v. United States*, 953 F.3d 1226, 1248 (11th Cir. 2020) (Jordan, J., concurring) ("From its inception in England, the rule of secrecy appears to have functioned to secure the grand jury's independence from the crown." (citing Richard Calkins, *The Fading Myth of Grand Jury Secrecy*, 1 J. MARSHALL J. PRAC. & PROC. 18, 18–19 (1967)). But even if the rule of lenity were in the interpretative toolbox, it has no work to perform here, as lenity "applies only when, after consulting traditional canons of statutory construction, [courts] are left with an ambiguous statute." *Shular v. United States*, 589 U.S. 154, 165 (2020) (Ginsburg, J.). The specificity canon leaves "no ambiguity for the rule of lenity to resolve," because it mandates that subsection (ii) applies where, as the parties and the Magistrate Court all agree, the only use of the grand jury material is to move to dismiss the indictment. *Id.* For all these reasons, the Magistrate Court's reliance on Rule 6(e)(3)(E)(i) is contrary to law and the Court should reverse and vacate its disclosure orders.

**B.     The defendants do not claim that the purported instructional error at issue here is a "ground" upon which the indictment "may" be dismissed.**

Rule 6(e)(3)(E)(ii) is clear: disclosure is permitted only where the defendant "shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Yet, like the Magistrate Court, the defendants have failed to cite a single case in which an indictment has been dismissed under circumstances similar to those here. *See generally* Dkts. 712, 713, 714, 715, and 716. Similarly, the defendants, like the Magistrate Court before them, fail to respond to the government's argument that, "[t]o dismiss an indictment due to conduct before the grand jury, the defendants must show that the conduct

13

violated a 'clear rule[]' passed by Congress or approved of by the Supreme Court."  Gov. Objs., at 23, Dkt. 698, (dated Nov. 26, 2025) (quoting *Williams*, 504 U.S. at 46).  Because no one in this litigation has "show[n]" a basis to dismiss the indictment where the government instructs the grand jury by reading them a properly prepared indictment, subsection (ii) does not authorize the disclosure of grand jury materials.

Instead of confronting these arguments, the defendants attempt to obscure the questions before the Court or change the topic.  Mr. Gerace, for instance, defends the Magistrate Court's disclosure orders by noting that the Magistrate Court thought its "grave concern" "warranted release of the specified grand jury materials".  Dkt. 716 at 26. Subsection (ii), however, does not permit the disclosure of grand jury materials whenever a court may have a "grave concern" about the grand jury process.  *See Baggot*, 463 U.S. at 480 (noting that the specific exceptions to grand jury secrecy articulated in Rule 6(e) "reflect[] a judgment that not every beneficial purpose, or even every valid governmental purpose, is an appropriate reason for breaching grand jury secrecy").  Instead, subsection (ii) requires the defendant to demonstrate that an indictment could be dismissed for conduct that occurred before the grand jury.  *See* Fed. R. Crim. P. 6(e)(3)(E)(ii).  Thus, the only legally relevant question is whether the bases undergirding the Magistrate Court's "grave concern"—i.e., the length of the grand jury's deliberations, the inclusion of an aiding and abetting citation, the use of the word "was", or the ███████████████████████ in connection with Counts 5, 23, and 26—"may" support the dismissal of the indictment.  *See id.*; *see also* Dkt. 643 at 5–8.  Like the Magistrate Court, Mr. Gerace can point to no case where an indictment has been dismissed under similar circumstances.  This should confirm for the Court that the

purported instructional error at issue here is not a basis upon which the indictment "may" be dismissed.

Mr. Knight's arguments hardly fare better. Though he at least concedes that "the question of whether to disclose the grand jury materials and whether an indictment is subject to dismissal are related," Mr. Knight contends that a "separate standard" governs the question of whether an indictment "may" be dismissed—without identifying what that standard is or whether it has been satisfied. Dkt. 712 at 8. Regardless of what can be said as to the sufficiency of such a showing, a defendant's ability to cite one relevant case in support of his theory of dismissal must surely be *necessary* to satisfy subsection (ii)'s demonstration requirement. The defendants' collective failure to clear even that small hurdle should confirm for this Court the Magistrate Court's orders are contrary to subsection (ii).

