UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

SIMON GOGOLACK,

        Defendant.

**REPLY AFFIDAVIT**

**Indictment No.: 23-CR-99**

---

**PETER M. KOOSHOIAN, ESQ.**, being duly sworn deposes and says:

1.     Peter M. Kooshoian, Esq. and Nicholas Texido, Esq., are attorneys duly licensed to practice in the Western District of New York and were appointed to represent the Defendant, SIMON GOGOLACK, in the above referenced matter and, as such, we are fully familiar with all prior proceedings had herein.

2.     This Affidavit is submitted in Reply to the government's opposition to Defendant's dispositive motions.

## ARGUMENT

### SPEEDY TRIAL

3.     In opposition to Mr. Gogolack's speedy trial motion, the government incorrectly states they were not responsible for pre-trial delay for:

- failing to provide discovery between October 16, 2023 and February 23, 2024;

- failing to provide discovery between May 23, 2024 and June 5, 2024; and

- taking two (2) months between February 21, 2025 and April 16, 2025 to reconsider their previous death penalty decision.

**Failure To Timely Provide Discovery Resulting In Pre-Trial Delays**

4.      The government's argument that they are not responsible for pre-trial delay between October 16, 2023 and February 23, 2024, because they provided voluntary discovery on August 30, 2023 and September 8, 2023, is incorrect.

5.      Mr. Gogolack was indicted on September 13, 2023 (Doc. 12). Two days later, the court issued a Scheduling Order setting a discovery deadline for October 16, 2023 (Doc. 17). The government failed to provide discovery following the Indictment by the October 16, 2023 deadline. A new Scheduling Order was not set until February 23, 2024. The government does not dispute that they failed to provide any discovery between the October 16, 2023 deadline and the date the new Scheduling Order was set on February 23, 2024 (following the Second Superseding Indictment). Rather, the government argues Mr. Gogolack could have filed motions in November of 2023, and on January 16, 2024, despite the fact that he had not been provided discovery relative to September 13, 2023 Indictment, September 20, 2023 Superseding Indictment or the January 5, 2024 Second Superseding Indictment, all of which would make the filing of dispositive motions impossible. Rather than provide discovery pursuant to the Court's Order, the government chose to bring successive Indictments resulting in the constitutional speedy trial time between October 16, 2023 and February 23, 2024, being chargeable to the government. See _U.S. v. Black_, 918 F.3d. 243 (2nd Cir. 2019) (finding new round of pre-trial litigation caused by superseding indictment attributable to the government's poor case management.).

6.      The government's papers do not dispute they failed to provide discovery by May 23, 2024, as ordered by the Court nor do they dispute it was not provided until June 5, 2024. Therefore, the two (2) week time period is attributable to government for purposes of Mr. Gogolack's Sixth Amendment speedy trial analysis.

*Rosenthal, Kooshoian & Lennon, LLP*
ATTORNEYS AND COUNSELORS AT LAW / 80 WEST HURON STREET / BUFFALO, NEW YORK 14202 / (716) 854-1300

7.    The government has not set forth any evidence in their opposition papers suggesting that their failure to timely provide discovery has not resulted in nine (9) months and three (3) weeks of delays (November 21, 2024, five (5) month speedy trial sanction, failure to provide discovery between October 16, 2023 and February 23, 2024, and failure to provide discovery between May 23, 2024 and June 5, 2024).

### Delay From The Government's Death Penalty Decision

8.    On January 5, 2024, Mr. Gogolack and his Co-Defendants' were indicted on the Second Superseding Indictment which included death penalty eligible charges.  Over a month later, on February 23, 2024, the government filed notice that it would not be seeking the death penalty. (Doc. 75)  A year later, on February 5, 2025, the government filed a memorandum indicating it may reconsider their previous decision regarding the death penalty.

9.    As a result of the February 5, 2025 memorandum, the Court adjourned the motion date pertaining to this case from February 21, 2025 through April 16, 2025, which the government does not dispute in its opposition papers.

