UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

SIMON GOGOLACK, a/k/a Greek,
PETER GERACE, JR.,
JOHN THOMAS ERMIN, a/k/a Tommy O,
MICHAEL RONCONE, a/k/a Cone,
FRANK KNIGHT, and
HOWARD HINKLE, JR., a/k/a Hard How,

Defendants.

---

**DECISION AND ORDER**

1:23-CR-00099 EAW

## I.   __INTRODUCTION__

"An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits.  The Fifth Amendment requires nothing more."  *Costello v. United States*, 350 U.S. 359, 363 (1956).  A grand jury sitting in this District returned a second superseding indictment against the above-captioned six defendants.  Assuming the charges are facially sufficient, that should be enough to warrant a jury trial.

But the magistrate judge assigned to the case has expressed "grave doubts" about the independence of the grand jury, based on his *in camera* review of the grand jury record. He questions the failure of the prosecutors to instruct the grand jury about the offenses considered for indictment, and the time that it took the grand jury to return the indictment. Because of these doubts, he has issued two orders directing disclosure of specific grand

jury materials to the defendants—for reasons independent of the ones that the defendants raised in their original motions seeking the grand jury minutes.

I have conducted my own *in camera* review of the entire grand jury record, and I do not share the magistrate judge's concerns. That said, the standard of review is highly deferential, and although I disagree with the magistrate judge's assessment, the disclosure orders may only be set aside if the government shows they were clearly erroneous or contrary to law. For the reasons set forth in this Decision and Order, that standard has been met.

The grand jury process is secret and benefits from a presumption of regularity.[1] Its function is to determine whether probable cause exists to charge a crime and it gets to make that assessment without judicial intervention. In contravention of those principles, the magistrate judge's disclosure orders delve into the inner workings and thought processes of the grand jury. Those orders question the independence of the grand jury based on a subjective assessment as to how much time it should have taken to return the indictment, and based on imposition of a rule on legal instructions that does not exist. This is incorrect. For the reasons set forth below, the magistrate judge's orders directing the government to produce grand jury materials to the defendants were clearly erroneous and contrary to law, and they are vacated. Furthermore, after conducting an *in camera* review of the entire grand jury record, I find no basis for disclosure of grand jury material to the defendants—

---

[1] To underscore this point, I became a district judge in December 2013, and this is the only time that I have reviewed the entire grand jury record *in camera*.

either for the reasons articulated by the magistrate judge or the reasons argued by the defendants.  Therefore, the defendants' requests for disclosure of grand jury material are denied.

## II.    BACKGROUND

### A.    Death of Crystal Quinn and Initiation of Criminal Proceedings

The case originated with the filing of a criminal complaint against defendant Simon Gogolack ("Gogolack") on August 17, 2023.  (Dkt. 1).  The complaint charged Gogolack with drug and firearms charges purportedly occurring between July 3 and August 8, 2023.  (*Id*.).[2]  The affidavit in support of the criminal complaint referenced the death of Crystal Quinn ("Quinn") on or about August 1, 2023, and the fact that Gogolack resided in the residence where Quinn was found and reported her death to authorities.  (*Id*. at ¶¶ 4-5).

An indictment was returned against Gogolack on September 13, 2023.  (Dkt. 12).  It charged one count of a narcotics conspiracy in violation of 21 U.S.C. § 846, one count of maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1), possession of firearms in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(i), felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), and unlawful user of controlled substances in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(8).  (Dkt. 12).

---

[2]    The complaint alleges the time period began on "July 3, 3023", but that is obviously an error.  The complaint asserts violations of 18 U.S.C. §§ 922(g)(1), 924(c)(1)(A)(i), 922(g)(3), and 21 U.S.C. §§ 856(a)(1) and 846.  (Dkt. 1).

A superseding indictment was returned against Gogolack on September 20, 2023. (Dkt. 18).  It added two counts of kidnapping in violation of 18 U.S.C. § 1201(a)(1), two counts of tampering with a witness in violation of 18 U.S.C. § 1512(b)(1), two counts of tampering with a witness in violation of 18 U.S.C. § 1512(b)(2)(A), and two counts of tampering with a witness in violation of 18 U.S.C. § 1512(b)(3).  (*Id.*).

Then, on October 24, 2023, a criminal complaint was filed against defendant Howard Hinkle, Jr. ("Hinkle") alleging drug and firearm charges.  (Dkt. 1).[3]  On December 7, 2023, criminal complaints were filed against defendant Michael Roncone ("Roncone") and defendant John Thomas Ermin, a/k/a "Tommy O" ("Ermin") alleging violations of 18 U.S.C. § 922(g)(3).  (Dkt. 1; Dkt. 1).[4]

---

[3]    The complaint against Hinkle also named Dillon Anderson as a defendant, but those charges were ultimately dismissed without prejudice pursuant to Federal Rule of Criminal Procedure 48(a).  (*See United States v. Anderson*, Case No. 23-mj-05219-MJR, Dkt. 20 (W.D.N.Y. Jan. 3, 2024)).  Because at the time of its filing the complaint against Hinkle was assigned a different non-indictment case number (1:23-mj-05219), there are duplicate docket references.  Accordingly, any docket citations must be considered along with the corresponding date.

[4]    An amended complaint was filed on December 7, 2023, correcting the description of the offense against Roncone.  (Dkt. 2).  Also named as a defendant by way of a criminal complaint filed on December 7, 2023, was Scott Barnes.  (Dkt. 1).  Barnes ultimately pleaded guilty to a violation of 18 U.S.C. § 922(g)(1), and he was sentenced on August 19, 2025, by United States District Judge Lawrence J. Vilardo to time served with three years supervised release.  (Dkt. 576).  Like the Hinkle early docket references, the Roncone, Ermin, and Barnes early docket references duplicate the Gogolack references because they were each assigned separate non-indictment case numbers.  (*See United States v. Ermin*, Case No. 1:23-mj-00167-HKS, Dkt. 1 (W.D.N.Y. Dec. 7, 2023); *United States v. Roncone*, Case No. 1:23-mj-00168-HKS, Dkt. 1 (W.D.N.Y. Dec. 7, 2023); *United States v. Barnes*, Case No. 1:23-mj-00166-HKS, Dkt. 1 (W.D.N.Y. Dec. 7, 2023)).  Thus, docket references must be considered with the identified date.

On January 5, 2024, a 28-count second superseding indictment was returned naming Gogolack, Ermin, Roncone, and Hinkle as defendants, along with defendants Frank Knight ("Knight") and Peter Gerace, Jr. ("Gerace").[5]  Three other defendants were also named.[6]  The pending counts in the second superseding indictment are as follows:

1    Obstruction of Justice Conspiracy against Gerace, Ermin, Roncone, Knight, Hinkle, and Gogolack, in violation of 18 U.S.C. § 371;

---

[5]    Gerace is a defendant in three other pending criminal cases in this District: *United States v. Bongiovanni et al.*, Case No. 1:19-cr-00227-LJV-MJR, Dkt. 89 (W.D.N.Y. Feb. 25, 2021); *United States v. Gerace*, Case No. 1:23-cr-00037-LJV-MJR, Dkt. 1 (W.D.N.Y. March 23, 2023); and *United States v. Gerace*, Case No. 1:23-cr-00060-JLS-MJR, Dkt. 1 (W.D.N.Y. June 8, 2023).  The 19-cr-227 and 23-cr-37 cases were consolidated.  *United States v. Bongiovanni*, No. 19-CR-227 (JLS) (MJR), 2023 WL 3143894, at *10-12 (W.D.N.Y. Apr. 28, 2023).  Although all assigned to United States District Judge John L. Sinatra, Jr., he issued a recusal order on June 21, 2023, in the 19-cr-227 and 23-cr-37 cases, stating as follows: "Given Defendant Peter Gerace, Jr.'s inclusion of two individuals as supposed character witnesses among hundreds of individuals on his witness list, recusal even in the absence of any bias, prejudice, or partiality is now required under 28 U.S.C. § 455(b)(5)(iv)." (Case No. 1:19-cr-00227, Dkt. 535 (June 21, 2023)).  The 19-cr-227 and 23-cr-37 cases were reassigned to Judge Vilardo, and the trial against Gerace in those cases went forward before Judge Vilardo beginning on October 28, 2024 (*id.*, Dkt. 1351), and concluding on December 27, 2024, when the jury returned a verdict of guilty on eight of nine counts (*id.*, Dkt. 1425; Dkt. 1426).  The two individuals prompting Judge Sinatra's recusal were never called as witnesses at the trial.  The events with respect to the witness list prompted the government to move to disqualify one of Gerace's attorneys in the 19-cr-227 and 23-cr-37 cases, but that motion was ultimately denied by Judge Vilardo.  *United States v. Gerace*, 731 F. Supp. 3d 497 (W.D.N.Y. 2024).  Case No. 23-cr-60 remains assigned to Judge Sinatra, with a trial date scheduled for October 19, 2026.  (Case No. 1:23-cr-00060, Dkt. 98 (January 12, 2026)).