In resisting this conclusion, Mr. Knight claims that the Magistrate Court's "concerns about the allegations" against him "from the very beginning" of this litigation, though not stated in its disclosure orders, is, somehow, a basis to affirm those disclosure orders. *Id.* at 9. If the Magistrate Court's unfounded suspicions about the government's grand jury presentation *before* it reviewed the entirety of a five-month-long investigation had any bearing on its decision to disclose the grand jury material, it had ample opportunity to make those concerns known. *See* Dkts. 605, 643, and 647. The Magistrate Court's failure to do so does not entitle Mr. Knight to rewrite the disclosure orders in his own image.

Mr. Gogolack and Mr. Ermin's claims suffer a similar defect. In Mr. Gogolack's view, the disclosure orders must be upheld because the record demonstrates that the "government misled the grand jury" by "falsely alleging [that] Mr. Gogolack faked his own overdose"; "falsely alleging [that] Defendant [] Frank Knight[] gave false and misleading statements to

15

federal agents"; and "falsely alleging that [he] was at Frank Knight's residence in the early morning hours of July 28, 2023." Dkt. 714 at 2. Mr. Ermin takes this species of analysis a step further, arguing that "the issues raised by Magistrate McCarthy *together with other potential factual issues* that may lead to the dismissal of the indictment are . . . prejudicial enough to warrant the disclosure of the Grand Jury minutes." Dkt. 715 at 4 (emphasis added). But neither the allegations raised by Mr. Gogolack nor the hypothetical, unspecified "potential fact[s]" alluded to by Mr. Ermin made an appearance in the Magistrate Court's disclosure orders. And this Court should reject Messrs. Gogolack and Ermin's efforts to salvage the disclosures through post-hoc rationalizations.[4] *See* Dkts. 643 and 647.

Mr. Hinkle's argument, meanwhile, is little more than an exercise in putting the cart before the horse. Specifically, he urges that disclosing grand jury material is necessary to facilitate the defense's "argument[s] on substantive issues and [in furtherance of] dismissal." Dkt. 713 at 3. That argument might have salience if subsection (ii) permitted courts to disclose grand jury material "at the request of a defendant who *seeks* to dismiss the indictment because of a matter that occurred before the grand jury." But that is not the rule: subsection (ii) requires him, "the defendant", to demonstrate "that a ground *may exist* to dismiss the indictment" *before* grand jury material can be disclosed to support a motion to dismiss.[5] In other words, disclosure is appropriate only *after* the defendant has carried his burden by demonstrating a basis to dismiss the indictment. Mr. Hinkle's failure to make that showing

---

[4]    That multiple defendants are searching for extra-record material to buttress the Magistrate Court's analysis should tell this Court that they, too, understand that the Magistrate Court's factual findings insufficiently support its disclosure orders.

[5]    Mr. Hinkle's appeal to the unfairness attendant to information disparities is misplaced. In objecting to the Magistrate Court's disclosure orders, the government is relying on the same information—and legal authorities—that the defendants have access to. Despite that, it is the defendants who have failed to identify a single case that shows that the indictment may be dismissed.

at any point in this litigation all but underscores the legal errors upon which the Magistrate Court's disclosure orders are founded.

> ### C.    The defendants do little to defend the Magistrate Court's erroneous factual findings about, and legal analysis of, the indictment.

Unable to identify any case in which an indictment was dismissed after the government instructed the grand jurors by reading to them an indictment that adequately traced the statutory charging language, the Magistrate Court pivoted to explaining that the indictment was "replete with misstatements or incomplete descriptions of the statutes upon which its charges are based." Dkt. 643 at 5. The defendants decline to defend—at all—the following purported "misstatements" or "incomplete descriptions" within the indictment found by the Magistrate Court:

1.    The indictment "does not cite the text of § 841(b)(1)(C) or otherwise describe its provisions." *Id.* at 5.

2.    The indictment incorrectly cited to § 924(a)(8) in Counts 9 and 10 "because it is a sentencing provision rather than a crime." *Id.*

3.    The indictment incorrectly employed the word "was" in Counts 10, 24, and 25, which charge Messrs. Gogolack, Ermin, and Roncone with unlawfully possessing firearms as users of controlled substances because the underlying statute, 18 U.S.C. § 922(g)(3), uses the word "is". *Id.* at 6–7.

*But see* Dkt. 698 at 30–40 (explaining why each of these objections is either clearly erroneous or contrary to law).