10.    Rather, the government claims the delay is not attributable to their actions, relying on _U.S. v. Aquart_, 92 F.4th 77 (2nd Cir. 2024) and _U.S. v. Abad_, 514 F.3d 271 (2nd Cir. 2018), both of which are easily distinguishable.  Neither of the cases relied on by the government involve a situation where the government indicated it would reconsider its previous decision not to seek the death penalty over a year into the litigation.  Your deponent is not claiming the government should be charged with the speedy trial time from January 5, 2024 (the date of the Second Superseding Indictment) through February 23, 2024 (the date on which the government determined it would not be seeking the death penalty).  Had that been the case, the government's cases may be relevant, however, in this case the government's decision to reconsider required the case being adjourned another two (2) months so they could

*Rosenthal, Kooshoian & Lennon, LLP*
ATTORNEYS AND COUNSELORS AT LAW / 80 WEST HURON STREET / BUFFALO, NEW YORK 14202 / (716) 854-1300

"redecide" what they had already determined.  Pre-trial delays caused by the threat that the proceedings would ultimately turn capital and nullify the work done to date are attributable to the government. _U.S. v. Black, et al._, 918 F.3d 243, 261 (2nd Cir. 2019) (also finding pre-trial delays caused by poor case management attributable to the government. (at 262.)

### Failure To Timely Provide _Brady_ Materials

11.    The government does not dispute that their failure to timely provide _Brady_ material and investigate whether their witnesses had been previously represented by the Federal Public Defender's Office resulted in new counsel being appointed and on June 24, 2025, and Scheduling Orders for motions and briefing to be held in abeyance until December 1, 2025.

12.    Rather, the government incorrectly claims the appointment of new counsel, which required a separate Scheduling Order, had no effect on the scheduled trial date.  Obviously, the Court would have to consider this as well as the previously referenced delays caused by the government when setting a Scheduling Order.

13.    Ultimately, the delay caused by failure to provide _Brady_ material in violation of several Court Orders over the course of two (2) years, appears deliberate and the five (5) months should be attributed to the government. _Barker v. Wingo_, 407 U.S. 514 at 531 (1972).  The government's failure to investigate whether any of their witnesses had been previously represented by the Federal Public Defender's Office is also a factor that weighs against them in Mr. Gogolack's speedy trial analysis.

14.    As a result of the government's aforementioned delays, much of which could be viewed as having been done in bad faith and/or for tactical advantages, the government should be charged with approximately sixteen (16) months and three (3) weeks of Sixth Amendment speedy trial time, which has been held to be presumptively prejudicial. _U.S. v. Black_, _supra_.

### The Government Was On Notice Of Defendant's Speedy Trial Concerns

15.    The government's assertion that they were not on notice of the Defendant's concern for a speedy trial is without merit.  In addition to the allegations set forth in the Defendant's original motion, the government overlooks that Mr. Gogolack has been incarcerated since the inception of this case and therefore, the government must assume he wants a speedy trial, unless he asserts otherwise. _Branch v. U.S._, 372 A.2d 998 (District of Columbia, Court of Appeals, 1977); citing, _U.S. v. Calloway_, 164 U.S. App. D.C. 204, 210 (1974).

### Mr. Gogolack Has Been Prejudiced By Pre-Trial Delays

16.    The government's argument that Mr. Gogolack has not identified a single impairment to his defense other than his anxiety while awaiting trial is not determinative whether he has been prejudiced by the government's pre-trial delays. See _U.S. v. Black_, _supra_ (finding affirmative proof of impairment of a defense is not required in order to find a Sixth Amendment violation.); citing, _Tigano_, 880 F.3d at 618. The Second Circuit recognizes that excessive delay presumptively compromises reliability of a trial in ways that neither party can prove, or for that matter identify.  Lengthy periods of detention far from counsel exacerbate the anxiety of the accused and seriously impacts the defense, all of which weighs in favor of finding pre-trial delays prejudicial to the defendant. _U.S. v. Black_, _supra_.