[6]    As noted above, Barnes ultimately pleaded guilty and was sentenced to time served. *See* note 4, *supra*.  The case against defendant Bernard Byrd, III, was dismissed because he died on November 2, 2024.  (Dkt. 324; Dkt. 325).  And defendant Cortnie Barber pleaded guilty before Judge Vilardo to attempted witness tampering in violation of 18 U.S.C. § 1512(b)(1) pursuant to a plea agreement entered into under Federal Rule of Criminal Procedure 11(c)(1)(C), and she was sentenced to 37 months incarceration followed by three years supervised release.  (Dkt. 568).

2       Witness Tampering Conspiracy against Gerace, Ermin, Hinkle, and Gogolack, in violation of 18 U.S.C. § 1512(k);

3       Witness Retaliation Conspiracy against Gerace, Ermin, Hinkle, and Gogolack, in violation of 18 U.S.C. § 1513(f);

4       Distribution of Fentanyl Resulting in Death against Gogolack, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C);

5       False Statements against Knight in violation of 18 U.S.C. § 1001(a)(2);

6       Narcotics Conspiracy against Gogolack in violation of 21 U.S.C. § 846;[7]

7       Maintaining a Drug-Involved Premises against Gogolack in violation of 21 U.S.C. § 856(a)(1);

8       Possession of Firearms in Furtherance of Drug Trafficking against Gogolack in violation of 18 U.S.C. § 924(c)(1)(A)(i);

9       Felon in Possession of a Firearm and Ammunition against Gogolack in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8);

10      Unlawful User of Controlled Substances in Possession of a Firearm and Ammunition against Gogolack in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(8);

11      Kidnapping against Gogolack in violation of 18 U.S.C. §§ 1201(a)(1) and 2;

12      Kidnapping against Gogolack in violation of 18 U.S.C. §§ 1201(a)(1) and 2;[8]

13      Tampering with a Witness against Gogolack in violation of 18 U.S.C. § 1512(b)(1);

14      Tampering with a Witness against Gogolack in violation of 18 U.S.C. § 1512(b)(2)(A);

---

[7]     Barber and Byrd were also named as defendants in the narcotics conspiracy alleged in count six.

[8]     Barber was also named as a defendant in the kidnapping counts alleged in counts eleven and twelve.

15    Tampering with a Witness against Gogolack in violation of 18 U.S.C. § 1512(b)(3);

16    Tampering with a Witness against Gogolack in violation of 18 U.S.C. § 1512(b)(1);

17    Tampering with a Witness against Gogolack in violation of 18 U.S.C. § 1512(b)(2)(A);

18    Tampering with a Witness against Gogolack in violation of 18 U.S.C. § 1512(b)(3);

19    Manufacture and Possession with Intent to Distribute 100 or more Marihuana Plants against Hinkle in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii) and 18 U.S.C. § 2;

20    Maintaining a Drug-Involved Premises against Hinkle in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2;

21    Possession of Firearms in Furtherance of Drug Trafficking against Hinkle in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2;

22    Felon in Possession of Firearms against Hinkle in violation of 18 U.S.C. § 922(g)(1);

23    False Statements against Knight in violation of 18 U.S.C. § 1001(a)(2);

24    Unlawful User of Controlled Substance in Possession of Firearms against Ermin in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(8);

25    Unlawful User of Controlled Substance in Possession of Firearms against Roncone in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(8); and,

26    False Statements against Roncone in violation of 18 U.S.C. § 1001(a)(2).

(Dkt. 24).

### B.    Defendants' Motions Seeking Grand Jury Material and First Appeal of Magistrate Judge's Grand Jury Order

On July 25, 2025, the case was reassigned to the undersigned due to scheduling issues on the part of Judge Vilardo.  (Dkt. 512; *see* Dkt. 515).  At the time of the reassignment, an appeal filed by the government was pending from an Order issued by United States Magistrate Judge Jeremiah J. McCarthy,[9] directing that the government disclose to him grand jury transcripts for an *in camera* inspection.  (Dkt. 443 (government's appeal); Dkt. 433 (minute entry of May 21, 2025 appearance before Judge McCarthy); Dkt. 438 at 103-04 (transcript of Judge McCarthy's ruling)).

By way of background, on April 16, 2025, a joint motion was filed on behalf of Gerace, Ermin, and Hinkle, seeking among other things grand jury materials.  (Dkt. 410).  These defendants argued that pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), grand jury materials should be produced because grounds to dismiss the indictment existed based on: "(1) false overt acts in the indictment support the conclusion that the grand jury was knowingly presented with false information; and (2) the evidence presented to the grand jury will determine whether there was prosecutorial steering in the early stages of this case."  (Dkt. 410-1 at 67-68).  In support of the allegation that the grand jury was knowingly presented with false information based on the purported falsity of overt

---

[9]    On September 13, 2023, upon return of the initial indictment, the case was referred to Magistrate Judge McCarthy for the handling of pretrial matters pursuant to 28 U.S.C. § 636(b)(1).  (Dkt. 14).  The undersigned vacated that referral order on October 22, 2025.  (Dkt. 648).

acts charged in the indictment, the defense motion cited the overt act charged in paragraph 25 of count one of the second superseding indictment:

> The trial witness list filed or caused to be filed by Gerace Attorney 1 also listed Crystal Quinn as a defense witness.  The listing of Crystal Quinn as a witness for Gerace circumvented the provisions of a Protective Order which prohibited attorneys for **GERACE** from revealing to **GERACE** the government's witnesses' names and from providing **GERACE** with the government's witness list.

(Dkt. 24 at 16 (hereinafter "Overt Act ¶ 25")).  The defense argued that this allegedly false overt act fit with the government's narrative that Gerace became aware that Quinn was a potential government witness through secretive means, and he then shared that information with Ermin and others.  But, according to the defense argument, the government "publicly revealed Ms. Quinn to be a cooperating witness during a detention hearing in March 2023 before witness lists were filed in case no. 19-cr-227."  (Dkt. 410-1 at 69-70).  The defense reasoned:

> The intentional inclusion of false allegations in the indictment implies the grand jury presentation was also engineered to present an obviously false narrative, which certainly supports disclosure of grand jury minutes in support of a potential motion to dismiss.  Furthermore, the government's decision to include false allegations in the indictment should be perceived as a forfeiture of any interest in secrecy of grand jury proceedings, because the government should have been aware of the risk that the false information would require the grand jury presentation to be reviewed.

(*Id*. at 73).  The defense also argued that disclosure of grand jury material is necessary "so the defense can accurately review what information the government had solicited at the grand jury prior to the indictment of Mr. Gogolack" under the theory that this may support the defense argument that the government declined to file a related case form to other cases pending against Gerace when the original indictment was returned, so as to avoid

assignment of Judge Vilardo, who was handling case nos. 19-cr-227 and 23-cr-37 involving Gerace.  (*Id*. at 74-81).[10]

On April 16, 2025, Gogolack filed a motion pursuant to Federal Rule of Criminal Procedure 6(e) and the court's inherent authority for disclosure of grand jury minutes. (Dkt. 404 at 36-37).  Alternatively, Gogolack requested that "the court review the minutes *in camera* to ascertain whether a grand jury violation has occurred requiring its disclosure to the defendant."  (*Id*. at 36).  Gogolack did not expound upon the basis for the request in his motion, and instead incorporated by reference the arguments made by Gerace, Hinkle, and Ermin.  (*Id*. at 37).

At the appearance before Judge McCarthy on May 21, 2025, after argument on the pending requests for the grand jury minutes, he ruled as follows:

> MAGISTRATE JUDGE MCCARTHY: Okay. I think I have the parties' positions.  We've got other issues we've got to address today so my ruling is going to be as follows: Criminal Rule 6(e)(3)(E) states that the Court may authorize disclosure at a time and a manner and subject to any other conditions that it directs of a Grand Jury matter, sub (2), at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the Grand Jury.
>
> I emphasize the word "may" here.  I'm not drawing any conclusions as to whether there was any impropriety.  I don't know.  But focusing again only on—and I've read the other allegations, the factual allegations but I still have trouble with how the Grand Jury was able to—I'm not addressing this in terms of whether there's evidence to support it, I'm addressing it in terms of how was the jury instructed so that they could make this finding.  So I am going to direct that the Grand Jury minutes be given to me for my in-camera review.

---

[10]    Upon return of the original indictment in this case, it was randomly assigned to Judge Sinatra.  On January 8, 2024, the case was reassigned to Judge Vilardo.  (Dkt. 26).