Nor do the defendants meaningfully endorse the Magistrate Court's analysis of the remaining two purported "misstatements" and "incomplete descriptions" that, in its view, nullified the indictment as ▮▮▮▮▮▮▮▮▮▮. First, with respect to Counts 19 through 21's inclusion of an aiding and abetting citation, Mr. Hinkle argues that the government improperly relies upon *United States v. Mucciante*, 21 F.3d 1228 (2d Cir. 1994), in which the

Second Circuit observed that "an aiding and abetting charge is arguably implicit in every indictment." *Id.* at 1234. Mr. Hinkle claims that *Mucciante* is not applicable here because it "address[ed] a constructive amendment issue to the indictment by the trial Judge instructing the petit jury of the aiding and abetting statute." Dkt. 713 at 5.

But *Mucciante*'s principles confirm that the government did not err—let alone commit prosecutorial misconduct—in citing to § 2 in Counts 19 through 21. The doctrine against constructive amendments ensures that a defendant is not convicted of conduct that the grand jury did not indict. *See United States v. Frank*, 156 F.3d 332, 337 (2d Cir. 1998) ("To prevail on a constructive amendment claim, a defendant must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment."). However, because "an aiding and abetting charge is arguably implicit in every indictment," it will "rarely, if ever" sustain a claim that it refers to unindicted conduct. *Mucciante*, 21 F.3d at 1234. And in that regard, an indictment need not "expressly charge a[n aiding and abetting charge.]"[6] *United States v. Hoke*, 551 F. App'x 611, 614 (2d Cir. 2014) (unpublished) (quoting *Mucciante*, 21 F.3d at 1234). In other words, the

---

[6]    Though the Magistrate Court criticizes the indictment's allegation that Mr. Hinkle's conduct violated, in part, "Title 18, United States Code, Section 2" on account that it is "obvious" that "§ 2 cannot itself have been violated," *id.*, the Second Circuit has adopted similar verbiage when describing convictions premised upon an aiding and abetting theory of liability. *See, e.g.*, *United States v. Mayo*, 14 F.3d 128, 132–33 (2d Cir. 1994) ("An indictment need not specifically allege a *violation* of § 2 for an aiding-and-abetting theory to be submitted to the jury, so long as there is no unfair surprise to the defendant." (emphasis added)). In any event, each citation to § 2 is accompanied by citations to the substantive offenses that Mr. Hinkle may have aided and abetted. *See* Dkt. 24 at 43–44. And each of those counts—respectively, the manufacture and possession with intent to distribute of 100 or more marijuana plants, the maintaining a drug-involved premises, and the possession of firearms in furtherance of drug trafficking—contain the requisite elements to state an offense. *See id.*

18

Second Superseding Indictment could remove all reference to § 2 and it would still be implied in every count, regardless of whether the grand jury ever heard the words "aiding and abetting" during the government's presentation. *See id.* And if that is true, it cannot be that the government needs to explain the contours of an aiding and abetting theory of liability to adequately instruct the grand jury on the law.

Furthermore, Mr. Hinkle asserts that it was improper to cite to § 2 because he is the only defendant named in Counts 19 through 21. This argument misapprehends the law of aiding and abetting. A "single" defendant may be "convicted of aiding and abetting" a crime's "commission," regardless of whether other codefendants are charged and irrespective of whether he was indicted as a principal. *United States v. VanderZwaag*, 467 F. App'x 402 (6th Cir. 2012) (unpublished) (citing *Hill v. Perini*, 788 F.2d 406, 407 (6th Cir. 1986). To hold otherwise would nullify counts where a defendant's partner in crime is not charged—an extreme consequence considering that the government is not even required to allege an aiding and abetting violation in an indictment. *See Mayo*, 14 F.3d at 132–33. Finally, both Mr. Hinkle and the Magistrate Court know the factual predicate for the inclusion of the aiding and abetting citation. As public court records and the discovery make clear, Mr. Hinkle shared his home with his common-law wife, who was also charged by criminal complaint with similar offenses the day of Mr. Hinkle's arrest. *See* Compl., Dkt. 1, *United States v. Hinkle et al.*, 1:23-MJ-5219, (dated Oct. 24, 2023). Additionally, text messages in Mr. Hinkle's phone revealed that he worked with others to distribute marijuana plants. *See, e.g.*, GOV-00001554–1557. Applying the presumption of regularity, there is a sufficient factual predicate for the government to pursue an aiding and abetting theory for Counts 19 through 21.