17.    In this case, Mr. Gogolack has been detained for two (2) years in a facility outside the Western District of New York and over three (3) hours away by car, making it extremely difficult for counsel to communicate with Mr. Gogolack and seriously impacts his Sixth Amendment right to counsel. The facility is poorly run, provides inadequate medical attention to Mr. Gogolack, and makes communicating with Mr. Gogolack difficult, which has and will continue to impair his defense should this motion be denied and/or he remain in this facility.  Finally, the sixteen (16) months and three (3) weeks

of Mr. Gogolack's pre-trial detention can be attributed to the government which has been held presumptively prejudicial. *U.S. v. Black*, *supra*, 255 (2nd Cir. 2019).

## DISCLOSURE OF *BRADY* MATERIAL

18.    The government alleges the Defendant's motion for *Brady* material involving ▮▮▮▮ ▮▮ and ▮▮▮▮▮▮▮▮▮▮ should be denied because:

- disclosure of additional 3500 material would be premature; and
- the request for all investigative files regarding ▮▮▮▮ and ▮▮▮▮▮▮ reach as far past the confines of *Brady*.

19.    Notably, the government does not object to disclosure on the basis that the information is not material and exculpatory pursuant to *Brady*.

20.    The government's argument that disclosure of 3500 material is premature ignores that the Jenks Act does not shield the government from its independent obligation to timely produce exculpatory material under *Brady*, a constitutional requirement that trumps the statutory power of 18 U.S.C. §3500. *U.S. v. Rittweger*, 524 F.3d 177, 181, N.4 (2nd Cir. 2008); see also, *U.S. v. Coppa*, 267 F.3d 132 (2nd Cir. 2001).

21.    Therefore, the Court should reject the government's argument that the Jenks Act precludes disclosure of *Brady* material. *Ibid*.

22.    Second, the request for investigative material regarding ▮▮▮▮▮ and ▮▮▮ ▮▮▮▮▮ does not reach past the confines of *Brady*. The prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. *Kyles v. Whitley*, 514 U.S. at 419, 115 S. Ct. at 155 (1995); followed by *U.S. v. Payne*, 63 F.3d 1200, 1208 (2nd Cir. 1995) (finding the prosecutor is presumed to have knowledge of all information gathered in connection with the government's investigation.). *Brady* information must be disclosed in a

manner that gives the defendant a reasonable opportunity to either use the evidence in trial or use the information to obtain evidence for use in trial. _U.S. v. Rodriguez_, _supra_.

23.    Mr. Gogolack has a good faith basis to request grand jury testimony and investigative files pertaining to ▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮ as previously disclosed grand jury testimony indicated ▮▮▮▮▮▮▮ was aware that ▮▮▮▮▮▮▮▮▮ may have been hired to murder Crystal Quinn, not Simon Gogolack. Therefore, the prosecutor presumably has additional information, including 302's, investigative files and other information in its possession or that it's aware of regarding ▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮ which would be material and exculpatory to Mr. Gogolack, all of which should be disclosed under _Brady_. _Ibid_.

24.    Should the Court deny Defendant's motion for disclosure of the aforementioned _Brady_ information, it is respectfully requested it be submitted to the Court for an _in camera_ inspection to determine which information vies for disclosure under _Brady_. See _U.S. v. Kiszewski_, 877 F.2d 210, 216 (2nd Cir. 1989) (remanding for _in camera_ review of the agent's personnel file to determine whether it contained material impeachment information.).

## DISCLOSURE OF GRAND JURY INFORMATION

25.    The government incorrectly argues Mr. Gogolack's motion for disclosure of Grand Jury minutes should be denied because:

- the discovery substantiates the grand jury's finding that Mr. Gogolack faked his overdose; and

- Mr. Gogolack's motion is challenging the adequacy of evidence upon which the indictment is based.

26.    Neither assertion is accurate.

## The Discovery Does Not Substantiate The Grand Jury's Finding That Mr. Gogolack Faked His Overdose

27.    In support of the argument that the discovery substantiates the grand jury's finding Mr. Gogolack faked his own overdose, the government relies on a portion of the ambulance record regarding Mr. Gogolack's Glasgow coma scale score, a portion of the hospital record indicating that his mental status was waxing and waning and a portion of a recorded jail call in which he stated he had faked an overdose on other occasions.