- 10 -

Mr. Foti, I know you've asked that you have access to it, too.  Not at this point because I think I have enough to make my own determination as to whether or not further disclosure is appropriate.  I may conclude that I don't think there was any impropriety.  I would indicate that to Judge Vilardo, if I conclude that there may have been.  We'll see where we go from there.  But for now that's my ruling.

(Dkt. 438 at 103-04).[11]

One of the undersigned's first actions taken after reassignment of the case was to deny the government's appeal, reasoning that while a close issue, the deferential standard of review led to the conclusion that the magistrate judge had not committed clear error by directing an *in camera* review related to this issue involving Overt Act ¶ 25.  (Dkt. 522). At the first appearance before the undersigned, on July 31, 2025, when the ruling on the government's appeal was announced, the government asked for clarification on what exactly from the grand jury record should be produced, and agreed it would seek further guidance from Judge McCarthy.  (Dkt. 525 at 37-39).

**C.    Submission of Entire Grand Jury Record to Magistrate Judge for *In Camera* Review**

The government sought that guidance by letter dated July 31, 2025 (Dkt. 526), and Judge McCarthy issued an Order on August 8, 2025, stating that the government had done "an about-face" by agreeing in its appearance before him that Overt Act ¶ 25 meant that Gerace Attorney 1 "at least indirectly violate[d]" the protective order by listing Quinn as a defense witness, to arguing in the appeal of his grand jury disclosure order that Overt Act ¶ 25 "'does *not* . . . allege that an attorney violated the Protective Order'."  (Dkt. 544 at 1-

---

[11]    This reference is to the page(s) in the CM/ECF header, not to the transcript pages.

2).  Thus, Judge McCarthy concluded that the "government's change of position raises more questions than it answers" and that the government's failure to mention the listing of Quinn as a defense witness in a meeting with Judge Sinatra on June 21, 2023, "strongly suggests that at that time it did not believe that Gerace's listing of Quinn as his witness was in any way improper."  (*Id*. at 2).  Judge McCarthy went on:

> And that begs the question:  what led the grand jury to find probable cause to believe that Gerace or his attorney had violated or "circumvented" a prohibition which did not exist in the first place?  Although the government has "no obligation to present exculpatory material to a grand jury," *United States v. Regan*, 103 F.3d 1072, 1081 (2d Cir. 1997), "the prosecutor's right to exercise some discretion and selectivity in the presentation of evidence to a grand jury does not entitle him to mislead it".  *United States v. Ciambrone*, 601 F.2d 616, 623 (2d Cir. 1979).
>
> For example, were the grand jurors told that the government's proffers during Gerace's detention hearing in March, 2023 (over a month before the government filed its witness list) "likely made it clear that Miss Quinn was a cooperating witness", and that "responses to District Court questions and the context of the answers made Quinn's cooperation obvious"?  Or were they instead led to believe that Gerace first learned of Quinn's role as a government witness through her listing as a defense witness?  To be clear, I am *not* now suggesting that the government engaged in misconduct before the grand jury—I conclude only that a sufficient showing has been made to justify further inquiry.

(*Id*. at 2-3 (footnote omitted)).  Judge McCarthy concluded that "in order to determine whether any impropriety may have occurred relative to ¶25, I will need to review *in camera* the entire grand jury proceedings, including any statements made to the grand jurors by the government attorneys."  (*Id*. at 3-4).

No appeal was filed from Judge McCarthy's August 8, 2025 Order.  Instead, by letter dated August 11, 2025, the government produced grand jury materials to Judge McCarthy for his *in camera* review, with the representation that it would produce

transcripts of any statements made to the grand jury by government attorneys once it obtained those transcripts.  (Dkt. 552).[12]  The remaining transcripts and entire record in paper format were produced to Judge McCarthy on August 18, 2025.

### D.    <u>Knight Grand Jury Motion</u>

By motion filed on June 13, 2025, Knight sought, among other forms of relief, an order to produce grand jury records.  (Dkt. 455 at 11-14).  In support of that motion, Knight argued that the statement in count five of the second superseding indictment that he told representatives of the FBI that Hinkle "was not at a poker game in Wellsville attended by Crystal Quinn on July 27, 2023" was false because he unequivocally told the FBI that Hinkle was at the poker game.  (*Id*. at 5, 12).  Knight argued that it appears the grand jury was never told that Knight, in fact, admitted to the FBI that Hinkle was at the poker game.  (*Id*. at 13).  Thus, according to Knight, he should have access to the grand jury material to ascertain whether a motion to dismiss is appropriate.  (*Id*.).

Knight further argued that the grand jury minutes should be reviewed as related to count 23.  That count charges Knight with a violation of 18 U.S.C. § 1001(a)(2) based on statements he allegedly made to the FBI that Gogolack did not visit his residence during the early morning hours on July 28, 2023, when in fact Knight knew that Gogolack visited his residence during that time frame.  (Dkt. 24 at 45).  Knight argues that if the government

---

[12]    Docket 552 is redacted to remove references to the grand jury record.  By Text Order entered August 12, 2025, Judge McCarthy granted the government's motion to seal the redacted portions of the letter and stated that the "original unredacted letter will be kept in chambers pending further order of the court."  (Dkt. 554).  The undersigned has reviewed the unredacted version of the letter.

told the grand jury that Gogolack's phone was located in Knight's residence, then it was intentionally misleading because the FBI's Cellular Analysis Survey Team ("CAST") could not be that specific with respect to the location of Gogolack's phone. (Dkt. 455 at 13-14).

The government filed a response in opposition to Knight's motion on June 30, 2025. (Dkt. 468 at 1-4). Knight filed a reply in further support of his motion on July 8, 2025. (Dkt. 478 at 1-3). Oral argument on the motion was held before Judge McCarthy on August 20, 2025, at which time he reserved decision. (Dkt. 565). On August 21, 2025, Judge McCarthy issued a Decision and Order in which he concluded as follows with respect to Knight's request for grand jury material related to count five:

> Although I am not now suggesting that the government engaged in misconduct before the grand jury, I conclude that Knight has made a sufficient showing to justify further inquiry into how the jury found probable cause to believe that he falsely told the FBI that Hinkle was not at the card game on July 27, 2023.

(Dkt. 566 at 3). Judge McCarthy then noted that the government had already provided him with the complete grand jury materials in response to his August 8, 2025 Order, and therefore he would "review those materials in camera prior to deciding whether Knight or his attorney are entitled to see any portion of them." (*Id*., n.2). As for the request for grand jury materials related to count 23, Judge McCarthy took "a different view" and concluded that "absent expert analysis" the contention that Gogolack's cell phone could not be located with that level of specificity was "mere speculation." (*Id*. at 3).

No appeal was filed by either party from that Decision and Order.

Then, on August 27, 2025, Judge McCarthy issued another Decision and Order (Dkt. 585 (redacted decision); Dkt. 584 (sealed decision)), in which he advised that he had completed his *in camera* review of the grand jury materials to determine whether there was arguably misconduct by the government in connection with count five's allegations, and concluded that "the government did not mislead the grand jury or otherwise engage in misconduct in regard to those allegations." (Dkt. 585 at 2).

On September 10, 2025, Knight filed an appeal with the undersigned from the magistrate judge's Decision and Order issued on August 27, 2025, denying production of grand jury material concerning the allegations in count five. (Dkt. 599). In his appeal, Knight argued that, even though he had consented to it, the government's *in camera* submission allowed the government an extra opportunity to argue its position. (*Id*. at ¶ 7). Knight also argued that if the grand jury was not told that he corrected his equivocal statement to the FBI within minutes, the grand jury was intentionally misled. (*Id*. at ¶ 12). Knight further argued that it would be error to conclude that "any iteration of Knight's claimed lie to the FBI could have been material." (*Id*. at ¶ 16).

The government filed a memorandum in opposition to the appeal on September 25, 2025. (Dkt. 635). Knight filed a reply on October 1, 2025. (Dkt. 639).

E.    **Magistrate Judge's Grand Jury Orders**

    1.    The Order to Show Cause

On September 15, 2025, Judge McCarthy issued an Order to Show Cause.  (Dkt. 605; Dkt. 606; Dkt. 663; Dkt. 666).[13]  In that Order to Show Cause, Judge McCarthy concluded that the government endeavored to instruct the grand jury and did so incorrectly. (Dkt. 663 at 2).  Judge McCarthy noted that the prosecutor who appeared before the grand jury at the outset when it was initially empaneled informed them he would serve as their legal advisor and made certain representations about how the process would work, including how indictments would be presented and that the prosecutor presenting the proposed indictment would explain relevant legal definitions.  (*Id*. at 2-3).  However, the prosecutor presenting the second superseding indictment in this case did not provide legal definitions pertinent to the charges in the indictment or read the statutes on which the charges were based.  Instead, the prosecutor just read the proposed indictment to the grand jury.  (*Id*. at 3-4).