In sum, the defendants neither rebut the government's argument that (1) certain of the Magistrate Court's factual findings concerning the indictment are clearly erroneous nor (2) its legal conclusion concerning the indictment are contrary to law.  The indictment, in all respects, appropriately traced the statutory elements of each charge.  Accordingly, the government's reading of the indictment adequately instructed the grand jury of the essential components of each offense and there is no basis to dismiss the indictment under a theory of instructional error.

### D. The defendants do not rebut the government's argument that grand juries do not require the kind of instructions petit juries receive to assess cases for probable cause.

Critically, the defendants fail to acknowledge, let alone rebut, one of the government's core theses: that the legal concepts before the grand jury, which discharges the "relatively undemanding", non-technical function of assessing cases for probable cause, *Kaley v. United States*, 571 U.S. 320, 339 (2014), need not be defined with "substantial particularity," *United States v. Hill*, 417 F.2d 279, 281 (5th Cir. 1969).  Owing to the nature of the grand jury's work, the Supreme Court has repeatedly rejected requests to extend the "formalities and safeguards" that attach to criminal trials to the grand jury, reasoning time and again that their added value "would '[i]n most cases . . . be too slight.'"  *Kaley*, 571 U.S. at 338.  The defendants' failure to even attempt to harmonize the Magistrate Court's disclosure orders with existing Supreme Court precedent only showcases the incongruity between the Magistrate Court's disclosure orders and the binding legal framework erected by the Supreme Court.

These principles bear most prominently on the question of whether the government committed misconduct when it ███████████████████████████████████ ████████████████████████.  *See* Dkt. 643 at 7–8.  To the extent the defendants do engage with the Magistrate Court's claim of instructional error, they tacitly concede that the

20

Magistrate Court's analysis of the issue and supporting factual findings are insufficient to sustain the disclosures it ordered.  For example, Mr. Knight insists that

> it was *not* simply ██████████████████████████ that formed the basis of the Magistrate Court's decision to order [the] disclosure of the jury minutes.  *It was the falsity of a factual allegation in Counts 1 and 5.  It was the prompt correction of the 'did not think' statement alleged in Count 5.*  It was the truncated jury deliberations.  And it was the failure ████████ ████████

Dkt. 712 at 10 (emphases added).

Once more, the Magistrate Court never concluded that the allegations contained in Counts 1 and 5 are false.  *See generally* Dkts. 643, 647.  Nor did the Magistrate Court refer to Mr. Knight's correction that Mr. Hinkle was actually in attendance in the poker game.  *See id.*  The Court should therefore reject Mr. Knight's efforts to retroactively rewrite the Magistrate Court's disclosure orders.  The Court should also reject the Magistrate Court's reliance on the government's ██████████████████████████████ for the reasons stated in the government's principal brief.  *See* Dkt. 698 at 26–30; *see also Kaley*, 571 U.S. at 338.  And to the extent that the Magistrate Court relied at all on the length of the grand jury's deliberations, the Court should reject such reliance as contrary to law, too, because "[t]he grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime."  *Kaley*, 571 U.S. at 328.  Moreover, the length of a grand jury's deliberations is a poor proxy for gauging the independence of its evaluation of the evidence.  That is especially so in a case like this one, where the jurors reviewed evidence and witness testimony weekly over the course of five months.  For these reasons, the Court should conclude that the disclosure orders are contrary to law.

**E.** **The defendants do not defend the Magistrate Court's clearly erroneous finding that the Impanelment AUSA** ███████████████████

███████████████████████

Lastly, the defendants decline to support the Magistrate Court's clearly erroneous finding that the Impanelment AUSA ████████████████████████

██████████████ Because the record clearly demonstrates that the Impanelment AUSA never ███████████████████████████

████████████████████ that the Magistrate Court thinks are necessary, its findings to the contrary are clearly erroneous. *See* Dkt. 643 at 5.

## CONCLUSION

For the reasons stated herein and in the government's Objections to the Magistrate Court's Disclosure Orders (Dkt. 698) the government respectfully requests that the Court (1) vacate the Magistrate Court's finding that the government misled the grand jury, as well as any other express or implied finding of prosecutorial misconduct, and (2) set aside as clearly erroneous and contrary to law the Magistrate Court's disclosure orders.

DATED:  Buffalo, New York, December 19, 2025.

Michael DiGiacomo
United States Attorney

BY:    s/ CASEY L. CHALBECK
s/ NICHOLAS T. COOPER
s/ JOSHUA A. VIOLANTI
s/ JOSEPH M. TRIPI
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5881
Casey.Chalbeck@usdoj.gov

22