28.    While a portion of the EMT evaluation included the Glasgow coma scale score, it also included neurological evaluation, mental evaluation, physical and mental assessments and after a complete evaluation by the EMTs, the on scene medical professionals determined that Mr. Gogolack had suffered an overdose and transported him to the hospital. (Kooshoian Affidavit 12/1/25 Exhibit C.)

29.    Similarly, while the ER records indicate Mr. Gogolack suffered a waxing and waning mental status, the evaluation also included toxicology assessments indicating he was positive for THC, benzos, opiates and cocaine, physical examination indicating he was unresponsive except with noxious stimuli, neurological assessment indicating lethargic and unresponsive upon arrival and suffered slurred speech. Additionally, the ER doctors, after fully examining Mr. Gogolack and reviewing his toxicology screens determined he suffered an overdose. (Kooshoian Affidavit 12/1/25 Exhibit D.)

30.    Therefore, it seems unlikely the grand jury could conclude he faked his own overdose, unless the government provided them and/or read to them only small portions of the medical records, leaving out the conclusions and other assessments made by the medical professionals thereby misleading the grand jury to believe Mr. Gogolack had faked his own overdose. The government's own arguments on this issue set forth in their opposition papers seem to suggest that is precisely what occurred.

*Rosenthal, Kooshoian & Lennon, LLP*
ATTORNEYS AND COUNSELORS AT LAW / 80 WEST HURON STREET / BUFFALO, NEW YORK 14202 / (716) 854-1300

31.     The government's papers also suggest that only a portion of the jail call between Mr. Gogolack and former Co-Defendant, ███████████, was played for or read to the grand jury. Mr. Gogolack specifically states at 2 minutes and 50 seconds into that call that he did not fake the overdose that resulted in him going to the hospital after Crystal Quinn's death. (Government Exhibit B-1, 2:50)

32.     While Mr. Gogolack does tell ████████ he faked overdoses on previous occasions, he indicated he did so to determine whether or not he was under surveillance by the authorities (to see if they would respond and render assistance) the context of which does not appear to have been shared with the grand jury.

33.     Therefore, it seems that the only way the grand jury could have concluded Mr. Gogolack faked his own overdose on August 1, 2023, is if they were misled by the government's intentional withholding of evidence and/or misleading presentation of only small portions of evidence, all of which affected the impartial and/or independent nature of the grand jury and is grounds to release the grand jury information pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii).

### Grand Jury Information Should Be Disclosed Pursuant To FRCP 6(e)(3)(E)(ii)

34.     The Defendant moved for disclosure of grand jury materials pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) not because of the adequacy of the evidence upon which the Indictment is based as suggested by the government.

35.     Grand jury materials should be disclosed where a defendant shows a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury. Rule 6(e)(3)(E)(ii). Misleading a grand jury impairs the independent nature of the grand jury process and constitutes grounds for dismissal of the indictment. U.S. v. Hogan, 712 F.2d. 757 (2nd Cir., 1983) (dismissing indictment based on government's reliance on false and misleading hearsay testimony.). The cumulative effect of misleading explanations of the law and presentation of inaccurate evidence impairs

the grand jury's independent role and constitutes grounds for dismissal of the Indictment. *U.S. v. Peralta, et al.*, 763 F.Supp. 14 (S.D.N.Y., 1991); citing *U.S. v. Vetere*, 663 F.Supp. 381 (S.D.N.Y., 1987) (finding combination of hearsay testimony with factual errors, presentation of non-relevant prejudicial information about the defendant's criminal record and possibly erroneously misleading instructions of the law amounted to prosecutorial impairment of the grand jury's independent role warranting dismissal of the indictment.)

36.    As in the aforementioned cases, the government's presentation of false and misleading facts combined with its failure to provide the grand jury with relevant legal definitions after promising to do so and reading the grand jury an Indictment replete with misstatements and incomplete descriptions of statutes on which the charges were based, may be a basis to dismiss the Indictment justifying release of the grand jury information pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii).

37.    As the Court is aware, in addition to the misleading information presented to the grand jury relative to Mr. Gogolack's overdose, several Co-Defendants have made similar allegations of false information being presented to the grand jury and Mr. Gogolack has joined in those motions. (See generally Co-Defendant Knight and Gerace dispositive motions.)