Judge McCarthy also noted the time that it took the grand jury to consider the second superseding indictment after its presentation by the government, relying on his review of the "FTR log notes" and suggested that he viewed the time as unrealistically too short considering the breadth of the second superseding indictment.  (*Id*. at 3).  Given the

---

[13]    As this citation indicates, the Order to Show Cause is filed on the docket in four different formats.  Docket 605 is the complete version sealed by the magistrate judge. Docket 606 is a heavily redacted version filed by the magistrate judge.  Docket 663 is a less redacted version that the undersigned arranged to file publicly.  (*See* Dkt. 662 at 2). Docket 666 is the version that the undersigned arranged to produce to defense counsel with minor redactions.  (*Id*.).

deficiencies Judge McCarthy identified in the government's presentation of the case to the grand jury, he questioned "how it could have determined for itself—acting independently of the government—whether there was probable cause to believe that those elements were satisfied by the evidence which the government presented for its consideration." (*Id*. at 4). Reasoning that the defendants could not raise this issue on their own since they lacked access to the grand jury record, Judge McCarthy ordered the government to show cause on or before September 22, 2025, as to why his order and the relevant portions of the jury transcripts should not be produced to the defendants. (*Id*. at 6).

The government responded to the Order to Show Cause on September 29, 2025. (Dkt. 637; Dkt. 696; Dkt. 698-1; Dkt. 698-2).[14]

2.    The Magistrate Judge's October 16, 2025 Decision and Order

On October 16, 2025, Judge McCarthy issued a Decision and Order in which he adhered to his initial position set forth in the Order to Show Cause. (Dkt. 643; Dkt. 664; Dkt. 667).[15] Judge McCarthy concluded that the government had misled the grand jury by failing to instruct the grand jury as promised by the prosecutor who spoke to the grand jury

---

[14]    The government at first filed its response *ex parte*. (Dkt. 637). As agreed at the appearance before the undersigned on November 13, 2025, the government then filed a redacted version of the response on the public docket (Dkt. 696), and produced a version with less redactions to defense counsel filed under seal on the docket (Dkt. 698-2). The unredacted version of the response is filed under seal at Docket 698-1.

[15]    As this citation indicates, this Order is filed on the docket in three different formats. Docket 643 is the complete version sealed by Judge McCarthy. Docket 664 is a redacted version that the undersigned arranged to file publicly. (*See* Dkt. 662 at 2). Docket 667 is the version that the undersigned arranged to produce to defense counsel with minor redactions. (*Id*.).

at the outset, and that the second superseding indictment was "replete with misstatements or incomplete descriptions of the statutes upon which its charges are based," and therefore reading just the indictment was not sufficient. (Dkt. 664 at 4-5). Judge McCarthy went on:

> [B]eing "presumably acquainted with the law," the government asked the grand jury to charge crimes which do not exist (18 U.S.C. §§2, 924(a)(8) and 21 U.S.C. §841(b)(1)(C)), misstated the requirements of 18 U.S.C. §922(g)(3), and failed to define the element of "materiality" for purposes of 18 U.S.C. §1001(a)(2).

(*Id*. at 8).

On October 20, 2025, the government sought a stay from the undersigned of the magistrate judge's Decision and Order (Dkt. 646 (sealed motion); Dkt. 695 (publicly-filed redacted motion)),[16] which was granted (Dkt. 645).

### 3.    The Magistrate Judge's October 22, 2025 Decision and Order

Then, while the Knight appeal was pending and before the undersigned was able to rule on it, a subsequent decision was issued by the magistrate judge under seal on October 22, 2025, in which he reversed his decision on Knight's request for grand jury material. (Dkt. 647; Dkt. 665; Dkt. 668).[17] Specifically, Judge McCarthy concluded that "the grand

---

[16]    The unredacted motion to stay was ultimately provided to defense counsel. (*See* Dkt. 683 at 3 n.2).

[17]    As this citation indicates, this Order is filed on the docket in three different formats. Docket 647 is the complete version sealed by the magistrate judge. Docket 665 is a redacted version that the undersigned arranged to file publicly. (*See* Dkt. 662 at 2). Docket 668 is another copy of the unredacted version that the undersigned arranged to produce to defense counsel (*i.e.*, with no redactions). (*Id*.).

jury materials relevant to the §1001(a)(2) charge (including instructions or lack thereof) should be released to defendant Knight." (Dkt. 665 at 2). Judge McCarthy reached this conclusion based on his finding that the grand jury should have been instructed on the definition of materiality and it was not. (*Id*. at 1).

### F.     Gerace Disclosure Motion

On October 26, 2025, Gerace filed a motion for disclosure of the sealed and *ex parte* filings. (Dkt. 651). The government filed papers in opposition. (Dkt. 703).[18]

### G.     Appeals to the Undersigned

At an appearance before the undersigned on October 30, 2025, the Court distributed to government counsel proposals for the public filing and disclosure to defense counsel of the magistrate judge's three orders related to the grand jury material. The government ultimately did not object to the Court's proposals. (Dkt. 661). By Order entered November 7, 2025, the undersigned ordered the production of the magistrate judge's filings with limited redactions to what was produced to defense counsel, and some further redactions in the publicly filed versions of the documents. (Dkt. 662).

The government then filed papers seeking to vacate the magistrate judge's decisions ordering disclosure of grand jury material. (Dkt. 697 (redacted objections); Dkt. 698 (sealed objections)). The defendants all filed papers in opposition to the government's

---

[18]     As confirmed at the appearance before the undersigned on December 22, 2025, the only outstanding issues with respect to Gerace's motion for disclosure are the redactions made to Judge McCarthy's Order to Show Cause and his Decision and Order entered October 16, 2025, and the redactions to the government's response to the Order to Show Cause.

objections (Dkt. 712 (Knight opposition); Dkt. 713 (Hinkle opposition); Dkt. 714 (Gogolack opposition); Dkt. 715 (Ermin opposition); Dkt. 716 (Gerace opposition)), although Roncone filed a motion to join in his co-defendants' arguments, stating in sum and substance that he shared Judge McCarthy's concerns about the independence of the grand jury and whether it was properly instructed (Dkt. 717). The government filed a reply in further support of its objections. (Dkt. 725 (redacted reply); Dkt. 726 (sealed reply)).[19] Oral argument was held before the undersigned on December 22, 2025 (Dkt. 720), at which time the Court reserved decision.

## III.   **DISCUSSION**

### A.   **Legal Standards**

#### 1.   Review of Magistrate Judge Non-Dispositive Decision

Any appeal from a non-dispositive decision by a magistrate judge is reviewed under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); *see United States v. Smith*, 105 F. Supp. 3d 255, 258 n.1 (W.D.N.Y. 2015). This deferential standard of review applies even where the discovery sought ultimately relates to a dispositive motion, such as a motion to dismiss. *See generally United States v. Pirk*, 282 F. Supp. 3d 585, 590 n.4 (W.D.N.Y. 2017).

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Feneziani*, No. 05-CR-290E, 2007 WL

---

[19]     To be clear, the defense has been provided with the government's unredacted filings in connection with the pending objections that have been filed under seal.

1613630, at *1 (W.D.N.Y. June 1, 2007) (quoting *Garcia v. Teitler*, 443 F.3d 202, 211 (2d Cir. 2006)). "This standard is highly deferential, imposes a heavy burden on the objecting party, and only permits reversal where the magistrate judge abused his discretion." *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 139 (E.D.N.Y. 2013) (citation modified), *aff'd*, 705 F. App'x 10 (2d Cir. 2017); *see also S.E.C. v. Verdiramo*, 890 F. Supp. 2d 257, 266 (S.D.N.Y. 2011) ("The clearly erroneous standard is highly deferential, and magistrate judges are afforded broad discretion in resolving non-dispositive disputes. . . ." (citation modified)).

2.    Grand Jury Disclosure

"The grand jury gets to say—without any review, oversight, or second-guessing— whether probable cause exists to think that a person committed a crime." *Kaley v. United States*, 571 U.S. 320, 328 (2014).

> The grand jury, classically, is meant to be an independent check on the ability of the government to bring criminal charges against individuals. It "serv[es] as a kind of buffer or referee between the Government and the people," "protect[ing] . . . citizens against unfounded criminal prosecutions." The grand jury also has another role, as an investigatory and accusatory body.
>
> The federal grand jury "has not been textually assigned" to any of the three branches of federal government. The institution is not mentioned in the body of the Constitution, but in the Bill of Rights. It is thus a "constitutional fixture in its own right"; it is not an arm of the district court. Indeed, "the whole theory of its function is that it belongs to no branch of the institutional Government." Thus, the grand jury remains functionally and constitutionally "at arm's length" from the judicial branch.