38.    Finally, currently pending before the Court is litigation regarding the Magistrate's finding that the government misled the grand jury by failing to provide the grand jury with relevant legal definitions after promising to do so and reading them an Indictment replete with misstatements or incomplete descriptions of the statutes on which the charges were based.  The cumulative effect of the false allegations and misleading explanations of the law certainly seem to have impaired the independent nature of the grand jury, especially considering the short amount of time it took them to render their decision, all of which may be grounds for dismissal and justifies disclosure of the grand jury information pursuant to Rule 6(e)(3)(E)(ii). *Ibid*.

## MULTIPLICITY

39.     The government's opposition incorrectly states that Counts 13 through 15 and 16 through 18 are not multiplicitious under the *Blockburger test* because Counts 13 through 15 and Counts 16 through 18 contain different elements reflecting distinct crimes.

40.     *Blockburger* is not satisfied where the elements of one charged offense are subsumed within another charged offense. *U.S. v. Zvi*, 168 F.3d 49 (2nd Cir., 1999); citing Whalen v. U.S., 445 U.S. 684, 694 (1980); see also, *U.S. v. Seda*, 978 F.2d 799 (2nd Cir., 1992) (finding defendant could not be convicted of both bank fraud and filing false loan applications because the filing of the false loan application was simply a species of bank fraud.).

41.     Like *Zvi* and *Seda*, the statutes charged in Counts 14 & 15 and 17 & 18 contain elements subsumed within another charged offense. Specifically, Counts 14 and 15 are subsumed by Count 13 and Counts 17 and 18 are subsumed by Count 16. The elements of 18 U.S.C. §1512(b)(1), charged in counts 13 and 16, include knowingly using intimidation, threats, corruptly persuading another person or attempting to do so or engaging in misleading conduct toward another person with the intent to influence, delay or prevent the testimony of any person in an official proceeding. The elements of 18 U.S.C. §1512(b)(2)(a) include causing or inducing any person to withhold testimony or withhold a record, document or other object from an official proceeding which also violates 18 U.S.C. §1512(b)(1) in that it would influence, delay or prevent testimony in an official proceeding. Similarly, elements of 18 U.S.C. §1512(b)(3) include …corruptly persuading another person or attempting to do so or engaging in misleading conduct toward another person with the intent to hinder, delay or prevent communication to law enforcement or a Judge of the United States of information related to the commission or possible commission of a federal offense or violating the conditions of probation, supervised release, parole or

release pending judicial proceedings which if violated also violates 18 U.S.C. §1512(b)(1) in that it would influence, delay or prevent testimony of any person in an official proceeding.

42.    18 U.S.C. §1512(b) contains three (3) subsections, all of which carry the same penalty provision of a fine or imprisonment of not more than twenty (20) years or both.  Congress did not intend to authorize multiple punishments where the single course of conduct violated different subsections of 18 U.S.C. §1512(b) as evidenced by the statutory language.  Causing or inducing any person to withhold testimony or withhold a record document or other object from an official proceeding (18 U.S.C. §1512(b)(2)(a)) and persuading another person or attempting to do so to hinder, delay or prevent communication to a law enforcement office or Judge of the United States of information related to the commission or possible commission of a federal offense or violating the conditions of probation, supervised release, parole or release pending judicial proceedings (18 U.S.C. §1512(b)(3)) are simply species of persuading another person or attempting to do so ... with intent to influence, delay or prevent the testimony of any person in an official proceeding (18 U.S.C. §1512(b)(1)).  Based on both the Indictment and the government's response in opposition to Defendant's motion, it appears that Counts 13 through 15 are based on a single course of conduct as are Counts 16 through 18.

43.    Therefore, Counts 14 and 15 and 17 through 18 are multiplicitious and should be dismissed. _U.S. v. Seda_, _supra_, see also, _U.S. v. Baker_, 926 F.2d 179, 181 (2nd Cir., 1991) (convictions for receiving stolen goods and possessing stolen goods multiplicitious.)