*In re United States*, 441 F.3d 44, 57 (1st Cir. 2006) (citation modified).

The Supreme Court has consistently and repeatedly "recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."

*Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). This long-established policy is "older than our Nation itself." *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959). "[A] presumption of regularity attaches to grand jury proceedings. . . ." *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994). The secrecy considerations extend to not only the evidence presented, but also to any legal instructions provided. *United States v. Nance*, 168 F. Supp. 3d 541, 551 (W.D.N.Y. 2016); *Smith*, 105 F. Supp. 3d at 259.

Aside from various means and forms of disclosure to or by government counsel that are not relevant here, there are only two limited exceptions to grand jury secrecy set forth in Federal Rule of Criminal Procedure 6. Under Rule 6(e)(3)(E)(i), disclosure may be made "preliminarily to or in connection with a judicial proceeding[.]" And under Rule 6(e)(3)(E)(ii), disclosure may be made "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury[.]" Under either provision, there must be a "strong showing of particularized need for grand jury materials before any disclosure will be permitted." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983).

The exception under Rule 6(e)(3)(E)(i) arose from the recognition that "in some situations justice may demand that discrete portions of transcripts be made available for use in subsequent proceedings" because of the "occasional need for litigants to have access to grand jury transcripts. . . ." *Douglas Oil Co. of Cal.*, 441 U.S. at 219-20. To obtain transcripts under this provision, the party seeking the records "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the

need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Id*. at 222.  Rule 6(e)(3)(F) and (G) sets forth a process for obtaining grand jury records under this provision, including that a petition must be filed in the district where the grand jury was convened but that the petition may be transferred to where the other judicial proceeding is pending.  "Ideally, the judge who supervised the grand jury should review the request for disclosure, as he will have first-hand knowledge of the grand jury's activities." *Id*. at 225.[20]

Under Rule 6(e)(3)(E)(ii), in order to obtain grand jury material a defendant must show that "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  But dismissal is extremely rare and the grounds are narrow.  *United States v. Taher*, No. 09-CR-135S (2), 2020 WL 830426, at *2 (W.D.N.Y. Feb. 20, 2020) ("Dismissal of an indictment due to defects in grand jury proceedings is 'the most drastic remedy, and thus is rarely used.'" (quoting *United States v. Dyman*, 739 F.2d 762, 768 (2d Cir. 1984)).

The Supreme Court has stated that with respect to prosecutorial conduct before a grand jury, a district court's supervisory power is generally limited to addressing violations of those "few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions."  *United States v. Williams*,

---

[20]    Senior District Judge Richard J. Arcara signed an Order on June 20, 2023, empaneling the grand jury at issue here.  On June 25, 2024, Judge Vilardo issued an Order pursuant to 28 U.S.C. § 636(b)(1)(A) and *United States v. Diaz*, 922 F.2d 998 (2d Cir. 1990) referring matters related to that grand jury to Judge McCarthy.  Thus, if a petition had been filed under Rule 6(e)(3)(F) related to this grand jury, Judge McCarthy would have been authorized to handle it, at least after June 25, 2024.

504 U.S. 36, 46 (1992). These limits are driven by "the grand jury's operational separateness from its constituting court" that have caused reluctance "to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure." *Id*. at 49-50. In other words, a federal court's power to fashion rules of grand jury procedure "is a very limited one, not remotely comparable to the power they maintain over their own proceedings." *Id*. at 50.

And if there is prosecutorial misconduct, dismissal is generally appropriate only if the defendants are prejudiced by the misconduct—in other words, "whether any violations had an effect on the grand jury's decision to indict. If violations did substantially influence this decision, or if there is grave doubt that the decision to indict was free from such substantial influence, the violations cannot be deemed harmless." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988); *see United States v. Capoccia*, 247 F. App'x 311, 314 (2d Cir. 2007) (dismissal of indictment not warranted because defendant had not "established a violation of one of the few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions," nor prejudice because of the alleged misconduct (citation modified)); *United States v. Monzon-Luna*, No. 11-CR-722 (S-4) (RRM), 2014 WL 223100, at *1 (E.D.N.Y. Jan. 21, 2014) ("[A] district court may dismiss an indictment based on misconduct before a grand jury only where that misconduct: (1) 'amounts to a violation of one of those few, clear rules which were carefully drafted and approved by [the Supreme Court] and by Congress to ensure the integrity of the grand jury's functions,'; and (2) prejudices the defendant by 'substantially influenc[ing] the grand jury's decision to indict,' or by creating

'grave doubt that the decision to indict was free from the substantial influence of such violations.'" (citation modified)).

### B.    **The Parties' Arguments**

#### 1.    The Government's Arguments

The government argues that the magistrate judge's grand jury disclosure orders are clearly erroneous and contrary to law for several reasons: (1) reliance on Rule 6(e)(3)(E)(i) was incorrect because it "cannot support disclosure where the 'judicial proceeding' is the same one as that initiated by the grand jury's indictment" (Dkt. 697 at 24-26); (2) Rule 6(e)(3)(E)(ii) does not support disclosure because there is no basis to dismiss the second superseding indictment for failure to provide legal instructions, and the magistrate judge's conclusions about the facial invalidity of the second superseding indictment were wrong (*id*. at 26-43); (3) the magistrate judge's reliance on comments made by the empanelment prosecutor to create a binding obligation to instruct was error (*id*. at 43-44); and (4) the magistrate judge's "repeated violation of the party-presentation principle confirms that [he] abused [his] discretion" (*id*. at 44-45).

#### 2.    Defendants' Arguments

An overriding premise of the defense submissions is that at this point, all that the magistrate judge has done is ordered the production of certain grand jury materials, and given the highly deferential standard of review, this Court should reject the government's appeal.  Each defendant does assert some unique arguments as pertinent to his situation, which the Court has summarized below.  To be clear, this is not intended to be an

exhaustive discussion of the arguments, which the Court has thoroughly reviewed and considered in detail.

Gerace argues: (1) the highly deferential standard of review requires rejection of the government's appeal (Dkt. 716 at 19-20); (2) the Court should reject the government's argument that the magistrate judge lacked authority to order disclosure under Rule 6(e)(3)(E)(i), and if there is any doubt the rule of lenity requires that the rule be construed in favor of the defendants (*id*. at 20-24); (3) the magistrate judge raised concerns about the grand jury's independence and it is premature to address the merits of any motion to dismiss (*id*. at 24-26); and (4) the grand jury disclosures could be relevant to other issues raised by motions to dismiss, including those related to alleged false overt acts (*id*. at 26-28).

Knight argues in response by focusing on his argument that the grand jury "was intentionally misled concerning his statements to the FBI on August 3, 2025."[21]  (Dkt. 712 at 4).  Knight also argues that because there now is an affidavit of an expert confirming that it was intentionally misleading to suggest that the FBI CAST analysis could be specific with respect to the location of Gogolack's phone on July 28, 2023, that must mean that the grand jury was intentionally misled on the issues related to count 23, thus also justifying disclosure of the grand jury minutes.  (*Id*. at 5).

---

[21]    The Court assumes that Knight's reference to statements he made on August 3, 2025, is a typographical error, since the second superseding indictment alleges that such statements were made on August 3, 2023.  (*See* Dkt. 24, ¶ 60).

Hinkle argues, like the other defendants, that the magistrate judge's decision simply decided to release grand jury material—not whether to dismiss the indictment—and that the conclusion questioning the independence of the grand jury was well within his discretion. (Dkt. 713). Hinkle highlights the magistrate judge's comments on the lack of an aiding and abetting instruction, and argues that Hinkle needs the grand jury disclosures so that he can challenge the sufficiency of counts 19 through 21 and "the integrity of the Grand Jury proceeding as a whole." (*Id*. at 6).

Gogolack argues that the magistrate judge's determination should stand, and he also argues that the indictment falsely alleges in paragraph 54 that he faked his own overdose, and like Knight that it was false to suggest that his phone could be traced to Knight's home during the early morning hours of July 28, 2023. (Dkt. 714 at 2).

Ermin argues that the magistrate judge had the power to act *sua sponte*, and that the failure to provide proper legal instructions is "just the tip of the iceberg" in terms of problems with the grand jury. (Dkt. 715 at 2-3). Ermin also argues that the grand jury record is necessary to address a potential motion to dismiss based on the government's potential misstatement that the "conspiracy originated at a meeting between Defendants Gerace and Ermin on April 24, 2023," when in fact the government then changed that position to a conspiracy commencement date of July 6, 2023. (*Id*. at 3).

### 3.    Government's Reply

The government replies by citing some arguments that the defendants fail to address, including their failure to claim that an indictment tracing the statutory elements of each charge has ever been dismissed, where the government has read the indictment itself to

instruct the grand jury.  (Dkt. 725 at 3).  Much of the government's reply focuses on its claim that Rule 6(e)(3)(E)(i) does not permit disclosure under these circumstances.