### SUPPRESSION

44.    As the Government indicates in its response to the defense motions, Gogolack made statements to law enforcement on August 1, 2023 arguably invoking the right to counsel. Dkt. 723, p. 31. It appears that the Government is arguing that the ensuing statements were

_Rosenthal, Kooshoian & Lennon, LLP_
ATTORNEYS AND COUNSELORS AT LAW / 80 WEST HURON STREET / BUFFALO, NEW YORK 14202 / (716) 854-1300

spontaneously uttered.  However, the issue of whether a statement is truly spontaneous can be a very fact-specific issue, as even nonverbal cues may constitute interrogation.

45.     Similarly, the very next day, Gogolack was stopped by Depew Police.  The Government indicates that the police were not "interrogating" Gogolack, but rather "entertaining [his] unsolicited comments."  Dkt. 723, p. 33.

46.     The question of whether a statement is truly spontaneous is a fact-sensitive inquiry and should be determined by this Court upon the evidence rather than the Government's bare assertion that the officers did not interrogate Gogolack.

47.     Regarding the search warrant for the phone ending in 3061, the warrant is overbroad and does not satisfy the particularity requirement.  The warrant allows for "any photographs or videos depicting CRYSTAL QUINN or others inside of 296 Scott Avenue, Wellsville, New York," and contained no temporal limitation.

48.     Regarding the August 5, 2023 warrant for 296 Scott Avenue, the Government fails to show how a photograph of *another person* at 296 Scott Avenue, taken weeks, months, or years before Crystal Quinn's death, would be at all relevant to the investigation surrounding her death.  Dkt 723, p. 59.

49.     Moreover, the authorization in the August 5, 2023 warrant for the search of 296 Scott Avenue allowing law enforcement to seize anything that may have skin cells allowed officers unfettered discretion to remove any item.  To counter this argument, the Government argues that a limiting clause renders the authorization sufficiently particular.  However, that clause does not indicate what "proximity" means, and could easily be taken to mean anything within the residence.  As such, no meaningful boundaries were placed upon the officers' discretion.  United States v. Buck, 813 F.2d 588, 590-92 [2d Cir. 1987].

*Rosenthal, Kooshoian & Lennon, LLP*
ATTORNEYS AND COUNSELORS AT LAW / 80 WEST HURON STREET / BUFFALO, NEW YORK 14202 / (716) 854-1300

**WHEREFORE**, it is respectfully requested the Court grant the relief prayed for herein, together with any and other further relief the Court deems just and proper.

Peter M. Kooshoian, Esq.

Sworn before me this 30th
day of December, 2025

Notary Public

GARNET L. KELLY
Notary Public-State of New York
No. 01KE6296174
Qualified in Erie County
Commission Expires January 27, 20 26

*Rosenthal, Kooshoian & Lennon, LLP*
ATTORNEYS AND COUNSELORS AT LAW / 80 WEST HURON STREET / BUFFALO, NEW YORK 14202 / (716) 854-1300

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

          **Plaintiff,**

**v.**

**SIMON GOGOLACK,**

          **Defendant.**

**CERTIFICATE OF SERVICE**

**Indictment No.: 23-CR-99**

---

Peter M. Kooshoian, Esq., an employee with the office of Rosenthal, Kooshoian & Lennon, LLP located at 80 West Huron Street, Buffalo, New York 14202-3093 affirm to be true and state under penalty of perjury that on January 2, 2026 a **Reply Affidavit** were electronically filed with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case:

1. Hon. Elizabeth A. Wolford
   United States District Court Judge

2. Casey L. Chalbeck, Esq.
   Assistant United States Attorney

3. Nicholas Cooper, Esq.
   Assistant United States Attorney

4. Joseph Tripi, Esq.
   Assistant United States Attorney

Peter M. Kooshoian

Sworn before me this 2nd
day of January, 2026.

Notary Public

GARNET L. KELLY
Notary Public-State of New York
No. 01KE6296174
Qualified in Erie County
Commission Expires January 27, 20___

*Rosenthal, Kooshoian & Lennon, LLP*
ATTORNEYS AND COUNSELORS AT LAW / 80 WEST HURON STREET / BUFFALO, NEW YORK 14202 / (716) 854-1300