### C.   Applicability of Rule 6(e)(3)(E)(i) and *Sua Sponte* Disclosure

The magistrate judge cited Rule 6(e)(3)(E)(i) to authorize disclosure—a provision neither cited by the defendants in their motions nor addressed by the government before issuance of the magistrate judge's orders.  As the government points out in its reply papers, even now some defendants do not attempt to rely on this provision for disclosure.  (Dkt. 725 at 4 n.1).

The government argues that Rule 6(e)(3)(E)(i) "applies only to situations where the judicial proceeding for which disclosure of grand jury material is sought is a judicial proceeding different from the criminal trial authorized by the grand jury's indictment" because any other interpretation would "swallow" the disclosure authorization of Rule 6(e)(3)(E)(ii).  (Dkt. 697 at 18).  As referenced by the government, some courts have reached that conclusion.  *See*, *e.g.*, *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 615 (E.D. Va. 2004) ("it is settled that the first exception applies only to situations where the judicial proceeding for which disclosure of grand jury material is sought is a judicial proceeding different from the criminal trial authorized by the grand jury's indictment").  The magistrate judge at least implicitly rejected this idea, but the issue was never expressly addressed because of the *sua sponte* manner in which the disclosure was ordered.

As noted by at least Ermin (Dkt. 715 at 2), the magistrate judge relied on *United States v. Urso*, No. 03-CR-1382 (NGG), 2006 WL 681204, at *4 (E.D.N.Y. Mar. 16, 2006), for the principle that Rule 6 permits disclosure of grand jury material *sua sponte* (*see* Dkt.

664 at 1).[22]  But the Court agrees with the government that *Urso* reached that conclusion

in *dicta* with no analysis.  In other words, contrary to the magistrate judge's implication,

there is not some general, well-established body of case law suggesting that a court may

decide on its own to release grand jury material for a reason not raised by the parties.

Indeed, neither the parties nor the magistrate judge has cited <u>*any case*</u> where grand jury

material was disclosed under circumstances like the ones here, and the Court in its own

research has not uncovered one.  The Court also agrees with the government that the rule

of lenity (relied on by some defendants to argue that Rule 6(e)(3)(E)(i) should be construed

in their favor) has no application here.[23]

---

[22]    In his Order to Show Cause, the magistrate judge stated that the "supervisory powers of the court" granted him authority to *sua sponte* raise the issue, but the cases cited in support of that statement have nothing to do with the grand jury process.  (*See* Dkt. 663 at 5).  As recognized by the Supreme Court, the grand jury is a unique body, and "any power federal courts may have to fashion, on their own initiative, rules of grand jury procedure is a very limited one, not remotely comparable to the power they maintain over their own proceedings."  *Williams*, 504 U.S. at 50.  Thus, the undersigned disagrees that case law supporting the power of a court to act *sua sponte* in other contexts translates to the grand jury process.

[23]    The rule of lenity is founded on "the tenderness of the law for the rights of individuals" to fair notice of the law "and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department."  *United States v. Davis*, 588 U.S. 445, 464-65 (2019).  It applies when "after consulting traditional canons of statutory construction, we are left with an ambiguous statute."  *Shular v. United States*, 589 U.S. 154, 165 (2020).  It is meant to aid in the interpretation of a criminal statute when all other tools of statutory interpretation have been exhausted.  *United States v. DiCristina*, 726 F.3d 92, 97 (2d Cir. 2013).  But it does not apply in this context—when interpreting a Rule of Procedure.  In the same vein, this would be like suggesting that the win should always go to the defense when interpreting a Rule of Evidence—an outcome a defendant would surely relish, but one not supported by the law.

As to Rule 6(e)(3)(E)(i)'s applicability, it requires certain procedures to be used for grand jury disclosures (which were not used here) and it allows for disclosure "preliminarily to or in connection with *a* judicial proceeding." (emphasis added). As argued by some defendants, the language is *not* "another" judicial proceeding. But interpreting the provision to permit a grand jury disclosure application in the context of the case being litigated, would render subparagraph (ii) superfluous. And the Supreme Court has explained that subparagraph (i) applies to requests for records "for use in subsequent proceedings." *Douglas Oil Co. of Cal.*, 441 U.S. at 219-20. That said, as the government concedes (*see* Dkt. 725 at 11 n.3), this Court has already authorized disclosure of certain grand jury material at the government's request under subparagraph (i) (*see* Dkt. 602), which according to the government's current position was improper. Additionally, in at least one case not cited by the parties, the Second Circuit affirmed the disclosure of grand jury material under subparagraph (i) in apparently the same case being prosecuted by the grand jury's indictment (although this issue about another proceeding was not raised). *See United States v. Alexander*, 860 F.2d 508, 513 (2d Cir. 1988) (finding that Rule 6's authorization of disclosure when so directed by a court "preliminarily to or in connection with a judicial proceeding" encompassed disclosure of grand jury materials related to the defendant's sentencing).

Taking all of this into account, the Court is not convinced that Rule 6(e)(3)(E)(i) is the proper means by which to order disclosure, if appropriate, under these circumstances. On the other hand, the Court is not prepared to conclude that a judge reviewing grand jury material *in camera* has no recourse if prosecutorial misconduct is discovered. While not

addressed by the parties or the magistrate judge, the Second Circuit is one of two circuits to recognize "that in 'special circumstances,' the disclosure of grand jury materials may be appropriate even where it is not authorized by Rule 6(e)."  *United States v. Maxwell*, 794 F. Supp. 3d 215, 223-24 (S.D.N.Y. 2025).  Whether the Supreme Court would adopt this exception is debatable.  *See id*. at 224 n.12 (discussing how most circuits to address the issue have limited disclosure to the exceptions under Rule 6(e)(3)).

In the end, the Court need not resolve these thorny issues.  Even if a judge could order disclosure of grand jury material *sua sponte* upon discovering prosecutorial misconduct not raised by the parties, the failure to read the charging statute when presenting an indictment to a grand jury is not prosecutorial misconduct nor is it a valid basis to dismiss the indictment.  In other words, even if the magistrate judge had the authority to order disclosure of the grand jury records, it was clearly erroneous and contrary to law for him to conclude that he should do so.

### D.    No Prosecutorial Misconduct Before the Grand Jury

As noted in the magistrate judge's decisions, the empanelment prosecutor responsible for giving introductory comments and general instructions to the grand jury informed the grand jurors about probable cause and other issues.  (Dkt. 663 at 2-3).  Among the various information shared with the grand jury, this empanelment prosecutor told the grand jury in August 2023 that he would serve as their legal advisor and made certain representations on how the process would work, including that an indictment would be presented and that the prosecutor presenting a proposed indictment would explain the charges and relevant legal definitions.  (*Id*. at 2).

When presenting the second superseding indictment to the grand jury for consideration some five months later, in January 2024, a different prosecutor did not read the statutes that were the subject of the proposed counts. He also did not explain any legal definitions outside the language in the indictment. Instead, he read the proposed second superseding indictment to the grand jury, apparently relying on the facial sufficiency of the elements as stated in the proposed indictment. He then left the proposed second superseding indictment with the grand jury so that it could consider the charges. The grand jury affirmatively voted to return the proposed second superseding indictment, spending an amount of time deliberating—about which the magistrate judge has raised questions.

The magistrate judge has concluded that this raises sufficient questions over the grand jury's independence so as to justify disclosure of the pertinent grand jury records. The magistrate judge has concluded that by failing to provide the instructions promised by the empanelment prosecutor, "the government misled the grand jury, intentionally or otherwise." (Dkt. 664 at 5). And the magistrate judge has concluded that even if a prosecutor does not provide "detailed legal instructions" to a grand jury, at a minimum the prosecutor must "read to them the statutes upon which the charges are based." (Dkt. 663 at 4). The undersigned disagrees with these conclusions for several reasons.

First, the magistrate judge's reasoning cannot be reconciled with the Supreme Court's holding in *Williams*. The Supreme Court highlighted the rules that could lead to dismissal in *Williams*, 504 U.S. at 46 n.6, and none of them involve failing to provide legal instructions to a grand jury, or not reading the relevant statutes. The dissenting justices in *Williams* viewed the majority opinion as suggesting "that the court has no authority to

supervise the conduct of the prosecutor in grand jury proceedings so long as he follows the dictates of the Constitution, applicable statutes, and Rule 6 of the Federal Rules of Criminal Procedure." *Id.* at 65. But in its discussion of the types of previously recognized prosecutorial misconduct that could fall outside those categories, the dissent also did not mention failing to provide legal instructions or failing to read the relevant statutes. *Id.* 56-70. In other words, there is nothing in binding Supreme Court precedent suggesting that the criticisms the magistrate judge directs at the government could serve as the basis for a valid motion to dismiss. Put simply, providing legal instructions to the grand jury in the form of reading the relevant statute or separately stating the elements of the offense outside of reliance on the charge in a facially sufficient indictment, is not "one of those few, clear rules which were carefully drafted and approved by [the Supreme Court] and by Congress to ensure the integrity of the grand jury's functions." *Id.* at 46.

Second, and along the same lines, the law is clear that legal instructions need not be provided to a grand jury. *See United States v. Lopez-Lopez*, 282 F.3d 1, 9 (1st Cir. 2002) ("under federal law the prosecutor is not obligated to provide legal instruction to the grand jury"); *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988) ("The prosecutor is under no obligation to give the grand jury legal instructions."); *United States v. Kenny*, 645 F.2d 1323, 1347 (9th Cir. 1981) ("[An] indictment is normally prepared by the prosecutor, who is presumably acquainted with the 'applicable law.' We are not persuaded that the Constitution imposes the additional requirement that grand jurors receive legal instructions."). And this Court disagrees that the legal landscape was somehow altered by the empanelment prosecutor's general reference to the grand jury being provided an

explanation of any relevant definitions or that the failure to do so in any way constituted misleading the grand jury.

Third, this Court disagrees with the magistrate judge that the law requires a prosecutor to "at a minimum" read the relevant statutes to the grand jury. (*See* Dkt. 663 at 4). The magistrate judge cites several decisions in support of that conclusion, including the undersigned's decision in *Smith*, 105 F. Supp. 3d 255, but *Smith* did not reach that conclusion—instead, the discussion relied on from *Smith* was a summary of another case's conclusion and that other case did not hold that reading of the statute must occur, *id*. at 262-63. Instead, in that other decision, then-District Judge Chin denied a request to inspect grand jury minutes reasoning that "prosecutors are generally not required to provide legal instructions to the grand jury," and "*even if* the prosecutors only read the relevant statute to the grand jury, defendants still have not made a sufficient showing for inspection." *United States v. Finnerty*, No. 05 CR. 397 DC, 2006 WL 2802042, at *9 (S.D.N.Y. Oct. 2, 2006) (emphasis added).

The magistrate judge also cites *Lopez-Lopez*, 282 F.3d 1, but the undersigned does not read *Lopez-Lopez* as standing for the principle that the prosecutor absolutely must read the statute to the grand jury. Rather, the First Circuit affirmed post-conviction the denial of the defendant's motion to dismiss the indictment for two reasons: "First, under federal law the prosecutor is not obligated to provide legal instruction to the grand jury. Second, the alleged errors in the grand jury proceedings are harmless in light of the petit jury proceedings and verdict." *Id*. at 9. The First Circuit did state that courts "generally have found that the prosecutor satisfactorily explains the offense to be charged by simply reading

the statute to the grand jury," but there is no indication that any court undertook a review of the grand jury record to determine whether that, in fact, occurred, nor is there any suggestion that the failure to do this would require dismissal.

To be sure, there is language in some cases suggesting the appropriate practice is to at least read the charging statute to the grand jury. *See, e.g.*, *United States v. Klein*, No. 16-CR-442 (JMA), 2017 WL 1316999, at *14 (E.D.N.Y. Feb. 10, 2017) ("the prosecution is not required to instruct the grand jury on the legal theory under which an indictment is sought, beyond simply reading or providing the relevant statute"). But neither the magistrate judge nor the defendants have cited any case holding that dismissal of a facially sufficient indictment is warranted where the prosecutor failed to read the relevant charging statute to the grand jury. And in fact, there is case law not cited by the magistrate judge's orders holding that it is sufficient for the prosecutor to just read the indictment to the grand jury—as occurred here. *United States v. Labbad*, No. EDCR 03-00039(A)-RT, 2013 WL 12387563, at *8 (C.D. Cal. Mar. 18, 2013) (rejecting argument that government erred by failing to provide the grand jury with legal instructions where the indictment was read to the grand jury, which "more than adequately implied all elements of the charged conspiracy"), *reconsideration denied*, 2013 WL 12387560 (C.D. Cal. Apr. 24, 2013); *see also United States v. Linetsky*, 533 F.2d 192, 201 (5th Cir. 1976) (despite allegedly improper instructions, where indictment traced language of the statute it was sufficient to require trial).

More generally, and as emphasized by the magistrate judge, the prosecutor is the grand jury's "legal advisor" and there is case law suggesting that in that role the

government must provide the grand jury "with controlling legal principles." *United States v. Ciambrone*, 601 F.2d 616, 622 (2d Cir. 1979). In *United States v. Twersky*, No. S2 92 CR. 1082 (SWK), 1994 WL 319367 (S.D.N.Y. June 29, 1994), an unreported case from over 30 years ago but cited by other district courts in this circuit and relied on by the magistrate judge, the court ordered the *in camera* inspection of the grand jury minutes based on the defense argument that the grand jury must have been improperly instructed on the intent element of the charged crimes. The court agreed to inspect the grand jury minutes *in camera*, reasoning:

> As a legal advisor to the grand jury, the prosecutor must give the grand jury sufficient information concerning the relevant law "to enable it intelligently to decide whether a crime has been committed." Although the prosecutor need not give legal instructions which approach the comprehensiveness of the trial judge's charge to the jury, an instruction may be "so misleading" due to mistakes or omissions, that the ensuing indictment "will not be permitted to stand even though it is supported by legally sufficient evidence."

*Id*. at *4 (citation modified).[24] But even if this could be reconciled with *Williams*, to take those principles and conclude that this means that the prosecutor must instruct the grand jury on the law in a particular manner—whether by reading the statutory text of the charged offense or defining the legal terms used in the elements of the offense—would, in the view

---

[24]  In support of these principles, the *Twersky* court cited New York state cases and federal cases, all issued before *Williams*. 1994 WL 319367, at *4. The *Twersky* court also noted in a footnote that "the Government correctly argues that it has no duty to provide any legal instruction to the Grand Jury, [but] . . . the issue at hand is not whether the Government wrongly failed to give any instruction, but rather, whether it gave instructions which were erroneous." *Id*. at *5 n.1.

of the undersigned, "prescribe (rather than proscribe) prosecutorial conduct." *United States v. Fisher*, 225 F. Supp. 3d 151, 169 (W.D.N.Y. 2016).

Judge Arcara stated in *Fisher* that he assumed that "even after *Williams*, a court may dismiss an indictment for prosecutorial misconduct that impairs the grand jury's independence as a way of enforcing the Fifth Amendment's guarantee of an independent grand jury." *Id*. The undersigned generally agrees. But grand jury independence is a somewhat amorphous concept, especially given that the grand jury relies heavily on the prosecutor's office "and the investigative resources it commands." *Sells Eng'g, Inc.*, 463 U.S. at 430 (quoting *Stirone v. United States*, 361 U.S. 212, 218 (1960)). As explained by the Supreme Court:

> The prosecutor ordinarily brings matters to the attention of the grand jury and gathers the evidence required for the jury's consideration. Although the grand jury may itself decide to investigate a matter or to seek certain evidence, it depends largely on the prosecutor's office to secure the evidence or witnesses it requires. The prosecutor also advises the lay jury on the applicable law. The prosecutor in turn needs to know what transpires before the grand jury in order to perform his own duty properly. If he considers that the law and the admissible evidence will not support a conviction, he can be expected to advise the grand jury not to indict. He must also examine indictments, and the basis for their issuance, to determine whether it is in the interests of justice to proceed with prosecution.

*Id*.

All this being said, the bottom line is that this is not the paradigm case in which to draw the line for when a court should step in because a prosecutor's conduct casts doubt on the grand jury's independence. The undersigned has reviewed the entire grand jury record and does not share the magistrate judge's concerns about the lack of grand jury independence. The grand jury considered this case over an approximate five-month period,

hearing from many witnesses with firsthand knowledge of the events in question and receiving numerous exhibits. The grand jurors consistently and repeatedly asked questions reflecting their understanding of the issues and the evidence. And while the prosecutors did not provide formal legal instructions or read the applicable statutes at the time the second superseding indictment was presented to the grand jury, throughout the grand jury presentation the prosecutors acted as the grand jury's legal advisors and provided instructions on different legal matters.

As for the comments about the time that it took for this grand jury to return the indictment, the magistrate judge used this to second-guess the grand jury's independence. The undersigned's view is that this is not an appropriate metric to gauge independence because it rests on pure speculation. But even if an appropriate metric, the undersigned submits that, based on a review of the entire grand jury record, a more reasonable takeaway is that after sitting for many months and hearing testimony from many witnesses who offered evidence about the death of Crystal Quinn, this grand jury needed little time to determine that the second superseding indictment should be returned.

To be clear, the undersigned is not suggesting that this was a "best practice" to read the proposed charges to the grand jury and not independently read the text of the statute or at least separately identify the elements of the charge, outside the language of the indictment. And based on the comments at oral argument, how to present an indictment in this District is apparently left to the discretion of the prosecutor. This seems to give far too much latitude to the preferences or practices of any particular prosecutor. But again, the Court must take the admonitions from the Supreme Court seriously—it is not the

undersigned's or the magistrate judge's role to "invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure." *Williams*, 504 U.S. at 49-50.

Finally, this Court will briefly address the magistrate judge's comments that the second superseding indictment is "replete with misstatements or incomplete descriptions of the statutes upon which its charges are based." (Dkt. 664 at 5). If that is really the case, then the defendants can challenge the indictment's facial sufficiency in a Rule 12(b) motion. They do not need the grand jury records to do so.[25] The magistrate judge's criticisms in this regard are irrelevant to whether the grand jury records should be produced.

### E.     Overt Act ¶ 25

Going back to the beginning, this all started when the magistrate judge concluded that there was enough in the record to warrant an *in camera* review of the grand jury materials to see if misrepresentations had been made as to Overt Act ¶ 25. That issue was never addressed by the magistrate judge. The undersigned will do so now based on the *in camera* review of the grand jury record.

The grand jury was not misled with respect to Overt Act ¶ 25, and this Court denies the motions to inspect the grand jury records on this basis. (Dkt. 410). In other words, the undersigned has not seen any suggestion made to the grand jury that Gerace purportedly learned of Quinn's involvement through the trial witness lists filed in case numbers 19-cr-

---

[25]    The undersigned is not suggesting that she agrees with the magistrate judge on this point. For instance, with respect to the referenced penalty provisions in the statutes, the government correctly notes that this is how a defendant is placed on notice. (*See* Dkt. 697 at 35 ("[I]t is a standard practice . . . to include penalty provisions when referencing violations.")). The grand jury should not have been instructed on the potential penalties here.

227 and 23-cr-37. Rather, the evidence presented to the grand jury was consistent with the government's theory all along that Gerace became aware through the proffer made at the detention hearing held in March 2023. To the extent Gerace argues that Overt Act ¶ 25 is false, that will be an issue for resolution by the trial jury—but his claims in this regard do not justify disclosure of any grand jury material.

As for the claimed prosecutorial steering, that issue is the subject of a pending motion to dismiss by Gerace. (*See* Dkt. 581 at 61). In terms of any request for grand jury records pertaining to that issue, the request is denied for several reasons. First, the magistrate judge did not appear to base his *in camera* inspection on this issue, and Gerace never appealed the magistrate judge's decision to the undersigned. Thus, any objection is unpreserved. *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"). Second, Rule 6(e)(3)(E)(ii) allows for production at the request of a defendant who shows that a ground may exist to dismiss the indictment "because of a matter that occurred before the grand jury," and Gerace's argument in this regard has nothing to do with conduct before the grand jury. Third, even if Gerace could overcome these hurdles, there is no basis to produce the grand jury records because of his argument related to prosecutorial steering. Rule 6 is not a general discovery mechanism. While the investigation in this case plainly overlapped with other matters involving Gerace (after all, the alleged conspiracy involved the murder and cover-up of a cooperating witness against Gerace), this information is a matter of the public record and does not need grand jury disclosure in order to be litigated.

**F.    Knight's Appeal from the Magistrate Judge's Determination**

As detailed above, Knight sought grand jury material in a motion filed on June 13, 2025.  (Dkt. 455 at 11-14).  Knight based his request on two theories: (1) the grand jury was misled if it was not told the full content of Knight's interview with the FBI on August 3, 2023, because while he initially denied knowledge concerning Hinkle's presence at the poker game on July 27, 2023, he quickly corrected that information—thus, the charge in count five is false, as is the overt act alleged in paragraph 60 of count one; and (2) the grand jury must have been told inaccurate information about the capabilities of tracking a phone, if they returned the charge in count 23 alleging that Knight lied about Gogolack's presence at his residence on July 28, 2023.  (*Id.*).

The magistrate judge denied the request for grand jury material related to the second theory by a Decision and Order filed August 21, 2025, but he agreed to review *in camera* information pertinent to the first theory.  (Dkt. 566).  No appeal was filed by either party from that Decision and Order.

Then, on August 27, 2025, the magistrate judge issued a decision denying the request for grand jury material related to the first theory, concluding "the government did not mislead the grand jury or otherwise engage in misconduct in regard to those allegations."  (Dkt. 585 at 2; *see also* Dkt. 584 (sealed decision)).  Knight filed an appeal from that decision, but before the undersigned could resolve it, the magistrate judge changed his mind and concluded that the grand jury should have been instructed on the meaning of materiality and therefore "the grand jury materials relevant to the §1001(a)(2)

charge (including instructions or lack thereof) should be released to defendant Knight." (Dkt. 665 at 2).[26]

For the reasons articulated above, the undersigned disagrees with the magistrate judge that the failure to instruct the grand jury on the definition of materiality could serve as a viable basis for a motion to dismiss. And contrary to Knight's speculation, the grand jury was not misled about Knight's statements in this regard (including his ultimate admission that Hinkle was at the poker game).

As for the location of Gogolack as traced through his phone during the early morning hours of July 28, 2023, like the issue raised by Gerace concerning grand jury minutes related to his claimed prosecutorial steering, Knight failed to appeal or object to the magistrate judge's decision denying the request related to Knight's second theory of disclosure. Thus, the issue is not preserved.

Finally, Knight argues in his appeal that the government's *in camera* submission of grand jury material to the magistrate judge (to which he consented) allowed the government an extra opportunity to argue its position. (Dkt. 599 at ¶ 7). The Court disagrees. The undersigned has reviewed the *in camera* submission and the redacted information consists only of grand jury material, not argument.

---

[26] Presumably the magistrate judge was referencing the §1001(a)(2) charge in count five, as that was the only count at issue in the magistrate judge's August 27, 2025 Decision and Order.

### G.   Other Requests for Grand Jury Material

In their responses to the government's objections to the magistrate judge's disclosure orders, some defendants raise the desire for other types of grand jury material. (*See*, *e.g.*, Dkt. 714 at ¶ 6 (Gogolack claiming government misled grand jury by, for instance, "falsely alleging Mr. Gogolack faked his own overdose"); Dkt. 715 at 3 (Ermin claiming that grand jury disclosure is necessary to address commencement date of alleged conspiracy)). None of these issues have been properly raised. In other words, raising the issues now—after the deadlines for the filing of non-dispositive motions and in opposition to appeals by the government relating to a magistrate judge's grand jury disclosure orders related to legal instructions—is not the proper way to seek this relief from the Court.[27]

### H.   Gerace's Motion for Disclosure

Finally, as noted above, limited disputes remain in connection with Gerace's motion for disclosure. (Dkt. 651). Based on the above, the Court denies Gerace's outstanding requests for disclosure. The redacted information from the government's response to the Order to Show Cause (*cf.* Dkt. 698-1 to Dkt. 698-2) is irrelevant to the issues before this Court. In fact, the undersigned has not relied on it in any way in drafting this Decision and Order. And the redacted information from the magistrate judge's Order to Show Cause and October 16, 2025 Decision and Order, relates solely to the time that it took the grand

---

[27]   The Court acknowledges that Gogolack has also requested grand jury material in his pending motions filed on December 2, 2025 (Dkt. 694), and those issues will be addressed in a separate Decision and Order.

jury to return the second superseding indictment—an issue completely irrelevant for the reasons explained above.

## IV.    **CONCLUSION**

For the foregoing reasons, the magistrate judge's October 16, 2025 Decision and Order (Dkt. 643; Dkt. 664; Dkt. 667) and his October 22, 2025 Decision and Order (Dkt. 647; Dkt. 665; Dkt. 668) are vacated.[28]  In addition, the motion for disclosure of grand jury materials filed by Gerace, Ermin, and Hinkle (Dkt. 410) is denied, as is the related motion filed by Gogolack (Dkt. 404).  Knight's motion for disclosure of grand jury materials is also denied (Dkt. 455), as are the remaining outstanding requests in Gerace's motion for disclosure (Dkt. 651).[29]  Finally, to the extent Roncone's response to the government's appeal from the magistrate judge's disclosure orders is framed as a motion to join (Dkt. 717), the motion is granted to the extent that the undersigned has considered his arguments, but it is otherwise denied.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:    January 16, 2026
          Rochester, New York

---

[28]    While the undersigned disagrees with the Order to Show Cause for the reasons set forth herein, it is not vacated because the issues raised by it are moot (given the government's response and the magistrate judge's subsequent disclosure orders).

[29]    Other parts of Gerace's motion were already granted, such as when the Court arranged for the production to defense counsel of the magistrate judge's disclosure orders.